UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG,<br><br>Defendant. | DOCKET NO.<br>04-11411-NMG |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT TO INCLUDE ADDITIONAL DEFENDANTS**

**I. INTRODUCTION**

This action arises out of a certain contract between Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively, "Berwind") and Defendant Environmental Management Group, Inc. d/b/a EMG, pursuant to which EMG was to perform a property condition evaluation of certain improvements to real property in Newton, Massachusetts. Berwind filed suit against EMG alleging negligence, gross negligence, fraud in the inducement,[1] negligent misrepresentations, breach of contract, and violation of M.G.L. c. 93A. Berwind now seeks to add Sandra Terepka Hoffman ("Hoffman"), EMG's engineer who performed the evaluation, and Michael Collins ("Collins"), EMG's program supervisor who oversaw Hoffman's work and verified that the contract requirements had been satisfied, as defendants because the evidence produced in discovery has revealed that Hoffman and Collins should properly be joined as defendants. There has not been, nor will there be, any undue

prejudice to EMG or the prospective defendants by this amendment, nor has there been any undue delay. In addition, the claims against Hoffman, Collins and EMG share common questions of fact and law warranting joinder. Finally, it is in the interest of judicial economy to try these matters together. Accordingly, Berwind has moved for leave to amend its Complaint, and to file and serve an Amended Complaint in the form attached to the Motion as Exhibit A.

## II.  FACTUAL AND PROCEDURAL HISTORY

Berwind was induced to enter into a contract with EMG on or about March 17, 1999 (the "Contract") by which EMG agreed to perform a Phase I Environmental Site Assessment and an Enhanced Property Condition Evaluation (the "Services") of the buildings located at 1210-1230 Washington Street in Newton, MA (the "Property"). Berwind informed EMG that Berwind was particularly interested in, *inter alia,* the structure of the Building and the Garage, as the office building was over 100 years old and both the office building and the Garage abutted active commuter railroad lines and were located close to the Massachusetts Turnpike. EMG represented, at p. 20 of the Contract, in pertinent part, as follows:

> Based on on-site observations, interviews, and review of available documentation, EMG shall:
>
> - *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, **and other systems**.
>
> - *Identify those components that are exhibiting deferred maintenance issues and provide estimates for* "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) *costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates*. (emphasis added)

---

[1] Berwind's original Complaint was first amended to add the Count of Fraud in the Inducement. Berwind only became aware that Hoffman was a mechanical engineer, and therefore not qualified to perform the services contemplated by the Contract, after the filing of the original Complaint.

#529709                                    2

The Contract further provided that EMG would perform said Services in accordance with industry-accepted due diligence practice and using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service. EMG further represented to Berwind that a ***qualified*** professional engineer would inspect and evaluate the Property. See Contract between Berwind and EMG dated March 17, 1999, a true and accurate copy of which is attached as Exhibit 1 to the Affidavit of Lauren Timoney Upton, filed herewith.

In or around March 1999, Hoffman visited the Property, and inspected the parking garage (the "Garage") located on the Property. Hoffman was the only EMG employee to visit or inspect the Garage. See Excerpts from the 3/30/05 Deposition Transcript of Sandra Terepka Hoffman, a true and accurate copy of which is attached to the Upton Affidavit as Exhibit 2, at p. 173. Hoffman was not a structural engineer, nor had Hoffman ever received any meaningful training in structural engineering. See Upton Affidavit, Exhibit 2, at pp. 6-9, 20-23, 250-251. Hoffman clearly failed to observe and/or appreciate the significance of open and obvious structural and waterproofing deficiencies in the Garage. Berwind has since learned that other engineers who had performed visual inspections of the Property ***prior*** to Hoffman had readily observed that the Garage exhibited significant, open and obvious structural problems and waterproofing deficiencies. These deficiencies included, *inter alia*, the following:

- slab deflections;
- extensive cracking around reinforcement steel;
- through-slab cracks with florescence and active water leakage;
- concrete delamination along the through-slab cracks;
- slab delamination, scaling and popouts;
- slab cracking around the column base;

- unsealed slab construction joints;
- widespread slab cracks; and
- absence of vehicular-traffic bearing waterproofing on the decks.

See, e.g., Memorandum from SGH dated February 3, 1997, a true and accurate copy of which is attached as Exhibit 1 to the affidavit of Paul L. Kelley filed herewith.

EMG's Property Condition Evaluation (the "Report"), prepared by Hoffman and reviewed by Collins, failed to note any of these signs of structural distress, such as the serious topside cracking around columns, sagging of the elevated structural decks, and indications of significant ongoing corrosion of reinforcing steel, despite the fact that none of these conditions required measurement, calculation, and/or testing to detect. More specifically, EMG's Report states only as follows:

> The framing, walls and decks of the parking structure appeared to be in fair condition. **Small** areas of spalled concrete and **minor** rust stains were observed, indicating initial corrosion of the steel reinforcing in the ceiling. ... Cleaning and patching the areas of spalled concrete with an epoxy concrete patch is required within the next year.
>
> The ground level of the parking garage had areas of cracking in the concrete slab. ... Sealing cracks is considered to be a part of routine maintenance. ***No additional action is required.*** (emphasis added)

See Excerpts from EMG's Report, a true and accurate copy of which is attached to the Upton Affidavit as Exhibit 3, at pp. 35-36. Similarly, the Report also failed to note the open and obvious lack of deck membranes, and failed to discuss the importance of deck membranes in garages.

Moreover, Hoffman clearly failed to adequately evaluate the costs attendant to the necessary repairs of the deficiencies in the Garage. The Report indicated that Berwind would need to expend approximately $4,000.00 in immediate costs (that is, in the inspection and evaluation of the drainage system in the Garage, which Hoffman recommended be performed

within 90 days) and $26,000.00 in short term costs (that is, in the recommended repairs of the Garage's drainage system and spalled concrete and the application of sealant to the exterior walls, which Hoffman recommended be performed within one year).[2] See Upton Exhibit 3 at p. 5 and Tables 1 - 2. The Report failed to indicate that Berwind would incur any additional costs for "repairs, replacement and significant maintenance items ... over the evaluation period (12 years)." See Upton Exhibit 3 at p. 5 and Table 3. These budgets were grossly inadequate measures of the maintenance needs of the garage at the time of EMG's 1999 inspection. See Plaintiffs Rule 26(a)(2) Expert Disclosure, attached hereto as Exhibit B. Berwind, in fact, has incurred in excess of $900,000.00 in necessary repairs to the Garage. Id.

In addition to Hoffman's negligence in failing to detect these open and obvious deficiencies, and to provide even marginally accurate cost estimate for the necessary repairs, Hoffman also failed to advise Berwind of material deficiencies of which she was apparently aware, despite knowing that Berwind was going to rely on her report of such deficiencies (or lack thereof) in connection with its decision to purchase the Property. Hoffman has testified that she had "significant concern" about "issues" relating to the Garage, and that there were "extensive problems [with] the Garage." See Upton Affidavit, Exhibit 3, at pp. 181, 186-187. However, nothing in the EMG Report conveys to the client the seriousness of these observed structural issues and of the waterproofing deficiencies present in the Garage.

For example, Hoffman testified that "the rust stains [she] describe[d in the Report] mean ... that [she] saw some rust colored staining of the concrete, indicating that there's corrosion of the reinforcing rods in the concrete," and she recommended cleaning and patching the areas of

---

[2] Berwind did, in fact, have the repairs recommended by EMG performed, and received a credit from the seller of the Property for those repairs. See Excerpts from the 4/26/05 Deposition Transcript of Roy Perry, a true and accurate copy of which is attached to the Upton Affidavit as Exhibit 4, at pp. 173-174. EMG's inadequate cost estimates deprived Berwind of knowledge that might have caused it to seek an additional discount in the purchase price or to walk away from the deal if the adjustment was not made. See Plaintiffs Rule 26(a)(2) Expert Disclosure, attached hereto as Exhibit 3.

#529709                                            5

spalled concrete within a year. Upton Affidavit, Exhibit 3, at pp. 171-172. However, Hoffman acknowledged during her deposition that cleaning and patching would not remedy the initial corrosion she observed, and she acknowledged that she made no recommendation that the corrosion be evaluated by an engineer. Id. at p. 225. In addition, she acknowledged that she did not indicate in the Report how the corrosion might affect the useful life of the Garage. Her failure to provide this information to Berwind constituted not only a breach of the Contact's requirement of identifying deferred maintenance issues and estimating costs associated with them, while knowing that her Report would be provided to Berwind for its due diligence evaluation of the Property, but also failure to comply with the customary professional standards of care. See, e.g., Plaintiffs Rule 26(a)(2) Expert Disclosure, attached hereto as Exhibit B.

Hoffman also testified, at deposition, that she knows, in the absence of waterproofing on an elevated concrete garage slab, "water penetrating the slab can cause corrosion on the reinforcing steel, and the corrosion expands causing concrete to fail, and you have spalled concrete and you can have severe damage to the parking garage, to the structure, if it's not addressed." See Upton Affidavit, Exhibit 3, at pp. 199-200. Despite her claimed knowledge of the ramifications of the lack of a waterproofing membrane, and despite having made notations of water penetration issues, she failed to indicate in the Report that there was no waterproofing membrane on the Garage slabs, and she failed to indicate what the ramifications of that deficiency might be. Her failure to provide this information to Berwind constituted not only a breach of the Contact's requirement of identifying deferred maintenance issues and estimating costs associated with them, while knowing that her Report would be provided to Berwind for its due diligence evaluation of the Property, but also failure to comply with the customary professional standards of care. See, e.g., Plaintiffs Rule 26(a)(2) Expert Disclosure, attached hereto as Exhibit B.

#529709

6

Collins has testified that he was "keenly aware" of Hoffman's training and experience, having reviewed Hoffman's resume and having worked with her on others projects. See Excerpts from the 4/01/05 Deposition Transcript of Michael Collins, a true and accurate copy of which is attached to the Upton Affidavit as Exhibit 5, at pp. 51-52. Despite knowing that Hoffman was not qualified to perform the Services, he signed the Report on behalf of EMG, certifying that the Services had been performed in accordance with the Contract requirements and, accordingly, "in accordance with industry-accepted due diligence practice." In addition, he certified the contents of the Report knowing that no other qualified person (i.e., a structural engineer and/or an individual with appropriate structural training in garages) had performed the Services or reviewed the Report, while also knowing that Berwind was going to rely on this Report in making the determination to purchase the Property. His failure to provide this information to Berwind constituted not only a breach of the Contact's requirement of identifying deferred maintenance issues and estimating costs associated with them, while knowing that the Report would be provided to Berwind for its due diligence evaluation of the Property, but also failure to comply with the customary professional standards of care. See, e.g., Plaintiffs Rule 26(a)(2) Expert Disclosure, attached hereto as Exhibit B.

When it entered into the Contract, EMG knew that Berwind was hiring EMG to assist Berwind with its due diligence activities for its acquisition of the Property; Hoffman and Collins were similarly aware of the reason for the evaluation as the purpose of the evaluation was specifically set forth in the Report. See Upton Affidavit, Exhibit 3 at p. 1. Further, Collins signed the Report and thereby certified that Berwind could rely on the representations set forth in the Report. Based on Hoffman's and Collins' representations in the Report, Berwind decided to purchase the Property. Had Berwind known that the Garage suffered from significant structural problems and waterproofing deficiencies, Berwind would not have purchased the Property for

$11.7 million as it did, or Berwind would have purchased the Property for a lower price, taking into account the additional costs of repairing the Garage. The failure of Hoffman and Collins to provide *"a full description of the property and improvements"* and to *"identify those components that are exhibiting deferred maintenance issues and provide estimates for ... costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates"* constitute a breach of the duty of reasonable care they owed to Berwind in the creation and certification of the Report, intentionally and/or with reckless and wanton disregard of duty owed to Berwind, thereby exposing Berwind to unwarranted risk. Hoffman's and Collins' negligence and gross negligence, and reckless and wanton breach of their duties to Berwind, directly, proximately, and foreseeably caused Berwind to incur costs in excess of $900,000.00 in the repair and remediation of the Garage.

Berwind filed suit against EMG on or about May 18, 2004. Berwind conducted a deposition of Hoffman on March 31, 2005, at which she was represented by counsel for EMG. Berwind conducted the deposition of Collins on April 1, 2005, at which he was represented by counsel for EMG. Discovery is ongoing, with a Motion to Compel Further Rule 30(b)(6) Deposition Testimony from Defendant EMG pending before this Court.

### III. ARGUMENT

#### A. Leave To Amend Is To Be Granted When Justice So Requires.

It is well established that, pursuant to F.R.C.P. 15(a), leave to amend a pleading shall be freely given if justice so requires. F.R.C.P. 15; Foman v. Davis, 371 U.S. 178, 182 (1962). Absent a showing of factors such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by previous amendments, or undue prejudice to the opposing party, leave to amend should be granted. Executive Leasing Corp. v. Banco Popular de Puerto Rico, 48 F.3d 66, 71 (1st Cir.1995) cert. denied, 116 S.Ct. 171 (1995), quoting Foman v. Davis, 371 U.S. at 182.

As is set forth below in greater detail, neither EMG nor the prospective defendants can present any sound argument to this Court that any reason exists such that leave should not be granted.

### 1. The proposed Amended Complaint poses no undue prejudice on EMG or the prospective defendants.

While there are a variety of factors involved in determining whether an amendment should be granted, "notice and substantial prejudice to the non-moving party are critical factors." Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 484 (6th Cir. 1973). See also Tefft v. Seaward, 689 F.2d 637 (6th Cir. 1982) (requiring significant showing of prejudice); Buder v. Merrill Lynch, Pierce, Fenner & Smith, 644 F.2d 690, 694 (8th Cir. 1981)(citation omitted); David v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980)(requiring showing of prejudice). See also Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15 (1st Cir. 1979)(court held that "delay alone, regardless of its length, is not enough to bar [an amendment] if the other party is not prejudiced."). The burden is on the party opposing the motion to assert and demonstrate that it will be substantially prejudiced by the proposed amendment, and a mere statement that prejudice will result if the amendment is allowed is not a sufficient reason for denying leave to amend. Hageman, 486 F.2d at 484. In this matter, neither EMG nor either of the prospective defendants can plausibly argue that they were without notice that Hoffman and Collins could be joined as defendants in this action. EMG has been aware, at all relevant times, of the facts underlying the claims against Hoffman and Collins, and counsel for EMG has represented both Hoffman and Collins in this action. Accordingly, neither EMG nor either of the prospective defendants can reasonably argue that it would be unduly prejudiced by the proposed amendment.

Hoffman prepared the Report upon which Berwind relied in making its determination to purchase the property. As is set forth above, Hoffman failed to identify open and obvious deficiencies in the Garage in the Report. Moreover, Hoffman testified that she was aware of the ramifications of the certain of the deficiencies, but that she made no note of those deficiencies or

#529709                                    9

the ramifications in the Report. Accordingly, EMG and Hoffman have been on notice that Berwind would have a cause of action against Hoffman, and therefore cannot allege that it/she would be unduly prejudiced by the joinder of Hoffman as a defendant.

Similarly, EMG cannot allege that it would be prejudiced by the proposed amendment because it was unaware that Collins might be named as a defendant. Collins certified that the Services had been performed and the Report prepared in accordance with the Contract requirements and "in accordance with industry-accepted due diligence practice." Berwind relied on those representations. Consequently, EMG and Collins have been on notice that Berwind might well have a cause of action against Collins when it was determined that Hoffman, in fact, had not performed the Services in accordance with the Contract requirements and "in accordance with industry-accepted due diligence practice," and that Collins had certified the Report while knowing that it was deficient. There is, therefore, no undue prejudice to EMG or Collins by the proposed amendment. Accordingly, Berwind's Motion for Leave to Amend the Complaint should be allowed.

2. **Any Delay, Without Additional Prejudice to the Other Parties, Is An Insufficient Reason to Deny Leave to Amend.**

Although the Foman court listed "undue delay" as a basis for denying leave to amend a complaint, the courts have held that undue delay alone is not sufficient grounds to deny leave. See Hayes v. New England Millwork Distributors, Inc., 602 F.2d 15 (1st Cir. 1979)(citation omitted)("Courts may not deny an amendment solely because of delay and without consideration of the prejudice to the opposing party."). See also 3 Moore's Federal Practice, Par. 15.08(4) ("delay alone, regardless of its length is not enough to bar (an amendment) if the other party is not prejudiced "). Courts have also held that "delay that is neither intended to harass or causes any ascertainable prejudice is not a permissible reason, in and of itself, to disallow an amendment of a pleading." Moore v. City of Paducah, 790 F.2d 557, 561 (6th Cir. 1986); Beuder v. Merrill

#529709                                10

Lynch, Pierce, Fenner & Smith, 644 F.2d 690 (8th Cir. 1981); Davis v. Piper Aircraft, 615 F.2d 606 (4th Cir. 1980).

Berwind has not delayed unduly, nor exhibited bad faith in seeking this amendment. The original Complaint in this matter was filed just one year ago, and it was only through the course of discovery that Berwind was able to make a good faith determination that it has valid claims against Hoffman and Collins. Berwind has not intentionally delayed in seeking to amend the Complaint, and is doing so at the earliest possible time after making this determination. Thus, bad faith and dilatory motives were not factors in the decision to amend the Complaint. In addition, while the discovery deadline has passed, the parties have, by agreement, accommodated each side's need to complete certain depositions. While Berwind cannot imagine that Hoffman or Collins would need to conduct any discovery distinguishable from that already performed by EMG, that is a matter that would be left to the sound discretion of the Court should Hoffman or Collins demonstrate such a need. Finally, no dispositive motions have been filed. Thus, there is no undue prejudice to EMG. See, e.g., Moore v. McGraw Edison Co., 804 F.2d 1026 (8th Cir. 1986). Accordingly, Berwind's Motion for Leave to Amend the Complaint should be allowed.

### B.   Hoffman and Collins Should Be Joined Pursuant to F.R.C.P. 20.

Rule 20(a) of the Federal Rules of Civil Procedure provides in pertinent part that:

> All persons may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action…

Thus, the prerequisites for permissive joinder under Rule 20(a) are (1) that the claim must arise out of the same transaction, occurrence or series of transactions and occurrences, and (2) that the claim must present at least one common question of fact or law. Berwind's claims against Hoffman and Collins satisfy both requirements. As an initial matter, the liability of Hoffman and

#529709                                11

Collins and EMG arises out of the same operative facts -- failing to provide, *inter alia*, *"a **full** description of the property and improvements,"* to *"identify those components that are exhibiting deferred maintenance issues and provide estimates for ... costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates,"* and to comply with the customary professional standards of care. In addition, the claims against Hoffman and Collins and EMG share common questions of fact and law in that the claims concern the same evaluation of the Garage, the same Report, the same type of negligence concerning the work performed, and the defendants' other actions which constitute unfair and deceptive practices. Accordingly, permissive joinder is appropriate in the present action.

### C.     The Proposed Amendment Is Not Moot.

It is anticipated that the Defendants' will argue that Plaintiffs' Motion to Amend should be denied because there is no basis for a claim against the prospective defendants. EMG has consistently denied any liability, arguing that the Executive Summary of the Report demonstrated that EMG performed a full and complete evaluation of the Property and provided sufficient notice to Berwind of Berwind's need to retain an additional engineer to evaluate the structure of the Garage. Any attempt to argue that the proposed amendment would be moot on such grounds would be without merit.

The evidence adduced to date demonstrates that, in fact, the Report as drafted failed to provide the information to Berwind that EMG has argued was provided – that is notice of "extensive" problems and a need for an additional engineering evaluation of the structure of the Garage. Hoffman testified that she made "multiple observations that [she] had in the parking garage that caused [her] significant concern such that [she bulleted] the item under the additional recommendations to equity investors." See Upton Affidavit, Exhibit 2, at pp. 180-181. The first

#529709                                      12

recommendation was that "the underground storm water drains be video inspected to determine the cause of frequent clogging. The inspections should be review by a local Professional Engineer to insure the system is not clogged...." See Upton Affidavit, Exhibit 3, at p. 4. The second recommendation states "Significant signs of ponding water, inadequate drainage, efflorescence on exterior brick, mineral deposits and minor concrete deterioration due to water intrusion were observed in the parking garage, requiring additional evaluation by a local Professional Engineer, as discussed in Section 7. The costs of this work are included in the Immediate Repairs Cost Estimate (Table 1)." Id. at p. 5. Nothing in the Report, however, indicates the seriousness of the structural deficiencies or lack of waterproofing in the Garage, nor the need for an engineer to evaluate those deficiencies.

As an initial matter, a review of the text of Section 7 of the Report reveals that the <u>only</u> recommendation for additional evaluation by a professional engineer is in relation to the drainage system.[3] Id. at p. 35-36. Moreover, EMG indicated that it was estimating a "nominal budget for [the] video taping and engineering evaluation" (id. at p. 35), which sum clearly would not be reflective of the costs of performing a structural evaluation of the scope EMG now claims it was recommending. In addition, while the Report makes note of "small areas of spalled concrete and minor rust stains ... indicating initial corrosion of the steel reinforcing in the ceilings of the Garage," the recommendation is for "cleaning and patching the areas of spalled concrete with an epoxy concrete patch ... within the next year." Id. at p. 35. Finally, while the Report makes note of cracking in the concrete, it goes on to note that "[s]ealing of the cracks is considered to be a part of routine maintenance. No additional action is required." Id. There simply was no indication in the Report that EMG was advising Berwind of the magnitude of the deficiencies in the Garage, the necessity of obtaining an additional evaluation of the structure as it now alleges it

---

[3] See *supra* n. 2.

#529709                                13

advised, or the actual costs attendant to making the necessary repairs to the Garage. See Upton Affidavit, Exhibit 4, at pp. 168-179; Plaintiffs Rule 26(a)(2) Expert Disclosure.

Chiacchia et al. v. Lycott Environmental Research, Inc., 1995 WL 1146824, is directly on point.[4] In Chiacchia, the plaintiff retained the defendant to perform a Chapter 21E inspection of a certain property that he was interested in purchasing, as required by the bank from which he wished to obtain financing. After what can only be described as a cursory review of the property, the defendant issued a report in which it certified that there was no evidence of hazardous materials on the property. It was later determined that there had been a dump site on the property, which reasonable investigation would have revealed. The Court found that the defendant failed in multiple ways to conform to established standards in the industry, including, *inter alia*, by failing to perform the requisite analysis of the property and by ignoring and failing to investigate "obvious 'red flags' signaling potential [problems]...." Id. at p. 11. The Court, noting that the defendant was "in the business of rendering opinions based on what is supposed to be a professionally competent review of the sites it studies," also held that "conducting a slipshod and woefully inadequate investigation of what is known to be an old [] site and then providing the purchasers and lender with a report that opines [that there were no problems with the property] is an unfair and deceptive trade practice." Id.

It is clear that Hoffman conducted what can only be described as a "slipshod and woefully inadequate" evaluation of the Garage, and that she failed to put Berwind on notice of "obvious 'red flags' signaling potential [problems]" in the Garage. Moreover, Hoffman's grossly negligent misrepresentations concerning the deficiencies in the Garage, which a full and complete evaluation of the property would have revealed, and Collins' certification of those misrepresentations, caused Berwind to suffer substantial monetary damage. Accordingly, any

#529709                                   14

suggestion by EMG or the prospective defendants that the proposed amendment fails to state a claim for which relief should be granted would be without merit.

## IV.  CONCLUSION

Leave to amend a complaint under Rule 15(a) is addressed to the sound discretion of the trial court.  Nevertheless, "courts have shown a strong liberality ... in allowing amendments." Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984) quoting 3 Moore's Federal Practice, Par. 15.08.  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." Foman, 371 U.S. at 182.  Where, as here, Berwind's claims are clearly a proper subject of relief, and there is no prejudice to any of the parties or prospective parties, Berwind's Motion For Leave to Amend the Complaint should be allowed.

**WHEREFORE**, Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership respectfully request that this Court allow the plaintiffs to amend their Complaint in the form attached hereto as Exhibit A.

Dated:  June 9, 2005                                Respectfully submitted,

**BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP**

By their attorneys,

/s/ Lauren Timoney Upton
Eric F. Eisenberg, Esq.
BBO No. 544682
Lauren Timoney Upton, Esq.
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109
(617) 345-9000

---

[4] A copy of Chiacchia et al. v. Lycott Environmental Research, Inc., is attached hereto as Exhibit 2 for the Court's convenience.

#529709                           15

## CERTIFICATE OF SERVICE

I, Lauren Timoney Upton, hereby certify that on this 9th day of June, 2005, I served a true and accurate copy of the foregoing Motion to Compel Further Rule 30(b)(6) Deposition Testimony from Defendant and for an Award of Costs upon counsel for Defendant Environmental Management Group, Inc. d/b/a EMG.

/s/ Lauren Timoney Upton

#529709