UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

BERWIND PROPERTY GROUP, INC. and )
NEWTON INVESTORS LIMITED )
PARTNERSHIP, )
)
Plaintiffs, )
)
v. ) DOCKET NO.
) 04-11411-NMG
)
ENVIRONMENTAL MANAGEMENT )
GROUP, INC. d/b/a EMG, )
SANDRA TEREPKA HOFFMAN, and )
MICHAEL COLLINS, )
)
Defendants. )

## SECOND AMENDED COMPLAINT AND JURY DEMAND

### INTRODUCTION

Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership bring this action against Defendants Environmental Management Group, Inc. d/b/a EMG, Sandra Terepka Hoffman, and Michael Collins as a result of the defendants' negligence, gross negligence, negligent and grossly negligent misrepresentations, breach of contract, fraud in the inducement and violation of M.G.L. c. 93A in connection with the negotiation and execution of, and the defendants' work pursuant to, an agreement entered into by EMG and Berwind Property Group, Inc. for professional services performed in Massachusetts.

## PARTIES

1. Plaintiff Berwind Property Group, Inc. is a Pennsylvania corporation with its principal place of business at 1500 Market Street, 3000 Center Square West, Philadelphia, Pennsylvania.

2. Plaintiff Newton Investors Limited Partnership is a Pennsylvania limited partnership which has its principal place of business at 770 Township Line Road, Suite 150, Yardley, Pennsylvania, and is registered to do business in Massachusetts. Pursuant to the purchase and sale agreement, Berwind Property Group, Inc. created Plaintiff Newton Investors Limited Partnership, to take control and ownership of the Property. Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership will be referred to collectively as "Berwind."

3. Defendant Environmental Management Group, Inc. d/b/a EMG ("EMG") is a Maryland corporation which has its principal place of business at 11011 McCormick Road, Baltimore, Maryland, and is registered to do business in Massachusetts.

4. Defendant Sandra Terepka Hoffman ("Hoffman") is an individual with a principal residence at 4422 W. Clear Avenue, Tampa, Florida.

5. Defendant Michael Collins ("Collins") is an individual with a principal residence at 1707 Stone Ridge Court, Bel Air, Maryland.

## JURISDICTION AND VENUE

6. Jurisdiction and venue are predicated on 28 USC § 1332, and 28 USC § 1391. There is diversity of citizenship between the parties and the amount in controversy between the parties exceeds $75,000, exclusive of interest and costs.

## FACTS

7. On or about March 17, 1999, Berwind and EMG entered into an agreement (the "Contract") whereby EMG agreed to perform a Phase I Environmental Site Assessment and an

Enhanced Property Condition Evaluation (the "Services") of the buildings located at 1210-1230 Washington Street in Newton, MA (the "Property").

8. Pursuant to the terms of the Contract, EMG agreed, *inter alia*, to visit the Property to observe and evaluate the general condition of the building and site improvements; to provide a full evaluation of the Property including improvements and structural systems; to identify those components on the Property that exhibited deferred maintenance issues; and to provide estimates for future maintenance costs of the Property.

9. Pursuant to the terms of the Contract, EMG agreed to perform said Services "in accordance with industry-accepted due diligence practice, and using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service."

10. Pursuant to the terms of the Contract, EMG agreed to provide a qualified professional engineer to inspect and evaluate the Property.

11. In or around March 1999, Hoffman, on behalf of EMG, visited the Property, inspected the improvements located on the Property, interviewed personnel at the Property, and reviewed a number of documents related to the Property.

12. Hoffman was the only EMG employee to visit or inspect the parking garage located on the Property (the "Garage").

13. On or about April 6, 1999, EMG provided Berwind with a Property Condition Evaluation report (the "Report"), which purported to reflect the observations made by Hoffman during her inspection of the Property.

14. The Report was signed by Michael Collins and certified that the Services had been performed in accordance with the Contract requirements and "in accordance with industry-accepted due diligence practice."

15. Although EMG's Report identified a number of other existing and potential problems with the Property, EMG's Report failed to identify or make note of the fact that there were significant structural problems and waterproofing deficiencies in the Garage, and failed to provide an appropriate evaluation of the maintenance needs of the Garage and the costs for same.

16. Hoffman failed to observe and/or identify and/or appreciate and/or make note in the Report of the significance of open and obvious signs of structural distress in the Garage, including serious topside cracking around columns, sagging of the elevated structural decks, and indications of significant ongoing corrosion of reinforcing steel, despite the fact that none of these conditions required measurement, calculation, and/or testing to detect.

17. Hoffman also failed to observe the open and obvious lack of deck waterproofing membranes in the Garage, and failed to discuss in the Report the importance of deck waterproofing membranes in elevated open parking garages.

18. Hoffman also failed to advise Berwind, in the Report or otherwise, of material deficiencies of which she was aware, despite knowing that Berwind was going to rely on her report of such deficiencies (or lack thereof) in connection with its decision to purchase the Property.

19. As a direct and proximate result of the representations made by EMG, Hoffman, and Collins in the EMG Report, and the lack of notice of any of the significant structural and waterproofing deficiencies, Berwind decided to purchase the Property.

20. After purchasing the Property, Berwind became aware that the Garage required extensive necessary repairs and the application of the necessary deck waterproofing membranes.

21. In direct contradiction to the representations of EMG, Hoffman, and Collins, the Garage was suffering from structural distress, including serious topside cracking around columns, sagging of the elevated structural decks, and significant ongoing corrosion of reinforcing steel.

22. Had Berwind known that the parking garage suffered from significant structural problems and waterproofing deficiencies, it would not have purchased the Property for $11.7 million as it did, or it would have purchased the Property for a lower price, after a negotiation which took into account the additional costs attendant to the repair of the Garage and the application of the necessary deck waterproofing membrane.

23. As a direct, proximate, and reasonably foreseeable result of the defects and deficiencies in the parking garage, and the failure of EMG, Hoffman and Collins to identify said defects and deficiencies, Berwind has incurred substantial additional costs in the evaluation, repair, and reconstruction of numerous elements of the Garage.

24. In direct contradiction of EMG's specific representations that a qualified engineer would perform the Services, EMG failed to assign a qualified engineer to perform the Services.

25. On information and belief, EMG was aware at the time it entered into the Contract that it would not send a qualified person to perform a complete structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract, but rather would send whatever staff member was available.

26. On information and belief, EMG was aware at the time it assigned Hoffman to perform the Services that she was a *mechanical* engineer, and that Hoffman was not qualified to

perform a complete structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract.

27. The material representations made by EMG as described above were intended to induce and did induce Berwind to enter into the Contract.

28. Berwind reasonably relied to its detriment on the representations of EMG.

29. EMG made the representations described above knowing that the representations were false, and/or without knowing whether they were true or false, and/or in reckless disregard for their truth.

30. In addition, in the course of its solicitation of Berwind, and in connection with its representations to Berwind, EMG was under a duty to disclose, and failed to disclose to Berwind, material facts that it knew or reasonably should have known about Hoffman, including and without limitation, (a) that Hoffman was a mechanical engineer; and (b) that Hoffman did not have the training or experience necessary to perform a complete structural and waterproofing inspection and evaluation of the Garage.

31. In addition, in connection with its representations to Berwind, in the form of the Report, EMG was under a duty to disclose, and failed to disclose to Berwind, material facts that it knew about the performance of the Services, including, without limitation, that no one from EMG who was qualified to examine and evaluate the structure of the Garage had, in fact, examined and/or evaluated the Garage.

32. The material representations made by EMG as described above were intended to induce and did induce Berwind into believing that the Contract requirements had been fulfilled.

33. Berwind reasonably relied to its detriment on the representations of EMG.

34. EMG made the representations described above knowing that the representations were false, and/or without knowing whether they were true or false, and/or in reckless disregard for their truth.

35. In direct contradiction of Collins' specific representations that the Services had been performed in accordance with the Contract requirements and "in accordance with industry-accepted due diligence practice," the Services were not performed in accordance with the Contract requirements or "in accordance with industry-accepted due diligence practice."

36. Collins was aware at the time that he certified the Report that Hoffman was a *mechanical* engineer, and, if he had reviewed Hoffman's EMG Training Records, he would have known that Hoffman was not qualified to perform a complete structural and waterproofing inspection and evaluation of the parking garage as required by the terms of the Contract.

37. In addition, in connection with his representations to Berwind, in the form of the certification of the Report, Collins was under a duty to disclose, and failed to disclose to Berwind, material facts that he knew or reasonably should have known about Hoffman, including and without limitation, (a) that Hoffman was a mechanical engineer; and (b) that Hoffman did not have the training or experience necessary to perform a complete structural and waterproofing inspection and evaluation of the Garage.

38. In addition, in connection with his representations to Berwind, in the form of the certification of the Report, Collins was under a duty to disclose, and failed to disclose to Berwind, material facts that he knew about the performance of the Services, including, without limitation, that no one from EMG who was qualified to examine and evaluate the structure of the Garage had, in fact, examined and/or evaluated the Garage.

39.  The material representations made by Collins as described above were intended to induce and did induce Berwind into believing that the Contract requirements had been fulfilled.

40.  Berwind reasonably relied to its detriment on the representations of Collins.

41.  Collins made the representations described above knowing that the representations were false, and/or without knowing whether they were true or false, and/or in reckless disregard for their truth.

42.  As a direct result of Berwind's reliance on the misrepresentations and omissions by EMG, Hoffman, and Collins: (i) Berwind received no value for the $9,300.00 it paid to EMG for the Services; and (ii) Berwind was forced to incur substantial costs to repair the structural and waterproofing deficiencies in the Garage.

## COUNT I
## NEGLIGENCE AND GROSS NEGLIGENCE BY EMG

43.  Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 42 above as though fully set forth herein.

44.  EMG owed a duty to Berwind to perform its work under the Contract in accordance with industry-accepted due diligence and using that degree of care and skill ordinarily exercised under similar conditions by licensed, reputable engineers.

45.  EMG breached its duty of reasonable care owed to Berwind by performing the Services and issuing the Report with reckless and wanton disregard of its duties owed to Berwind, thereby exposing Berwind to unwarranted risk.

46.  EMG's negligence, and reckless and wanton breach of its duties to Berwind, directly, proximately, and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT II
## NEGLIGENT AND GROSSLY NEGLIGENT MISREPRESENTATIONS AND OMISSIONS BY EMG

47. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 46 above as though fully set forth herein.

48. The representations and omissions of EMG, its agents, and its employees set forth above were false and misleading at the time they were made and were made negligently and without the exercise of due care.

49. As EMG, its agents, and employees intended and should have foreseen, Berwind reasonably relied on and was induced by the false and misleading representations and omissions described above to purchase the Property, with such reliance resulting in substantial foreseeable damage to Berwind.

50. EMG's negligent and grossly negligent misrepresentations and omissions directly, proximately and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT III
## BREACH OF CONTRACT BY EMG

51. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 50 above as though fully set forth herein.

52. For good and valuable consideration, Berwind entered into a written Contract with EMG by which EMG was to provide certain services to Berwind.

53. Pursuant to the terms of the Contract, EMG was to observe and evaluate the general condition of the Property, provide a full description and evaluation of the Property and structural systems, identify those components on the Property that exhibited deferred maintenance issues, and provide estimates for future maintenance costs of the Property. Further, EMG was contractually obligated to perform it work "in accordance with industry-accepted due diligence

practice and using that degree of care and skill ordinarily exercised by licensed, reputable engineers under similar conditions."

54. EMG failed to observe, fully describe, identify, and/or estimate the cost of repairing the structural problems and waterproofing deficiencies in the Garage which engineers using that degree of care and skill ordinarily exercised by licensed, reputable engineers under similar conditions would have easily identified.

55. EMG's breach of duties that it owed to Berwind under the Contract has caused and continues to cause damage to Berwind in an amount in excess of $900,000.00.

## COUNT IV
## FRAUD IN THE INDUCEMENT BY EMG

56. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 55 above as though fully set forth herein.

57. EMG represented to Berwind that a qualified professional engineer would inspect and evaluate the Property and perform engineering services pursuant to the terms of the Contract.

58. EMG purposefully and falsely represented to Berwind that the person who would inspect and evaluate the Garage would be qualified to do so, and/or failed to disclose that the person who would inspect and evaluate the Garage would be not be qualified to do so.

59. EMG purposefully failed to disclose to Berwind that the EMG employee who would be conducting the inspection and evaluation would not be not qualified to perform a complete structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract, and falsely represented that said person would be qualified to perform a complete structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract.

60. Berwind reasonably relied upon EMG's willful non-disclosure and false representation of these material facts in deciding to enter into the Contract with EMG which contains, among other things, purported limitations on the amount which Berwind may recover from EMG as a result of EMG's professional negligence or breach of contract.

61. EMG's fraudulent inducement of Berwind to enter into the Contract with EMG directly, proximately and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT V
## NEGLIGENCE AND GROSS NEGLIGENCE BY HOFFMAN

62. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 61 above as though fully set forth herein.

63. Hoffman owed a duty to Berwind to perform the Services in accordance with industry-accepted due diligence and using that degree of care and skill ordinarily exercised under similar conditions by licensed, reputable engineers.

64. Hoffman breached her duty of reasonable care owed to Berwind by her failure to look for and make note of open and obvious deficiencies in the Garage while knowing that Berwind was going to rely on her report of such deficiencies (or lack thereof) in its decision to purchase the Property, thereby exposing Berwind to unwarranted risk.

65. Hoffman breached her duty of reasonable care owed to Berwind by her failure to note in the Report significant deficiencies in the Garage of which she was aware while knowing that Berwind was going to rely on her report of such deficiencies (or lack thereof) in its decision to purchase the Property, thereby exposing Berwind to unwarranted risk.

66. Hoffman's negligence, and reckless and wanton breach of her duties to Berwind, directly, proximately, and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT VI
### NEGLIGENT AND GROSSLY NEGLIGENT MISREPRESENTATIONS AND OMISSIONS BY HOFFMAN

67. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 66 above as though fully set forth herein.

68. The representations and omissions of Hoffman set forth above were false and misleading at the time they were made, and were made knowing that they were false, and/or without knowing whether they were true or false, and/or in reckless disregard for their truth.

69. As Hoffman intended and should have foreseen, Berwind reasonably relied on and was induced by the representations and omissions described above to purchase the Property, with such reliance resulting in substantial foreseeable damage to Berwind.

70. Hoffman's negligent and grossly negligent misrepresentations and omissions directly, proximately, and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT VII
### NEGLIGENCE AND GROSS NEGLIGENCE BY COLLINS

71. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 70 above as though fully set forth herein.

72. Collins owed a duty to Berwind to perform the Services in accordance with industry-accepted due diligence and using that degree of care and skill ordinarily exercised under similar conditions by licensed, reputable engineers.

73. Collins breached his duty of reasonable care owed to Berwind by certifying the Report while knowing that Hoffman was not qualified to perform the Services, while knowing

that no qualified person (i.e., a structural engineer and/or an individual with appropriate structural training *vis* garages) had performed the Services, and while knowing that Berwind was going to rely on the Report in making the determination to purchase the property.

74. Collins' negligence, and reckless and wanton breach of his duties to Berwind, directly, proximately, and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT VIII
### NEGLIGENT AND INTENTIONAL MISREPRESENTATIONS AND OMISSIONS BY COLLINS

75. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 74 above as though fully set forth herein.

76. The representations and omissions of Collins set forth above were false and misleading at the time they were made, and were made knowing that they were false, and/or without knowing whether they were true or false, and/or in reckless disregard for their truth.

77. As Collins intended and should have foreseen, Berwind reasonably relied on and was induced by the representations and omissions described above to purchase the Property, with such reliance resulting in substantial foreseeable damage to Berwind.

78. Collins' intentional misrepresentations and omissions directly, proximately and foreseeably caused damage to Berwind in an amount in excess of $900,000.00.

## COUNT IX
### VIOLATIONS OF M.G.L.A. c. 93A BY EMG, HOFFMAN AND COLLINS

79. Berwind realleges and incorporates by reference the allegations of Paragraphs 1 through 78 above as though fully set forth herein.

80. EMG, Hoffman, and Collins were engaged in trade or commerce as such terms have been defined by, and construed under, Mass. Gen. Laws c. 93A, §§ 1, 2 and 11.

81. The acts and conduct of EMG, Hoffman, and Collins as set forth above constitute unfair and deceptive acts and practices within the meaning of Mass. Gen. Laws c. 93A, §§ 2 and 11.

82. The unfair and deceptive acts and practices of EMG, Hoffman, and Collins occurred primarily and substantially within the Commonwealth of Massachusetts.

83. The use and employment of such unfair and deceptive acts and practices by EMG, Hoffman, and Collins has adversely affected Berwind in that it has caused, and will have the effect of causing, Berwind to suffer a foreseeable loss of money and property.

84. The use and employment of such unfair and deceptive acts and practices by EMG, Hoffman, and Collins was willful and knowing and has caused Berwind to suffer foreseeable monetary losses, thereby entitling Berwind to multiple damages, costs and attorneys' fees pursuant to Mass. Gen. Laws c. 93A.

**WHEREFORE**, Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership demand that this Court:

1. Enter judgment against EMG on Plaintiffs' claims of negligence and gross negligence, negligent and grossly negligent misrepresentation, breach of contract, and fraud in the inducement in an amount in excess of $900,000.00, together with interest thereon and costs;

2. Enter judgment against Hoffman on Plaintiffs' claims of negligence and gross negligence and negligent and grossly negligent misrepresentation in an amount in excess of $900,000.00, together with interest thereon and costs;

3. Enter judgment against Collins on Plaintiffs' claims of negligence and gross negligence and negligent and intentional misrepresentation in an amount in excess of $900,000.00, together with interest thereon and costs;

4.  Enter judgment against EMG, Hoffman, and Collins on Plaintiffs' claims of violation of M.G.L.C. c. 93A, and award Plaintiffs treble damages and attorneys' fees pursuant to Massachusetts General Laws, Chapter 93A; and

5.  Award such other further relief as this Court deems proper and just.

## JURY DEMAND

**PLAINTIFFS DEMAND A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,

**BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP,**

By its attorneys,

/s/  Lauren Timoney Upton
_____
Eric F. Eisenberg, Esq.
BBO No. 544682
Lauren Timoney Upton, Esq.
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109-1775
(617) 345-9000

Dated: June 9, 2005