UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.  04-11411-NMG

| | |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP,<br>                    Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG,<br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION
FOR LEAVE TO AMEND THE COMPLAINT TO INCLUDE
ADDITIONAL DEFENSES AND FOR AN AWARD OF COSTS**

Now comes the defendant, Environmental Management Group, Inc. ("EMG"),

and in opposition to the plaintiffs' Motion For Leave to Amend the Complaint to Include

Additional Defendants (hereinafter "Motion to Amend"), made after the close of all

discovery, states as follows:

**INTRODUCTION**

At issue in the plaintiffs' Motion to Amend is a request to join as parties two

current employees of EMG, Sandra Terepka-Hoffman and Michael Collins.  This request

is being made after having conducted the depositions of Ms. Hoffman and Mr. Collins,

who appeared voluntarily as employees of EMG, and following the discovery deadline.[1]

(Plaintiff's Memorandum of Law [hereinafter "Memorandum"] at p. 11).  For reasons set

forth below EMG asserts that the addition of Hoffman and Collins as individual

---

[1]    Although plaintiffs contend that "discovery is ongoing" in its Factual and Procedural History, (Memorandum at 8), plaintiffs later concede that "the discovery deadline has passed".  (Memorandum at 11).  The only discovery which is ongoing is the plaintiffs' production of further witnesses pursuant to their 30(b)(6) obligations and a dispute over the 30(b)(6) deposition of the defendant.

defendants is moot as a matter of law. Moreover, the proposed late amendment is unduly prejudicial and offered solely to harass the defendant ant its employees, and thus is in bad faith. Therefore, Plaintiff's Motion to Amend should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

As set forth in plaintiffs' Memorandum, this action arises out of a contract between plaintiffs and EMG executed in March 1999, pursuant to which EMG was to perform, *inter alia*, a property condition evaluation of the subject premises. Following a site view, in April 1999, EMG provided the plaintiffs with a Property Condition Evaluation Report (the "Report"). In the Report, Hoffman was identified as the EMG employee who performed the evaluation, and Collins was identified as EMG's program supervisor who reviewed Hoffman's work to verify that it complied with the contract requirements. (Memorandum at 1). As such, the involvement of the two EMG employees, Hoffman and Collins, has been openly apparent to the plaintiffs since the date of the EMG report, April 16, 1999.

Plaintiffs filed their Complaint and Jury Demand against EMG as sole defendant on March 8, 2004. Two and one-half months later, on May 28, 2004, plaintiffs filed their First Amended Complaint and Jury Demand, retaining EMG as sole defendant. The First Amended Complaint consisted of 43 numbered paragraphs, alleging negligence and gross negligence, negligent and grossly negligent misrepresentations, breach of contract, fraud in the inducement, and violation of M.G.L. c. 93A. In neither the original Complaint, the First Amended Complaint, nor the Proposed Second Amended Complaint do the plaintiffs allege any contractual relationship exists between plaintiffs and Hoffman or

Collins individually, nor do plaintiffs allege that these individuals acted outside the scope of their employment at EMG.

The discovery deadline was extended, by agreement, until April 11, 2005. Prior to the close of discovery, plaintiffs deposed Hoffman and Collins, residents of Florida and Maryland respectively, who appeared voluntarily as employees of EMG. Now, 15 months after filing the initial complaint, more than one year after filing its First Amended Complaint, after having deposed Hoffman and Collins, and nearly two months after the close of discovery, plaintiffs seek to join these employees as defendants in their individual capacity, adding 41 additional numbered paragraphs to their complaint (for a total of 84 numbered paragraphs), notwithstanding Hoffman's and Collins' status as employees of the corporate entity plaintiff has already sued.

## ARGUMENT

**I.    The Causes of Actions For Which Plaintiffs Seek To Amend Additional Defendants Are Moot.**

    A.    Plaintiffs Cannot Sue Corporate Employees For Acts Within the Scope of Their Employment

Even the broadest reading of the proposed Second Amended Complaint demonstrates that the claims the plaintiffs seek to assert against Hoffman and Collins are for an alleged deficiency in the performance of their job responsibilities as employees of EMG. There is, and can be, no allegation of malicious conduct on the part of these individuals. Rather, the plaintiffs seek to impose personal liability for actions taken by Hoffman and Collins pursuant to a contract between plaintiff Berwind and EMG. However,

> [i]n the absence of malice, one who knowingly and voluntarily contracts with a corporation must look to the corporation, not to its officers, for redress, even for "obvious" failures to perform contractual promises. Massachusetts privileges

> even intentional interference with contract rights by the employees of a
> contracting corporation if, as here, the defendant acted for a purpose that was
> "part of his employment responsibilities." Steranko v. Inforex, Inc., 5 Mass. App.
> Ct. 253, 272-73, 362 N.E.2d 222, 235-36 (1977); Caverno v. Fellows, 300 Mass.
> 331, 336-37, 15 N.E.2d 483 (1938).

Union Mut. Life Ins. Co. v. Chrysler Corp., 793 F.2d 1, 12-13 (1st Cir. 1986). Given a

complete absence in this case of an allegation of malicious intent, plaintiffs must look to

EMG, not its employees, "for redress, even for 'obvious' failures to perform contractual

promises.

B.      The Economic Loss Doctrine Prohibits Plaintiffs From Recovering
        Against Hoffman or Collins in Tort or Pursuant to M.G.L. c. 93A, § 11

Plaintiffs do not allege any breach of contract against Hoffman or Collins.

Instead, plaintiffs' allegations against Hoffman and Collins are based in tort and upon

M.G.L. c. 93A, § 11. Specifically, the plaintiffs allege that they incurred unexpected

repair costs to address deficiencies in a portion of the property covered by the Report.

However, the First Circuit has expressly held that such purely economic losses cannot be

recovered under tort theory or under M.G.L. c. 93A, § 11. Canal Electric Co. v.

Westinghouse Electric Co., 973 F.2d 988, 998 (1st Cir. 1992). The underlying reasoning

behind the First Circuit adoption of the economic loss doctrine is the veritable watershed

of litigation that would result from expanding tort liability to include economic losses.

> Tort law, however, does not normally permit a plaintiff to recover purely
> economic losses caused by the negligence of another person. One can best
> understand the policy reasons that underlie this traditional limitation on tort
> recovery by focusing upon an auto accident, caused by a driver's ordinary
> negligence, in the middle of the Callahan Tunnel. Were the law to permit persons
> who simply suffer consequent economic harm to recover, even for foreseeable
> harm, liability would be enormous, for traffic delay is easily foreseeable, that
> delay is harmful, and that harm is costly. As a result, the law restricts liability for
> this type of negligently-caused economic harm. . .[2]

---

[2]      The only instances of recoverable economic loss noted by the Canal Electric court are special
circumstances including intentional tort, physical harm and libel, none of which are alleged by plaintiffs in

Canal Electric, 973 F.2d at 998.  The same is true for liability under G.L. c. 93A. "Chapter 93A [does not] reach beyond the traditional rule in a tort-based action." Id., affirming District Court opinion, 756 F. Supp. 620, 630 (D. Mass. 1991) (holding, "purely economic damages such as those alleged by [plaintiffs] cannot be recovered in an action under Chapter 93A, § 11.").  In an effort to circumvent this rule, the plaintiffs have tried to style some of their claims as being for "misrepresentation."  However, looking to the substance, rather than the characterization, of those claims, it is clear the allegations do not support the asserted cause of action.

To sustain a claim for misrepresentation, negligent or otherwise, a plaintiff must first show a false statement of a material **fact**.  Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77 (1991); Robertson v. Gaston Snow & Ely Bartlett, 404 Mass. 515, 523 (1989).  For a statement to be one of fact, it must be of the type that is susceptible of **actual knowledge** at the time it was made.  Snyder v. Sperry and Hutchinson Co., 368 Mass. 433, 444 (1975).  In contrast, a statement is one of opinion if it expresses the belief of the maker, without certainty, as to the existence of a fact, or his judgment or estimate as to quality, value, authenticity, or other matters of judgment.  McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575 (1995), quoting Restatement (Second) of Torts, §538A (1977).  And such statements of opinion, of conditions to exist in the future, or of matters promissory in nature, are not actionable.  Chedd-Angier Production Co., Inc. v. Omni Publications International, Ltd., 756 F. 2d 930, 939 (1st Cir. 1985).  The failure to establish this element is fatal to a misrepresentation claim.  Zimmerman v. Kent, 31

---

the instant action.  See 973 F.2d at 998; see also FMR Corp. v. Boston Edison Co., 415 Mass. 393, 395 (1993) (affirming, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage. . .We continue to align ourselves with the majority of jurisdictions which have considered the issue.") (citations omitted).

Mass. App. Ct. at 77. However, neither Hoffman nor Collins made a misrepresentation of fact.

The claimed "misrepresentation" made by Ms. Hoffman is that she failed to observe, identify, or appreciate certain conditions the plaintiffs allege existed at the subject premises. (Memorandum at 3.) Essentially, it is alleged that in reviewing a portion of the property, Hoffman failed to recognize that certain conditions represented potentially significant problems with the structure. But what the plaintiffs seek to term "misrepresentations" are clearly just assertions that Hoffman failed to offer a proper opinion as to the condition of the property or to estimate the cost of addressing conditions purportedly existing at that time. Such statements of opinion, estimate, expectation or judgment cannot form the basis of a misrepresentation claim. Powell v. Rasmussen, 355 Mass. 117, 118 (1969).

With regard to Collins, the sole allegation against him is that he failed to advise the plaintiffs that "Hoffman was not qualified to perform the Services." (Memorandum at 7.) These assertions, even if true (which is expressly denied) are not actionable bases for claims of misrepresentation. From this allegation, it appears to be the plaintiffs' opinion that Hoffman, a professional engineer who had performed over 300 property evaluations for EMG alone (as well as hundreds of others for other companies) was not qualified to perform the evaluation at issue. However, the plaintiffs have presented nothing to suggest that Hoffman was *per se* not qualified to perform the services set forth in the contract with EMG. Moreover, neither Collins, Hoffman, nor anyone else at EMG agrees with this assertion. As such it is nothing more than a dispute over an opinion, which again cannot form a basis for a claim of misrepresentation.

The "misrepresentation" claims which the plaintiffs seek to assert against Hoffman and Collins (and which have been asserted against EMG) are merely for alleged failures to offer proper **opinions** as to the effect of certain conditions and accurate repair cost **estimates** for problems with the premises, and instead only suggested further, more in depth study. But such estimates constitute the opinion of these individuals and assessment of future conditions, not matters known to a certainty. As such, under Massachusetts law, they cannot form the basis of a misrepresentation claim. <u>Snyder v. Sperry & Hutchinson Co.</u>, 368 Mass. 433, 444 (1975), quoting from <u>Powell v. Rasmussen</u>, 355 Mass. 117, 118 (1969). Therefore, the addition of such claims to this existing litigation would be moot.

C.    <u>Hoffman and Collins Cannot Be Held liable Under G.L. c. 93A</u>

Plaintiffs also seek to add claims against Ms. Hoffman and Mr. Collins pursuant to G.L. c. 93A, alleging that ". . .Hoffman, and Collins were engaged in trade or commerce as such terms have been defined by, and construed under, Mass. Gen. Laws c. 93A, §§ 1, 2 and 11." (Plaintiffs' Second Amended Complaint and Jury Demand at ¶ 80). Plaintiffs do not support this assertion in the Memorandum because there simply is no basis for it.

The definition of "trade or commerce" under M.G.L. c. 93A states:

"Trade" and "commerce" shall include the advertising, the offering for sale, rent or lease, the sale, rent, lease or distribution of any services and any property, tangible or intangible, real, personal or mixed, any security as defined in subparagraph (k) of section four hundred and one of chapter one hundred and ten A and any contract of sale of a commodity for future delivery, and any other article, commodity, or thing of value wherever situate, and shall include any trade or commerce directly or indirectly affecting the people of this commonwealth.

966911v1

M.G.L. c. 93A, § 1(b). Given this statutory definition, and the case law interpreting it, it is undisputed that neither Hoffman nor Collins personally engaged in any transaction with the plaintiffs.

Neither Hoffman nor Collins, as employees of EMG, advertised, offered, or provided any services to the plaintiffs in an individual capacity. Rather, all of Hoffman's and Collins' dealings with the plaintiffs occurred entirely as EMG employees, and the plaintiffs do not allege otherwise. While Massachusetts courts have held that corporate officers can be held liable under c. 93A for participating in unfair and deceptive acts, the courts have also declined to extend that type of liability to employees who do not have the control of a corporate officer. Patriot Plastics & Supply v. Polymer Corp., 3 Mass. L. Rep. 267 (Mass. Super. Ct., 1995). Having deposed both Hoffman and Collins, the plaintiffs were fully aware prior to filing their motion to Amend that Hoffman and Collins were neither corporate officers nor directed the actions of EMG. Given the plaintiffs' knowledge prior to the filing of the instant Motion to Amend, it is clear that they were fully aware that neither Hoffman nor Collins can be subject to personal liability under M.G.L. c. 93A, § 11.[3]

---

[3]     The only case which the plaintiffs cite to support their "belief" that there is a basis for these claims is Chiacchia, v. Lycott Environmental Research, Inc., 1995 WL 1146824 (Sup. Ct. 1995). However, that case merely holds that a corporation (and not any individual employee) can be held liable under G.L. c. 93A for issuing a G.L. c. 21E environmental site report where the defendant failed to even inspect nineteen acres of wooded land which were part of the subject premises. As these facts are not remotely applicable to those in the instant matter, this single Superior Court decision does not provide support for any claim that Hoffman or Collins may be held individually liable under G.L. c. 93A.

D.      The Statute of Limitations For Actions in Tort and Under Chapter 93A
        Against Hoffman and Collins Expired More Than One Year Ago

1.      *Statute of Limitations For Tort is 3 Years*

The statute of limitations for claims of tort is three years, as codified in M.G.L. c. 260, § 2A, which requires that such actions be commenced "within three years next after the cause of action accrues." The EMG Report at issue is dated April 1999. In order for plaintiffs' tort claims against Hoffman and Collins to be timely, they must not have reasonably discovered their alleged injury before June 2002. However, the plaintiffs have actually alleged that the conditions which Hoffman failed to report on were observable when they assumed ownership of the property in 1999. As such, the plaintiffs knew or should have known of any potential tort claims against Hoffman or Collins prior to June 2002. Therefore, their claims in tort have been made after the expiration of the applicable three year statute of limitations and must be precluded.[4]

2.      *Statute of Limitations For 93A Violations is 4 Years*

The statute of limitations for 93A actions is four years, as codified in M.G.L. c. 260, § 5A, which requires that such actions be commenced "within four years next after the cause of action accrues." The EMG Report at issue is dated April 1999. In order for plaintiffs' Chapter 93A claims against Hoffman and Collins to be timely, they must not have reasonably discovered their alleged injury before June 2001. Because plaintiffs knew or should have known of any potential Chapter 93A claims against Hoffman or Collins prior to June 2001, their Chapter 93A claims have been made after the expiration of the applicable three year statute of limitations and must be precluded.

---

[4]      This would apply equally even if the claims were said to relate back to the filing of this suit, as the statute of limitations had expired on the plaintiffs' tort and G.L. c. 93A claims prior to the initiation of this action.

**II.     Leave To Amend Should Not Be Granted Where Plaintiffs Act In Bad Faith, With Undue Delay and Cause the Non-Moving Party Undue Prejudice.**

In assessing whether to allow a motion to amend a complaint, the Court must look to both the timing and the context in which it is filed.  <u>Steir v. Girl Scouts of the USA</u>, 383 F.3d 7, 11 (1st Cir. 2004).  A plaintiff is permitted to amend a complaint once as a matter of right prior to the filing of a responsive pleading by the defendant, which the plaintiff did in this case.  Fed. R. Civ. P. 15(a).  Thereafter, the permission of the court or the consent of the opposing party is required.

The default rule mandates that leave to amend is to be "freely given when justice so requires," id., unless the amendment "would be futile, or reward, *inter alia*, undue or intended delay." <u>Resolution Trust Corp. v. Gold</u>, 30 F.3d 251, 253 (1st Cir. 1994).  As a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting.  Scheduling orders, for example, typically establish a cut-off date for amendments (as was the case here).  Once a scheduling order is in place, the liberal default rule is replaced by the more demanding "good cause" standard of Fed. R. Civ. P. 16(b). <u>O'Connell v. Hyatt Hotels of P.R.</u>, 357 F.3d 152, 154-155 (1st Cir. 2004).  This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent.  <u>Id.</u>  In this case, viewing the Motion to Amend by the applicable standard, the plaintiffs have failed to demonstrate "good cause" for their undue delay in seeking to amend their complaint.  Instead, given the timing and the context of the Motion to Amend, it is evident that it is being asserted without basis in an effort to circumvent a legitimate limitation of liability provision freely entered into by the parties.  As such conduct would also have the effect of unfairly prejudicing the proposed new defendants, the Motion to Amend should be denied.

A.    <u>Undue Delay</u>

"Where . . . considerable time has elapsed between the filing of the complaint and the motion to amend, the movant has the burden of showing some 'valid reason for his neglect and delay.'" <u>Grant v. News Group</u>, 55 F.3d 1, 6 (1st Cir. 1995), citing <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 933 (1st Cir. 1983), quoting <u>Hayes v. New England Millwork Distribs., Inc.</u>, 602 F.2d 15, 19-20 (1st Cir. 1979) (deeming a seventeen-month delay between the initiation of the action and filing of a motion to amend, served ten days prior to the close of discovery, to be undue). In this case, the plaintiffs seek to amend the complaint fifteen months after the initial complaint had been filed, over a year after the first amendment, and after the discovery period has already closed. As such delay is without "valid reason," on this basis alone the Motion to Amend should be denied.

The plaintiffs have argued that "delay alone, regardless of its length, is not enough to bar [an amendment]…" (Memorandum at 9.) However, current First Circuit case law has expressly rejected this assertion, noting that the proposition "that mere delay is not reason enough to deny a motion for leave to amend. . .is contrary to Supreme Court and circuit precedent holding that, especially where allowing the amendment will cause further delay in the proceedings, 'undue delay' in seeking the amendment may be a sufficient basis for denying leave to amend." <u>Acosta-Mestre v. Hilton Int'l of P.R., Inc.</u>, 156 F.3d 49, 52 (1st Cir. 1998), citing <u>Foman v. Davis</u>, 371 U.S. 178 (1962), <u>Grant v. News Group Boston, Inc.</u>, 55 F.3d 1, 5 (1st Cir. 1995) (affirming denial of leave after fourteen-month delay), <u>Stepanischen v. Merchants Despatch Transp. Corp.</u>, 722 F.2d 922, 933 (1st Cir. 1983) (affirming denial of motion for leave filed after seventeen-month

delay), Hayes v. New England Millwork Distribs, Inc., 602 F.2d 15, 19 (1st Cir. 1979) ("It is clear that 'undue delay' can be a basis for denial.").[5]

Moreover, even beyond the mere time delay, the plaintiffs have failed to demonstrate a valid reason for the failure to join these individuals as parties if there was a valid basis for doing so. The basis of plaintiffs' "new" allegations center around the deficiencies they found in EMG's April 1999 Report. The plaintiffs have known about Hoffman and Collins since the filing of their initial complaint 15 months ago (and in fact since the EMG Report in April 1999). Indeed, the plaintiffs acknowledge that "the claims concern the same evaluation of the Garage, the same Report, the same type of negligence concerning the work performed. . ." as relating to their claims against EMG. (Memorandum at 12.) As everything is the "same", nothing prevented plaintiffs from naming Hoffman and Collins as individual defendants 15 months ago. Hohenleitner v. Norfolk-Bristol Ambulance Service, Inc., 5 Mass. L. Rptr. 28, 645-46 (Sup. Ct. 1996) (denying motion to amend complaint, noting "the discovery period did not uncover new information that led to the Motion to Amend: the parties to be added were known to all existing parties when the Complaint was filed. . .The possibility of the two additional defendants' involvement in this litigation is not a fact that has recently been discovered and the delay in seeking to add the parties is not excusable.")

To avoid this consequence, the plaintiffs have offered only one excuse; they assert that they did not know until her deposition that Hoffman was not a structural engineer, and thus not (in their unsupported opinion) "qualified" to do perform the services at

---

[5]    The Acosta Mestre court affirmed the district court's denial of plaintiff's motion to amend as it was made "fifteen months after the initial complaint had been filed, and over a year after the first amendment. . .[noting] By that time, discovery was set to conclude in one month." 156 F.3d at 52. That is almost the identical timeline as this case, except that here the discovery period has already closed.

issue. But this assertion is simply false. In fact, included in the Property Condition Evaluation Report at issue, which was apparently provided to the Court as Exhibit 3 to the Motion to Amend,[6] is the resume of Hoffman (*nee* Terepka) which identifies her background as mechanical engineering. Moreover, contained in that report are recommendations from Hoffman and EMG that the plaintiffs retain a structural engineer to do a further study of certain aspects of the property. Given this information, the plaintiffs clearly knew that Hoffman was not a structural engineer when they received the report in April of 1999. As such, there is no "good cause" for failing to pursue any purported claim against Hoffman or Collins when this action was initially brought.

B.    Undue Prejudice

In their Motion to Amend, plaintiffs' counsel make the broad-sweeping assertion that "neither EMG nor the prospective defendants can present any sound argument to this court that any reason exists such that leave should not be granted." (Memorandum at 9.) The plaintiffs also assert that they "cannot imagine that Hoffman or Collins would need to conduct any discovery distinguishable from that already performed by EMG." However, given the claims which the plaintiffs seek to assert, such statements are contrary to reason.

In amending their complaint, the plaintiffs seek to attach personal liability to Hoffman and Collins in the amount of $900,000.00. Included in their claims against them are allegations of intentional misrepresentation and unfair business practices, which may not be covered by insurance. Moreover, as Hoffman and Collins do not have a

---

[6]    EMG was not provided copies of the exhibits to the Motion to amend as they were evidently provided to the Court by mail, but not also so forwarded to counsel for EMG. As such, EMG requests leave of this Court to amend its opposition should the Court deem those exhibits to be relevant to its decision on the plaintiffs' Motion.

966911v1

contractual relationship with the plaintiffs, it is assumed that the plaintiffs will argue that the limitation of liability provision contained in EMG's contract would not apply to these new defendants. Under these circumstances, EMG "cannot imagine" that Hoffman or Collins would not have acted differently had they known that they were potentially on the hook personally for close to one million dollars. At the very least, they had the right to consider issues such as representation, insurance, and indemnification during the course of discovery in this action, and certainly prior to voluntarily appearing for depositions. As Judge Skinner of this Court has stated, "[where] discovery has been closed, and pre-trial motions are complete[, i]t would be highly prejudicial to presume that [the defendants] would have defended the case in the same manner" if plaintiff's motion to amend the complaint was allowed. <u>Tele-Connections, Inc. v. Perception Technology Corp.</u>, 1990 WL 180707, *2 (D. Mass. 1990). As these defendants cannot "un-ring" the bell on the discovery conducted, especially their own depositions, by definition they have been unduly prejudiced by the plaintiffs' failure to indicate earlier that they were potentially parties to this action.

    C.    <u>Bad Faith</u>

Given the information known to the plaintiffs and when it was provided, the timing and context of this Motion to Amend reasonably lead to only two possible conclusions.

First, the plaintiffs recognize that their only legally supported claims are against the company they contracted with for services, EMG. However, they have contractually agreed to limit EMG's liability to $50,000, and their damages claim is for $900,000. Moreover, after the depositions of their own employees, it became clear that the plaintiffs

could not circumvent the limitation of liability clause contained in the contract they signed with EMG.[7]  To avoid this consequence, and in an effort to put undue pressure on EMG, they elected to try to assert claims against two EMG employees, even though the claims cannot be supported in law.  Second, the plaintiffs intended from the outset of this case to try to pursue claims against these individual EMG employees (for the reason set forth above).  However, they chose to wait to bring the instant motion until after discovery had been conducted, and specifically after these individuals agreed to voluntarily appear for depositions in a Massachusetts action when neither of them has any ties to this Commonwealth.[8]

These are the only logical explanations for the plaintiffs' motion as nowhere in their extensive papers do the plaintiffs indicate why it is necessary to add these individuals as defendants.  EMG has sufficient assets and insurance coverage to address the claimed damages, these individuals do not.  As employees of the defendant acting in the scope of their employment, there has been no assertion that EMG would not be liable if their actions were found to be negligent or in breach of contract.  The claims the plaintiffs seek to assert against these employees are identical to those existing against EMG, so adding these individuals as defendants does not change the type of damages recoverable.  And adding these individuals as defendants is not necessary to compel their appearance at trial (they have already appeared voluntarily for depositions).    Absent an

---

[7]      The undisputed evidence is that the plaintiffs solicited EMG to perform the services in question not the other way around; EMG focused on the mechanical, electrical, and plumbing systems as requested by Berwind; the plaintiffs were aware from the report itself that Hoffman was a mechanical engineer; the limitation of liability provision was in other contracts which the plaintiffs had entered into with EMG; and the plaintiffs had an option to increase the limit of liability but elected not to do so.

[8]      EMG being a foreign corporation with a principal place of business in Maryland and no current place of business in Massachusetts; Hoffman being a resident of Florida, and Collins being a resident of Maryland.

966911v1

effort to pressure EMG or harass its employees, there is simply no reason why these individuals are necessary for the prosecution of this action.

## CONCLUSION

"'The liberal amendment policy prescribed by Rule 15(a) does not mean that leave will be granted in all cases.'" Acosta-Mestre v. Hilton Int'l of P.R., Inc., 156 F.3d 49, 51 (1st Cir. 1998), citing 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1487, at 611 (2d ed. 1990).  In this case, there is no legal basis for pursuing claims against two individual employees of a defendant for purely economic losses 6 years after the report in question was issued.  And even if there were some legal basis for pursuing such claims, as the roles of Hoffman and Collins in this matter were known to the plaintiffs since 1999, the plaintiffs have proffered no justification for not including Hoffman and Collins in either their original complaint 15 months ago, or First Amended Complaint more than 12 months ago.  The plaintiffs' self-serving assertion that they have "made a good faith determination that it has valid claims against Hoffman and Collins", (Memorandum at 11), is simply insufficient justification for adding Hoffman and Collins as individual defendants at this late date (after the close of discovery and after they voluntarily appeared for depositions).

966911v1

Based on the foregoing, the plaintiffs' Motion For Leave to Amend the Complaint to Include Additional Defendants must be denied, and EMG respectfully requests that it be awarded its costs and fees associated with responding to this motion.

Respectfully submitted,

ENVIRONMENTAL MANAGEMENT
GROUP, INC. d/b/a EMG
By its Attorneys,

MORRISON MAHONEY LLP

/s/sbolotin
Steven J. Bolotin, BBO#564085
Michael H. Hayden, BBO#660746
250 Summer Street
Boston, MA  02210
(617) 439-7500

966911v1