## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP, <br><br> Plaintiffs, <br><br> v. <br><br> ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

DOCKET NO.
04-11411-NMG

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR LEAVE TO AMEND THE COMPLAINT TO INCLUDE ADDITIONAL DEFENDANTS

Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively, "Berwind") have filed a Motion for Leave to Amend the Complaint to Include Additional Defendants. EMG has opposed the Motion. In order to correct erroneous statements of both law and fact made by EMG in its Opposition, Berwind hereby submits this Reply.

### ARGUMENT

### I.    Hoffman and Collins Are Liable for Torts in Which They Personally Participated.

As an initial matter, EMG has taken the legally unsupportable position that Hoffman and Collins cannot be found personally liable in this action for actions taken within the scope of their employment. EMG's argument is premised upon the erroneous assumption that Berwind's claims against the prospective defendants arise out of contractual liability on the part of the prospective defendants. However, Plaintiffs' claims of negligence and negligent and/or intentional misrepresentation by Hoffman and Collins are claims sounding in tort, and it is well

settled under Massachusetts law that "employees are liable for torts in which they personally

participated." Lyon v. Morphew, 424 Mass. 828, 831-832 (1997), citing LaClair v. Silberline

Mfg. Co., 379 Mass. 21, 29 (1979); Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 181

(1979); accord McCarthy v. Azure, 22 F.3d 351, 360 (1st Cir. 1994); Zavota v. Ocean Accident

& Guarantee Corporation, Ltd., 408 F.2d 940, 942 (1st Cir. 1969).[1]  See also Restatement

(Second) of Agency § 343 (1958)("An agent who does an act otherwise a tort is not relived from

liability by the fact that he acted at the command of the principal or on account of the

principal...."). Corporate employees are not shielded from liability because the wrongful acts

occurred in the course of employment. "An employee may be held liable for his negligence that

causes injury to third parties, even though he was acting within the scope of his employment at

the time of the injury and even though his employer may be liable under the doctrine of

*respondeat superior*." Republic Franklin Ins. Company v. Advanced Ironworks, Inc., 2005 WL

1009633 at * 3 (Mass.Super. 2005); Carter v. Empire Mutual Insurance Company, 6

Mass.App.Ct. 114, 123 (1978). Accordingly, EMG's argument that Berwind is precluded from

seeking redress from Hoffman and Collins personally for their negligence and negligent and/or

intentional misrepresentations is simply wrong as a matter of law.

## II.     The Economic Loss Doctrine is Inapplicable to the Case at Bar.

### A.     Massachusetts law permits recovery of economic losses resulting from negligence and negligent and intentional misrepresentation in connection with the provision of professional services.

---

[1] The general rule is that a federal court sitting in diversity applies state substantive law and federal procedural law. See Rodi v. Southern New England School of Law, 389 F.3d 5, 13 (1st Cir. 2004); Correia v. Fitzgerald, 354 F.2d 47, 53 (1st Cir. 2003); see, generally, Eerie R.R. v. Tompkins, 304 U.S. 64 (1938) and progeny. EMG appears to concede to the application of Massachusetts substantive law by citing to Massachusetts state and federal case law in its Opposition. In the event that EMG attempts to argue at some later date that the contract between the parties requires the application of Maryland substantive law, Berwind would note that the contract provides only that "the agreement shall be governed by the laws of the State of Maryland." (emphasis added)  Because the proposed Amended Complaint raises only tort claims, the Contract's choice of law provision is inapplicable.

EMG next argues that the economic loss doctrine bars Berwind's claims against Hoffman and Collins. It is, however, clear as a matter of law that there is no such bar to Berwind's recovery for its claims of negligence and negligent misrepresentation by Hoffman, or its claims of negligence, and negligent and intentional misrepresentation by Collins.

Massachusetts courts have long held that a plaintiff with a cause of action for negligence or negligent misrepresentation in connection with the provision of professional services – even in the absence of privity of contract – is entitled to recover for the economic harm he suffers as a result. See, e.g., Nota Construction Corporation v. Keyes Associates, Inc., 45 Mass.App.Ct. 15, 20 (1998) (see discussion *infra*); Craig v. Everett M. Brooks Co., 351 Mass. 497, 501 (1967) (court found civil engineer liable to contractor who relied on negligent placement of marking stakes, despite lack of privity, where reliance was foreseeable).[2] Under Massachusetts law, liability will be imposed for the negligent furnishing of services notwithstanding a lack of privity of contract if the defendant knows that the party will rely on those services. Nota, 45 Mass.App.Ct. at p. 21 citing Craig v. Everett M. Brooks Co., 351 Mass. at 501. Thus, the duty to a plaintiff arises from the foreseeability of the plaintiff's reliance on the defendant's performance of professional services, **NOT** as a result of privity of contract. Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 495-496 (1998) citing Restatement (Second) Torts § 552 (1977)("One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions is subject to liability for

---

[2] The Massachusetts courts have recognized the applicability of the exception to the economic loss doctrine in numerous cases involving a wide range of professions. As applied to accountants, see, e.g., Nycal Corp. v. KPMG Peat Marwick LLP, 426 Mass. 491, 495-496 (1998) and Reisman v. KPMG Peat Marwick LLP, 57 Mass.App.Ct., 100, 124-125 (2003); financial institutions, see, e.g., Danca v. Taunton Savings Bank, 385 Mass. 1, 9-10 (1982) and Golber v. BayBank Valley Trust Co., 46 Mass.App.Ct. 256, 258-259 (1999); insurers and insurance brokers, see, e.g., St Paul Surplus Lines Ins. Co. v. Feingold & Feingold Ins. Agency, Inc., 427 Mass. 372, 376 (1998) and Cole v. New England Mut. Life Ins. Co., 49 Mass.App.Ct. 296, 300 (2000); real estate brokers, see, e.g., Lawton v. Dracousis, 14 Mass.App.Ct. 164, 171 (1982). See also The Vitetta Group v. Town of Plymouth, 1996 WL 1132776 *1 (D.Mass. 1996).

pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."). Accordingly, where, as here, Hoffman issued, and Collins certified, the Report, having failed to exercise reasonable care or competence in obtaining or communicating the information contained therein, and knowing that Berwind was going to rely on the Report in connection with its decision to purchase the Property, Berwind's claims against the prospective defendants are not barred by the economic loss doctrine.

Nota Construction Corporation v. Keyes Associates, Inc. is instructive. In Nota, a subcontractor, who had bid on a school construction project based upon plans and specifications prepared by an architect retained by the school district, sued the architect claiming that it had suffered economic losses directly caused by its reliance on the architect's plans and specifications. The architect filed a motion for summary judgment arguing, *inter alia,* that Nota's negligent misrepresentation claim was barred by the economic loss doctrine. The trial court granted summary judgment in favor of the architect. On appeal, the architect argued that the action was barred by the economic loss doctrine and that a design professional could not be held liable for negligent misrepresentation because the design professional is not in the business of supplying specific information to others to induce action. Rejecting both arguments, the Appeals Court reversed. As to the economic loss doctrine, the court noted that economic losses resulting from negligent misrepresentation are an exception to the economic loss doctrine. Id. at 405 (citing Craig v. Everett M. Brooks, Co., 351 Mass. 497 (1967). On the second issue, the Court stated that it is simply logical that the general proposition that one who negligently furnishes services to another can be liable in tort should apply to other professionals, at least

where they have reason to know that the putative plaintiff will be relying upon the professional's work product:

> The Supreme Judicial Court [of Massachusetts] has held that liability will
> be imposed in Massachusetts for the negligent furnishing of services to one
> not a party to the contract where the defendant knows that the party will
> rely on his services…. Accordingly, we see no reason why a design
> professional such as an architect should be exempt from liability for negligent
> misrepresentation to one where there is no privity of contract. This view is
> in accord with a number of other jurisdictions.

Id. at 405-06 (footnote and citations omitted). See also Stone/Congress v. Town of Andover,

1997 WL 11737 (Mass.Super. 1997)( court found architect liable to contractor who relied on

negligent plans, despite lack of privity, where reliance was foreseeable, noting that although the

defendant architect did not know the specific identity of the party relying on his representations,

"in the usual chronology of drafting, bidding and contracting, an architect does reasonably

foresee that a general contractor will base its bid on the architect's plans and upon any

deficiencies in those plans."); Cf. Josefek v. Loitherstein Environmental Engineering, Inc., 2004

WL 3218004 *3 (Mass. Superior 2004)(court held that environmental engineering firm hired by

owner of subject property to provide a Response Action Outcome Statement, upon which

purchasers of the property relied in making the determination to purchase the subject property,

was liable for negligent misrepresentation because such studies are filed with the DEP who

publish them online for public access); Gavett v. Roto-Rooter Services Company, 2001 WL

1688896 (D.Mass. 2001)(court held that sewer inspection company that had provided sewer

inspection report to the Massachusetts Department of Housing and Urban Development was

liable to purchasers of home for which the company had issued a certificate of Title V

compliance, where it was later determined that the home was not Title V compliant).

#535802                                                                                    5

There is no dispute that Hoffman and Collins were aware of the purpose of the Report and that Berwind would be relying on the accuracy of the statements contained therein. See Upton Affidavit, Exhibit 3 at p. 1. In addition, the evidence adduced to date demonstrates that Hoffman and Collins failed to exercise reasonable care or competence in obtaining or communicating accurate information concerning the condition of the Garage. See Plaintiffs Rule 26(a)(2) Expert Disclosure. Accordingly, the economic loss doctrine does not preclude Berwind's claims of negligence, negligent misrepresentation and/or intentional misrepresentation by Hoffman and Collins.

### B.  The information provided by the prospective defendants to Berwind constitute actionable misrepresentations.

In an apparent, if contradictory, acknowledgement that the economic loss doctrine does not act as a bar to Berwind's claims of negligent misrepresentation, EMG next argues that Berwind cannot demonstrate that the prospective defendants made any actionable misrepresentations. In order to recover for negligent misrepresentation, "a plaintiff must prove that the defendant (1) in the course of his business (2) supplied false information for the guidance of others (3) in their business transactions, (4) causing and resulting in pecuniary loss to those others (5) by their justifiable reliance upon the information, and (6) with failure to exercise reasonable care and competence in obtaining or communicating the information." Nota Construction Corporation, 45 Mass.App.Ct. at 19-20. Apparently acknowledging that the other elements of the claim have been satisfied, EMG argues only that any statements made by Hoffman and/or Collins were statements of "opinion" and not of "fact," and therefore that Berwind cannot establish a critical element of their claims. See Defendant's Opposition to Plaintiffs' Motion for Leave to Amend at p. 5. EMG's reliance on this argument, however, is misplaced, and its contentions are incorrect as a matter of law.

### 1. Hoffman and Collins misrepresented information that was susceptible of actual knowledge.

A negligent misrepresentation may be perpetrated by a half truth, or by an implied representation, as well as by an express representation of material fact. Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990). Although "the distinction between a statement of fact and a statement of opinion is often a difficult one to draw" (McEneany v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573, 575 (1995)), Massachusetts courts have defined a "fact" as "something susceptible of knowledge." See, e.g., Zimmerman v. Kent, 31 Mass.App.Ct. 72, 79 (1991). In addition, it has long been held that "actionable misrepresentation may occur without the speaker's knowledge that the statement is false if the truth is reasonably susceptible of actual knowledge, or otherwise expressed, if, through a modicum of diligence, accurate facts are available to the speaker." Acushnet Federal Credit Union v. Roderick, 26 Mass.App.Ct. 604, 605 (1988)(emphasis added); Yorke v. Taylor, 332 Mass. 368, 374 (1955); *accord* Logan Equipment Corp. v. Simon Aerials, Inc., 736 F.Supp. 1188, 1199 (D.Masss. 1990). In the present case, Hoffman and Collins both made express and implied misrepresentations as to the condition of the Garage, while the true condition of the Garage could have been ascertained "through a modicum of diligence." Similarly, Collins made express misrepresentations of material fact by certifying that the Services had been performed in accordance with the Contract requirements and, accordingly, "in accordance with industry-accepted due diligence practice," while knowing that no qualified person (i.e., a structural engineer and/or an individual with appropriate structural training in garages) had performed the Services or reviewed the Report, and while "through a modicum of diligence" he could have ascertained that no such qualified person had performed the Services.

More specifically, EMG's Property Condition Evaluation (the "Report"), prepared by Hoffman and reviewed by Collins, states that the "framing, walls and decks of the parking structures appeared to be in fair condition." See Upton Affidavit, Exhibit 3, at pp. 35-36. Berwind has since learned that other engineers who had performed visual inspections of the Property *prior* to Hoffman had readily observed that the Garage exhibited significant, open and obvious structural problems and waterproofing deficiencies. See Memorandum in Support of Plaintiffs' Motion for Leave to Amend at pp. 4-5. The Report, however, failed to note any of the signs of structural distress, such as the serious topside cracking around columns, sagging of the elevated structural decks, and indications of significant ongoing corrosion of reinforcing steel, noted by other engineers who viewed the Garage prior to Hoffman, and were, quite obviously, susceptible of actual knowledge. In addition, the Report indicated that Berwind would need to expend only approximately $30,000.00 in recommended short term repairs, and no additional costs for "repairs, replacement and significant maintenance items ... over the evaluation period (12 years)." See Upton Affidavit, Exhibit 3 at p. 5 and Table 3. However, other engineers who had performed visual inspections of the Property *prior* to Hoffman had estimated that the repair of only some of the open and obvious deficiencies in the Garage would require, at a minimum, $332,500.00 (see Kelley Affidavit, Exhibit 1), and Berwind, has in fact, incurred in excess of $900,000.00 in necessary repairs to the Garage. See Plaintiffs Rule 26(a)(2) Expert Disclosure. Accordingly, Hoffman's and Collins' representation that the Garage was in "fair condition" was a misrepresentation of the actual condition of the Garage, which condition was susceptible of actual knowledge. EMG's argument that Berwind is precluded from seeking redress from Hoffman and Collins for their negligent misrepresentations concerning the condition of the Garage, therefore, is simply wrong as a matter of law.

In addition, contrary to EMG's contentions, Berwind has alleged not only that Hoffman "failed to offer a proper opinion as to the condition of the property" (Opposition at p. 6), but also that Hoffman failed to advise Berwind of material deficiencies of which she was apparently aware, despite knowing that Berwind was going to rely on her report of such deficiencies (or lack thereof) in connection with its decision to purchase the Property. See Memorandum in Support of Plaintiffs' Motion for Leave to Amend at pp. 5-6. Her failure to provide this information to Berwind constituted not only negligence in failing to identify deferred maintenance issues and estimating costs associated with them, but also a negligent misrepresentation concerning the actual condition of the Garage.

Similarly, Collins was aware of Hoffman's education, training and experience. See Upton Affidavit, Exhibit 5, at pp. 51-52. Accordingly, he was aware that she had no structural engineering education or training, or he could have determined "through a modicum of diligence" that she had no such training. Nevertheless, he signed the Report on behalf of EMG, certifying that the Services – including a structural evaluation of the Garage – had been performed in accordance with the Contract requirements and, accordingly, "in accordance with industry-accepted due diligence practice." In addition, he certified the contents of the Report knowing that no other qualified person (i.e., a structural engineer and/or an individual with appropriate structural training in garages) had performed the Services or reviewed the Report. His certification that the Services had been performed "in accordance with industry-accepted due diligence practice," was, therefore, an intentional misrepresentation, which is clearly actionable. Arthur D. Little Intern., Inc. v. Dooyang Corp., 928 F.Supp. 1189, 1205 (D.Mass. 1996)("The

economic loss rule does not apply to harm caused by intentional misrepresentations")(citations omitted).[3]

**2.    Misrepresentations made by Hoffman and Collins, even if deemed "opinions," are actionable.**

Even assuming, *arguendo,* that Hoffman's failure to note any of the signs of structural distress, such as the serious topside cracking around columns, sagging of the elevated structural decks, indications of significant ongoing corrosion of reinforcing steel, and the open and obvious lack of deck membranes (and Collins' certification of the Report in the absence of that information), were deemed to be "statements of opinion," they would still be actionable. "A statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)." Rodi v. Southern New England School of Law, 389 F.3d 5, 14 (2004)(emphasis added) citing McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573; *accord* Levinsky's Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997)("A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable."). See also Restatement (Second) of Torts § 539 (1977) (explaining that "[a] statement of opinion as to facts not disclosed [may] be interpreted ... as an implied statement that the facts known to the maker are not incompatible with his opinion"). "A statement of opinion [is] actionable when the speaker possesses superior knowledge concerning the subject matter to

---

[3] EMG alleges that the plaintiffs have presented "nothing to suggest that Hoffman was *per se* not qualified to perform the services set forth in the contract with EMG." Opposition at p. 6. Berwind would direct the Court, and EMG, to Plaintiffs Rule 26(a)(2) Expert Disclosure, attached to Plaintiffs' Motion for Leave to Amend the Complaint as Exhibit 1, the original of which Counsel received pursuant to F.R.C.P. 26, in which Mr. Kelley avers that "Ms. Hoffman did not have the education, EMG-supplied training, or work experience necessary to make a useful assessment of the condition and repair needs for a parking garage structure in New England. This is based on my review of her work product, my attendance at her deposition, my own professional experience, and my supervision of other professionals engaged in similar work."

which the representations relate, or where the opinion is 'reasonably interpreted by the recipient

to imply that the speaker knows the facts that justify the opinion.'" Stolzoff v. Waste Systems

International, Inc., 58 Mass.App.Ct. 747, 760 (2003)(internal citations omitted); Briggs v. Carol

Cars, Inc., 407 Mass. at 396 (1990). Here there can be no cavil that Hoffman and Collins

possessed superior knowledge (or purported to) concerning the subject matter to which the

misrepresentations relate.

     Chiacchia *et al.* v. Lycott Environmental Research, Inc., 1995 WL 1146824, is

instructive. In Chiacchia, the facts of which are set forth in Plaintiffs' Memorandum in Support

of the Motion for Leave to Amend, the Court held that the engineering company that had been

retained to perform the Chapter 21E inspection "was in the business of rendering opinions based

on what is supposed to be a professionally competent review of the sites they study. Purchasers

... engage professionals such as [the defendant] in order to avoid the precise disaster that has

now befallen [the plaintiffs]." As in Chiacchia, Berwind retained EMG and its employees for the

express purpose of obtaining an "opinion" concerning the condition of the property from a

professional engineering company with extensive experience in providing this type of

information; it is self-evident that Berwind retained EMG because of the "superior knowledge"

that Berwind was led to believe that EMG and its employees possessed.

     Moreover, based on the representations in the Report that Hoffman would, *inter alia*:

> \*     visit the subject property to observe and evaluate the current
> general condition of the building and site improvements, and
> review available construction documents to assist with the review
> and evaluation;
>
> \*     provide a full description of the property and improvements, with
> descriptions of in-place systems and commentary on observed
> conditions, to include site, architectural, **structural**, mechanical,
> electrical, plumbing, fire and life/safety, interior, exterior and
> other systems; and

    *        identify those components observed that are exhibiting deferred
                maintenance issues and provide estimates for immediate (90-day),
                "short term" (1-year) and "replacement reserve" (12-year) costs
                based on observed conditions, available maintenance history and
                industry-standard useful life estimates,

(emphasis added) it was reasonable for EMG to have concluded that EMG "kn[ew] facts that

justified the opinions" set forth in the Report. Stolzoff, 58 Mass.App.Ct. at 760; Briggs, 407

Mass. at 396 (holding that "[a] statement that, in form, is one of opinion, in some circumstances

may reasonably be interpreted by the recipient to imply that the maker of the statement knows

facts that justify the opinion" and make it an actionable misrepresentation); National Bank of

Canada v. Hale & Dorr, LLP, 2004 WL 1049072 (Mass.Super. 2004)(same).

      Accordingly, the representations at issue, even if deemed "opinions" are actionable in

Berwind's claims of misrepresentation.

### C.    The economic loss doctrine does not preclude Berwind's claim of a violation of Chapter 93A.

      Contrary to EMG's assertions, it is axiomatic that liability under Chapter 93A may flow

from negligent misrepresentations, and is not, therefore, precluded by the economic loss

doctrine. See, e.g., Stolzoff, 58 Mass.App.Ct. at 765; Nota Construction, 45 Mass.App.Ct. at 21;

Glickman v. Brown, 21 Mass.App.Ct. 229, 234-235 (1985).  Moreover, "Chapter 93A, § 11 has

been held [specifically] applicable to instances of misrepresentation arising in the context of

professional services rendered to a client" such as in the circumstances presented in the case at

bar. Chiacchia at * 11.

      EMG also argues that, because Hoffman and Collins, as employees of EMG, did not

contract, in an individual capacity, to provide any services to Berwind they were not engaged in

"trade or commerce" within the meaning of Chapter 93A.  EMG bases this argument on the

erroneous assumption that Hoffman's and Collins' status as employees of EMG somehow

absolves them of liability under Chapter 93A. EMG's reliance on this argument is also

misplaced.

As EMG notes, M.G.L.A c. 93A defines "trade or commerce" in pertinent part as

follows:

> "Trade" and "commerce" shall include the advertising, the offering for sale,
> rent or lease, the sale, rent, lease or distribution of any services and any
> property, tangible or intangible, real, personal or mixed ... and shall include
> any trade or commerce directly or indirectly affecting the people of this
> commonwealth.

The Massachusetts courts have also defined "trade" or "commerce" as "acting in a business

context." See, e.g., Frullo v. Landenberger, 61 Mass.App.Ct. 814, 821 (2004). Whether a

transaction occurs in a business context depends on "the nature of the transaction, the character

of the parties and their activities, and whether the transaction was motivated by business of

personal reasons." Poznik v. Massachusetts Medical Professional Ins. Assn., 417 Mass. 48, 52

(1994). In the present case, Hoffman and Collins clearly provided and "distributed" professional

services by, in Hoffman's case, drafting the Report, and in Collins' case, certifying the contents

of the Report, and that in each instance they were "acting in a business context." Moreover,

while EMG cites to a 1995 Superior Court decision that declined to find Chapter 93A liability of

employees who did not have the level of control of a corporate officer, in later cases the

Massachusetts courts have held that corporate employee may be found personally liable for

Chapter 93A violations that they personally committed. See, e.g., Varney v. Simpson, 2000 WL

1460077 at *3 (Mass. Super. 2000. Cf. Peggy Lawton Kitchens, Inc. v. Hogan, 18 Mass.App.Ct.

937 (1984)(court rejected individual defendant's argument that remedies under G.L. c. 93A, § 11

were not available to plaintiff); Begelfer v. Najarian, 381 Mass. 177 (1980)(court outlines factors

"to establish a private person's liability under § 11" of Chapter 93A). Accordingly, a trier of fact

could reasonably conclude that Hoffman and Collins were acting in a "business context" when

they drafted and certified the Report, respectively, and that they can be found personally liable

for the negligent representations contained therein.

EMG has failed to demonstrate that Berwind is precluded from seeking redress from

Hoffman and Collins personally for their negligence, their negligent and/or intentional

misrepresentations, or their Chapter 93A violations. Accordingly, any suggestion by EMG or the

prospective defendants that the proposed amendment fails to state a claim for which relief may

be granted is without merit.

## II.    The Statutes of Limitations Relating to Berwind's Claims Do Not Preclude The Proposed Amended Complaint.

EMG next argues that Berwind's tort and Chapter 93A claims are time barred by the

applicable statutes of limitations. EMG's argument is simply wrong as a matter of law.

### A.    Pursuant to F.R.C.P. 15, Berwind's claims against the prospective defendants would be timely.

As an initial matter, applicable Massachusetts law would render Berwind's claims timely

filed in the event of a successful motion to amend. Rule 15 of the Federal Rules of Civil

Procedure provides in pertinent part as follows:

(c) *Relation Back of Amendments*

An amendment of a pleading relates back to the date of the original
pleading when

(1)    relation back is permitted by the law that provides the
statute of limitations applicable to the action, or

(2)    the claim or defense asserted in the amended pleading arose
out of the conduct, transaction, or occurrence set forth or attempted
to be set forth in the original pleading, or

> (3)    the amendment changes the party or the naming of the
> party against whom a claim is asserted if the foregoing provision
> (2) is satisfied and, within the period provided by statute or these
> Rules for service of the summons and complaint, the party to be
> brought in by amendment (A) has received such notice of the
> institution of the action that the party will not be prejudiced in
> maintaining a defense on the merits, and (B) knew or should have
> known that, but for a mistake concerning the identity of the proper
> party, the action would have been brought against the party.

The Massachusetts courts have specifically held that subsection (3) to this Rule, which allows

amendments to pleadings to change parties, includes amendments to pleadings to name new

defendants even *after* the expiration of the usually controlling statute of limitations so long as the

claimant has not culpably waited beyond the time limit by inaction in the face of actual or

chargeable awareness of the new claim and party. Bengar v. Clark Equipment Co., 401 Mass.

554, 556 (1988)(authorities collected).[4] See also 6 Wright and Miller, Federal Practice and

Procedure, § 1501.[5]  As long as a defendant is fully apprised of a claim arising from specified

conduct and is prepared to defend the action against him, his ability to protect himself will not be

prejudicially affected if a new defendant is added, and he should not be permitted to invoke a

limitations defense. See 6 Wright and Miller, Federal Practice and Procedure, § 1501.

In the instant case, there is no question that EMG has been fully apprised of Berwind's

claims against it since the inception of the case.  In addition, EMG has vigorously defended itself

in this action in connection with virtually the same claims that Berwind is now seeking to assert

against the prospective defendants.  Moreover, this is not a situation where the amendment

---

[4] As previously noted, a federal court sitting in diversity applies state substantive law and federal procedural law. See *supra*, f.n. 1.  The First Circuit and District Court of Massachusetts have both unambiguously held that F.R.C.P. 15 is to be considered a substantive one for purposes of Erie analysis.  See, e.g., Marshall v. Mulrenin, 508 F.2d 39, 43-44 (1st Cir. 1974); Covel v. Safetech, Inc., 90 F.R.D. 427, 430 (D.Mass. 1981).

[5] In fact, it has been noted that the courts of the Commonwealth have long had a liberal policy of allowing amendments which add or substitute parties after the statute of limitations has expired. See Wadsworth v. Boston Gas Co., 352 Mass. 86, 88 (1967)("the law in this Commonwealth with respect to amendments is more liberal than elsewhere.").

would require additional discovery; rather, all relevant discovery either has already been completed or has been agreed upon by the parties. Even assuming that such substitution would cause EMG to need to conduct additional discovery, EMG would have ample opportunity to do so as a trial has not yet been scheduled in this action. Accordingly, EMG will not be prejudiced in any way by adding the prospective defendants.

### B. The "discovery rule" operates to toll the statutes of limitation that are applicable to Berwind's claims.

Even if the liberal policy of allowing amendments such as the one presently before the Court were less so, Berwind's claims against the prospective defendants would still not be time barred. It is axiomatic that where a defendant's conduct causes an undetected injury to the plaintiff, Massachusetts applies the 'discovery rule' to determine when the cause of action accrues and triggers the beginning of the statutory period. Mohr v. Commonwealth, 421 Mass. 147, 156 (1995). "[A] cause of action for an 'inherently unknowable' wrong does not accrue until the plaintiff knew, or in the exercise of reasonable diligence should have known, of the factual basis for the cause of action." Patsos v. First Albany Corp., 433 Mass. 323, 328 (2001); Lijol v. MBTA, 28 Mass.App.Ct. 926, 928 (1990). The critical date is "when a plaintiff discovers, or any earlier date when [s/he] should reasonably have discovered, that [s/he] has been harmed or may have been harmed by the defendant's conduct." Mohr, 421 Mass. at 156, quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990). The test is an objective one: "Only if a reasonable person in the plaintiff's position would have been able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run." Riley v. Presnell, 409 Mass. 239, 245 (1991) (emphasis added). Thus, the clock will not start ticking until the plaintiff has "(1) knowledge or sufficient notice that [s/he] was harmed and (2) knowledge or sufficient notice of what the cause of harm was." Bowen, 408 Mass. 205

#535802                                             16

(emphasis added). The doctrine has been applied specifically to cases such as the one before the Court, in which the plaintiff knew of its harm at the time the Complaint was filed, but was unaware of its specific cause. Id., 408 Mass. at 208.

While it is true that the deficient conditions in the Garage on which Hoffman failed to report were observable to persons with training in structural engineering at the time that Berwind acquired the Property, Berwind was unaware of those conditions at the time it acquired the Property because EMG, Hoffman and Collins failed to put Berwind on notice of those defects in the Property.[6] Berwind did not, in fact, become aware of the significant defects in the Property until April of 2001, after Edwards & Kelsey performed a site visit and made note of certain significant defects in the Property. See Plaintiffs' Answers to Defendants First Set of Interrogatories, a true and accurate copy of which is attached hereto as Exhibit 1. Moreover, Berwind did not become aware that the defects had been open and obvious at the time that Hoffman performed her site visit until December 2003, upon Berwind's counsel's receipt of the February 3, 1997 Memorandum from SGH. See Kelley Affidavit, Exhibit 1. In addition, although Hoffman's resume was included in the Report, and the Report states that she prepared the Report, Collins, in fact, signed the Report. Berwind was therefore unable to discern which individual(s) was/were responsible for the misrepresentations set forth in the Report prior to taking their depositions.[7] Thus, while Berwind became of aware of the defects in the Garage in 2001, Berwind could not, in good faith, file suit against Hoffman and/or Collins until after such

---

[6] Moreover, it is not incumbent for a plaintiff to hire a second expert to evaluate the findings of the first. "[A] person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." Murphy v. Smith, 411 Mass. 133, 137-138 (1991)(internal citations omitted).

[7] In point of fact, the testimony of both Hoffman and Collins revealed that certain segments of the Report were prepared by some other, as yet unidentified individual altogether. See, e.g., Excerpts from the Depositions of Sandra Terepka Hoffman and Michael Collins, true and accurate copies of which are attached as Exhibit 1 to the Second Affidavit of Lauren Timoney Upton, filed herewith.

time that it was able to take the depositions of Hoffman and Collins and ascertain which individual(s) were actually responsible for the misrepresentations set forth in the Report. In addition, Berwind was unable to discover whether Hoffman had received sufficient education, EMG-supplied training, or work experience necessary to make a useful assessment of the condition and repair needs for a parking garage structure in New England, as represented by Collins, until after such time as they were able to depose Hoffman and ascertain that information. Accordingly, the discovery rule tolled the statutes of limitations for claims against Hoffman and Collins[8] until Berwind was able to determine that it had been harmed by the prospective defendants.

## III.     Leave to Amend Should Be Granted Where, As Here, There Is No Undue Delay, Bad Faith, or Prejudice to the Non-Moving Parties.

Finally, EMG argues that alleged undue delay, prejudice to the prospective defendants, and Berwind's alleged bad faith motives should bar Berwind's Motion to Amend. Berwind will not revisit here all of the bases, set forth in Plaintiffs' Motion for Leave to Amend, on which the Court should make its determination as to whether leave to amend should be granted, but will briefly respond with respect to the erroneous assumptions and misrepresentations in EMG's Opposition.

### 1.     There has been no undue delay.

EMG's principal argument is that Berwind has unduly delayed in seeking to add Hoffman and Collins as defendants in this case. EMG alleges that Berwind "has known about Hoffman and Collins since the filing of the initial complaint" and that "[a]s everything is the 'same,' nothing prevented plaintiffs from naming Hoffman and Collins as individual defendants

---

[8] The discovery rule also applies to actions based on M.G.L. c. 93A. Szymanski v. Boston Mutual Life Insurance Company, 56 Mass.App.Ct. 367 (2002); International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc., 29 Mass.App.Ct. 215, 221 (1990).

#535802                                18

15 months ago." Opposition at p. 12. That is not, however, an accurate assessment. Although

Berwind was aware that Hoffman and Collins had been involved in the Project, it was only

through the discovery process that Berwind uncovered new information upon which they could

make a good faith determination that they had been harmed by Hoffman and by Collins.[9]  As

discussed above, Berwind could not, in good faith, file suit against Hoffman and/or Collins until

after such time that they were able to take the depositions of Hoffman and Collins, and ascertain

which individual(s) was/were actually responsible for the misrepresentations set forth in the

Report. Similarly, Berwind was unable to ascertain, prior to the depositions, whether Hoffman

had received additional education, EMG-supplied training, or work experience necessary to

make a useful assessment of the condition and repair needs for a parking garage structure in New

England, as represented by Collins, which was not otherwise indicated on her resume. Berwind

took Hoffman's and Collins' depositions at the end of March and beginning of April,

respectively, and filed the Motion for Leave to Amend promptly after reviewing and analyzing

the deposition transcripts (which were received in May), researching the applicable law, and

making the reasoned determination that there were viable causes of action against the

prospective defendants. There was, accordingly, no undue delay in the filing of the Motion for

Leave to Amend.

## 2.    There is no undue prejudice to EMG or the prospective defendants.

EMG also argues that the prospective defendants would be unduly prejudiced by the

amendment, contending that Hoffman and Collins would have "acted differently had they known

that they were potentially on the hook personally for close to one million dollars." Opposition at

p. 14. It is difficult to comprehend in what manner the prospective defendants would have

---

[9] EMG alleges that, because Hoffman's resume was included in the Report, that Berwind was aware the a Hoffman was not a structural engineer. The argument, however, is faulty, for the reasons discussed *infra*.

"acted differently;" presumably, EMG does not mean to suggest that Hoffman's and Collins' sworn testimony would have been different.[10] To the extent that EMG is suggesting preemptively that Hoffman and Collins may feel the need to conduct additional discovery, Berwind has already indicated that that is a matter that would be left to the sound discretion of the Court should Hoffman or Collins demonstrate such a need. Memorandum in Support of Plaintiff's Motion for Leave to Amend at p. 11.

### 3. There is no bad faith or dilatory motive.

Finally, EMG's allegations notwithstanding, there simply is no evidence of bad faith or dilatory motive by Berwind in its failure to amend its Complaint at an earlier date. As discussed above, Berwind is seeking to amend its Complaint at this date in order to conform the Complaint to the evidence obtained during discovery. The evidence adduced to date demonstrates that the prospective defendants were responsible for gross negligence, grossly negligent and/or intentional misrepresentations, and Chapter 93A violations. While EMG attempts to imbue some nefarious motive on the part of Berwind in naming the prospective individuals, Berwind's claims against the individuals are sound and appropriate. While Berwind is confident that the gross nature of the negligence and negligent misrepresentations by EMG and its employees nullifies the limitation of liability provision contained in the Contract, Berwind is entitled to seek redress from all parties responsible for their harm, particularly in the event that the limitation of liability provision is upheld. In addition, as addressed above, Berwind has not intentionally delayed in seeking to amend the Complaint, and is doing so at the earliest possible time after

---

[10] Berwind would also note that EMG makes multiple references to Hoffman and Collins "voluntarily" appearing for deposition, suggesting in at least one instance that they would not have appeared "voluntarily" had they known that they were potential parties to the action. Opposition at p. 14  Berwind would note for the Court's consideration, however, that EMG has argued in its Opposition to Plaintiff's Motion to Compel Further Rule 30(b)(6) Deposition Testimony that Hoffman and Collins appeared as purported Rule 30(b)(6) witnesses. EMG cannot have it both ways; either they were there in their individual capacity "voluntarily," and thus not there to provide testimony binding upon the corporation, or they were there subject to the Rule 30(b)(6) subpoena served upon EMG.

completion of discovery. Thus, bad faith and dilatory motives were not factors in the decision to amend the Complaint.

### CONCLUSION

EMG has failed to rebut Berwind's showing that it is appropriate to add Hoffman and Collins as defendants in this action. For the reasons set forth herein and in Berwind's Motion for Leave to Amend the Complaint, Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership respectfully request that this Court allow the plaintiffs to amend their Complaint in the form attached to Plaintiffs' Motion for Leave to Amend the Complaint to Include Additional Defendants as Exhibit A.

Dated: July ___, 2005                    Respectfully submitted,

                                        **BERWIND PROPERTY GROUP, INC. and
                                        NEWTON INVESTORS LIMITED
                                        PARTNERSHIP**

                                        By their attorneys,

                                        s/ Lauren Timoney Upton

                                        _____
                                        Eric F. Eisenberg, Esq.
                                        BBO No. 544682
                                        Lauren Timoney Upton, Esq.
                                        BBO No. 565122
                                        Hinckley, Allen & Snyder LLP
                                        28 State Street
                                        Boston, MA  02109
                                        (617) 345-9000

## **CERTIFICATE OF SERVICE**

I, Lauren Timoney Upton, hereby certify that on this 18th of July, 2005, I served a true and accurate copy of the foregoing upon counsel for Defendant Environmental Management Group, Inc. d/b/a EMG.

s/ Lauren Timoney Upton