## UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP, <br><br> Plaintiffs, <br><br> v. <br><br> ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

DOCKET NO.
04-11411-NMG

### BERWIND PROPERTY GROUP, INC.'S ANSWERS TO ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG'S FIRST SET OF INTERROGATORIES

Pursuant to F.R.C.P. 33, Plaintiff Berwind Property Group, Inc. ("Berwind") hereby responds to the correspondingly numbered paragraphs of the First Set of Interrogatories ("Interrogatories") served by Defendant Environmental Management Group, Inc. d/b/a EMG ("EMG") as follows:

### GENERAL OBJECTIONS

1. Berwind objects to the Interrogatories, and the instructions and definitions contained therein, to the extent that they purport to impose upon Berwind duties or obligations that exceed the requirements and permissible scope of discovery under the Federal Rules of Civil Procedure.

2. Berwind objects to the Interrogatories to the extent that they seek information protected by the work product doctrine, the attorney/client privilege, and any other privilege cognizable at law.

3.     Berwind objects the Interrogatories to the extent that they purport to request information that is neither relevant to the subject matter of the pending action nor reasonably calculated to lead to the discovery of admissible evidence.

4.     Any objection or lack of objection to any Interrogatory is not to be deemed an admission by Berwind. Berwind does not concede the relevancy, materiality, competency or admissibility as evidence of the information requested by the Interrogatories.

5.     Berwind's responses to the Interrogatories are based on information that is within its possession, custody or control at the time of responding to the Interrogatories. Berwind specifically reserves its right to amend and/or supplement its responses to the Interrogatories as discovery is ongoing.

## ANSWERS TO INTERROGATORIES

Interrogatory No. 1

For the person responding to these interrogatories, please provide their:

      a.     full name,
      b.     position/title
      c.     and business address.

Answer No. 1

      Albert J. Corr
      Vice President
      BPG Properties, Ltd.
      3000 Centre Square West
      1500 Market Street
      Philadelphia, PA 19102

Interrogatory No. 2

Please identify each person who assisted in any way in the preparation of any answer to these interrogatories by providing their name, occupation, present address, and the interrogatory number(s) with which they assisted.

Answer No. 2

Mr. Ken C. Cala
Vice President
BPG Properties, Ltd.
3000 Centre Square West
1500 Market Street
Philadelphia, PA 19102

Mr. Roy C. Perry
Senior Vice President
BPG Properties, Ltd.
3000 Centre Square West
1500 Market Street
Philadelphia, PA 19102

Mr. Robert J. Riviezzo
Vice President
BPG Development Company, L.P.
3000 Centre Square West
1500 Market Street
Philadelphia, PA 19102

Mr. Paul L. Kelley, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building #1, Suite 500
Waltham, MA 02453

Mr. Milan Vatovec, P.E.
Simpson Gumpertz & Heger, Inc.
41 Seyon Street
Building #1, Suite 500
Waltham, MA 02453

Mr. Patrick DiGregorio
Vice President
Nordblom Management Company, Inc.
50 Congress Street
Boston, MA 02109

Interrogatory No. 3

Please identify each and every communication in any form, whether written or oral, which Berwind had with EMG in any way relating to or concerning any of the facts, events, occurrences, allegations, or damages set forth in the Complaint, and for each such communication state:

      a.     the date of each such communication;

      b.     the manner in which each such communication was made i.e. whether by telephone, telegram, letter, face-to-face conversation, written document, electronic mail, etc.;

      c.     the name and present address of all persons who were engaged in or in any way participated in each such communication; and

      d.     in full and complete detail, the contents of each such communication made on each of the dates listed in your answer to subpart (a), indicating what was said or communicated by each of the persons listed in your answer to subpart (c).

Answer No. 3

Berwind objects to this interrogatory to the extent that it improperly seeks to compel Berwind to characterize facts or provide information that is as readily available to EMG as it is to Berwind. Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds that it had, *inter alia*, the following communications with EMG about the Property:

On or about March 1, 1999, Al Corr, of Berwind, spoke with Matt Dillis, of EMG, concerning Berwind's request that EMG perform a Phase I Environmental Analysis and an Enhanced Property Condition Evaluation of the Property located at 1210-1230 Washington Street, Newton, MA (the "Property"), and faxed a copy of the Property's broker's offering information to Mr. Dillis for reference. Mr. Corr's best recollection is that he expressed to Mr. Dillis that Berwind had concerns about the systems and structures of the Property due to the age of the Property, due to the proximity of the Property to adjacent railroad tracks and the Massachusetts Turnpike, and, specifically in relation to the parking garage located on the

    4

Property, due to the Garage's exposure to the elements and to road salts. Because of these concerns, Mr. Corr requested that, in addition to the "standard" review of the Property, EMG perform a MEP analysis of the Property.

On or about April 5, 1999, Mr. Corr spoke with Michael Collins of EMG, during which conversation Mr. Collins informed Mr. Corr that EMG would fax a copy of its cost estimate reports and that those reports would indicate that EMG anticipated $32,000.00 in immediate repair costs and $163,000.00 in short term repair costs, which included $81,000.00 for the replacement of the roof membrane. Although Mr. Collins indicated that EMG anticipated that the roof membrane would need to be repaired, he made no mention of any other concerns of, or repairs anticipated by, EMG with respect to the Property.

On or about April 16, 1999, Mr. Corr spoke with Mr. Dillis concerning outstanding issues relating to the Property.

Further answering, Berwind responds that the information sought in this Interrogatory is contained in the non-privileged, relevant documents that Berwind has produced to EMG pursuant to Defendant's Request for the Production of Documents. Pursuant to Fed. R. Civ. P. 33(c), Berwind refers EMG to said documents. Berwind also reserves the right to supplement this response as discovery progresses.

Interrogatory No. 4

Please identify each and every communication in any form, whether written or oral, which Berwind had with EMG relating to EMG's performance of services for, or at the direction of Berwind other than relating to the Property, and for each such communication state:

      a.    the date of each such communication;
      b.    the manner in which each such communication was made i.e. whether by telephone, telegram, letter, face-to-face conversation, written document, electronic mail, etc.;

    c.    the name and present address of all persons who were engaged in or in any way participated in each such communication; and

    d.    in full and complete detail, the contents of each such communication made on each of the dates listed in your answer to subpart (a), indicating what was said or communicated by each of the persons listed in your answer to subpart (c).

Answer No. 4

Berwind objects to this Interrogatory to the extent that it is overbroad in time and scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Berwind further incorporates the General Objections, to the extent applicable.

Interrogatory No. 5

Please identify each and every communication in any form, whether written or oral, which Berwind had with any prior owner of the Property, including its directors, officers, employees, agents (including real estate agents), servants, consultants, and representatives concerning the Property, and for each such communication state:

    a.    the date of each such communication;

    b.    the manner in which each such communication was made i.e. whether by telephone, telegram, letter, face-to-face conversation, written document, electronic mail, etc.;

    c.    the name and present address of all persons who were engaged in or in any way participated in each such communication; and

    d.    in full and complete detail, the contents of each such communication made on each of the dates listed in your answer to subpart (a), indicating what was said or communicated by each of the persons listed in your answer to subpart (c).

Answer No. 5

Berwind objects to this Interrogatory to the extent that it is overbroad in time and scope, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Berwind further objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or the attorney work product doctrine or is otherwise protected from discovery under applicable law. Berwind also incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds as follows:

The Seller did not reveal any deficiencies in either the office building or the parking garage. However, based upon the recommendations made in EMG's Evaluation, Roy Perry negotiated with the Seller regarding the need for repairs to the roof of the office building, the need for the cleaning, evaluation and repair of the drainage system in the garage, and the need for an evaluation and remediation of the lead levels in the water on the premises. As a result, the recommended repair work was performed by the Seller prior to the time of closing and/or cost adjustments were made to the purchase price as reflected in the Third Amendment to the Purchase and Sale Agreement.

Further answering, Berwind responds that the information sought in this Interrogatory is contained in the non-privileged, relevant documents that Berwind has produced to EMG pursuant to Defendant's Request for the Production of Documents. Pursuant to Fed. R. Civ. P. 33(c), Berwind refers EMG to said documents. Berwind also reserves the right to supplement this response as discovery progresses.

Interrogatory No. 6

Please identify each and every communication in any form, whether written or oral, which Berwind had with any third-party (other than legal counsel) not already identified in answer to these interrogatories including, but not limited to, witnesses, contractors, or consultants, in any way relating to or concerning any of the facts, events, occurrences, allegations, or damages set forth in the Complaint, and for each such communication state:

      a.    the date of each such communication;
      b.    the manner in which each such communication was made i.e. whether by telephone, telegram, letter, face-to-face conversation, written document, electronic mail, etc.;
      c.    the name and present address of all persons who were engaged in or in any way participated in each such communication; and
      d.    in full and complete detail, the contents of each such communication made on each of the dates listed in your answer to subpart (a), indicating what was said or communicated by each of the persons listed in your answer to subpart (c).

<u>Answer No. 6</u>

Berwind objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or the attorney work product doctrine or is otherwise protected from discovery under applicable law. Berwind further objects to this Interrogatory to the extent that it seeks information that is protected by the attorney-client privilege or the attorney work product doctrine or is otherwise protected from discovery under applicable law. Berwind also incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds as follows:

On or about March 19, 2001, Berwind entered into a contract for the provision of engineering services by Edwards & Kelcey, 280 Summer Street, Boston, MA ("E&K") related to the evaluation and repair of the Garage located at 1210-1230 Washington Street, Newton, MA (the "Garage").

On or about March 22, 2001, E&K performed a site visit, which resulted in the creation of a memorandum, dated April 10, 2001, in which the following defects in the Garage, *inter alia*, were noted:

- a 50' crack in the underside of the upper deck
- areas of spalled concrete
- exposed rebar in the areas of spalled concrete
- ponding water on the slabs
- additional cracks in the slabs
- improper drain placement
- efflorescence

- absence of protective waterproof coating
- premature deterioration of the slabs due to the absence of a protective waterproof coating

and recommendations for repair were made.

On or about April 11, 2001, Yves Lamour, E&K's Project Manager, informed Patrick DiGregorio and Chris Finlay, of Nordblom Management Company, Inc. ("Nordblom")(the company providing building management services for Berwind/NILP in relation to the property) that there were structural issues at every level of the Garage. After Mr. DiGregorio advised Ken Cala at Berwind/NILP of the repairs recommended by E&K, Nordblom and E&K agreed to a repair schedule of two to three years.

On or about May 7, 2001, E&K issued an Invitation to Bid for certain repairs to the Garage. The work was awarded to New England Restoration, which work was completed on or about January 31, 2002.

On or about June 10, 2002, Kara Benson, of Nordblom, solicited a second proposal from E&K for the provision of engineering services related to the evaluation and repair of the Garage. On or about June 17, 2002, E&K issued a second proposal concerning the scope of additional repair work. After discussions between E&K and Berwind/NILP concerning this scope of work, a revised proposal was issued on June 24, 2002, and the final proposal was signed on August 22, 2002. On or about August 30, 2002, E&K issued an Invitation to Bid for the remaining Garage repairs, including, *inter alia*, epoxy injection of cracks in the decks, repair of the spalling on the underside of the upper and middle decks, and sealing of the slabs and installation of new drains. CCI, Inc. ("CCI") was retained to perform the repairs.

On or about April 17, 2003, Mr. Lamour and Charles Ricci, also of E&K, performed a site visit and noted significant slab deflections (particularly in the middle deck ceiling slab) and spalling in numerous areas. In July 2003, Mr. Ricci again visited the Garage at the request of Mr. DiGregorio to review the condition of the deck slab. On or about July 9, 2003, Mr. Ricci issued a Field Observation Report, which noted, *inter alia*, that the reinforcing steel was corroding and that the concrete was spalling or ready to spall throughout the Garage. In addition, Mr. Ricci noted that the deflections in the slab were a concern. CCI saw cut a significant crack to create a joint, and treated the crack with backer rod and sealant.

In or about September 2003, Nordblom, on behalf of Berwind/NILP, retained Daigle Engineers, Inc., 1 East River Place, Methuen, MA ("Daigle"), to inspect the Garage, review the E&K plans, and provide a second opinion of E&K's proposed repair scheme. On or about September 18, 2003, Jonathan Longchamp from Daigle performed a site visit. On or about September 25, 2003, Daigle issued a report which noted, *inter alia*, that there were significant slab deflections and cracking and spalling of the concrete slab. Daigle noted at that time that the original design of the Garage may have been deficient in that the concrete slabs did not meet the American Concrete Institute's recommended minimum thickness for spans of 27'-30' which exist in the Garage's interior bays. Daigle recommended, *inter alia*, testing of the concrete slabs to determine the extent of the structural deficiency.

In or about October 2003, Bob Riviezzo of Berwind met with E&K, CCI and Mr. DeGregorio to discuss the project costs. On or about October 15, 2003, CCI submitted a proposal to perform the necessary structural repair, deck coating and winter remediation of the Garage. On or about October 23, 2003, Mr. Riviezzo spoke with Dick Sylvester of CCI to

authorize CCI to perform the repair work, which authorization was confirmed by letter from

Michael Taggart of CCI to Mr. Riviezzo.

Because of its superior knowledge *viz* concrete structures and the remediation and repair

of same, Berwind/NILP retained Simpson, Gumpertz & Heger ("SG&H") in December 2003 to,

*inter alia*, evaluate the Garage, and to review and modify, if necessary, the repair plans for the

Garage. SGH subsequently issued plans for the remediation of the Garage structure and CCI

performed the work.

Further answering, Berwind responds that the information sought in this Interrogatory is

contained in the non-privileged, relevant documents that Berwind has produced to EMG pursuant

to Defendant's Request for the Production of Documents. Pursuant to Fed. R. Civ. P. 33(c),

Berwind refers EMG to said documents.

Interrogatory No. 7

Please state the name and present address of each person having knowledge of any of the facts,
events, occurrences and allegations contained in the Complaint, including but not limited to any
agreements between the parties, the work performed by any individual or entity on the septic
system (sic) at issue, and the damages being asserted by Berwind, and for each such person
please state the substance of the information that person is known or is believed to possess.

Answer No. 7

Berwind objects to this Interrogatory to the extent that it seeks information that is

protected by the attorney-client privilege or the attorney work product privilege or is otherwise

protected from discovery under applicable law. Berwind further objects to this interrogatory to

the extent that it improperly seeks to compel Berwind to characterize facts or provide

information that is as readily available to EMG as it is to Berwind. Berwind further incorporates

the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind answers:

Mr. Yves Lamour
Edwards & Kelcey
280 Summer Street
Boston, MA 02210

Mr. Charles Ricci
Edwards & Kelcey
280 Summer Street
Boston, MA 02210

Mr. Michael Taggart
CCI, Inc.
14 Lafayette Road
No. Hampton, NH 03862

Mr. Jonathan M. Longchamp, P.E.
Principal/Vice President
Daigle Engineers, Inc.
1 East River Place
Methuen, MA 01844

Mr. Chris Finlay
Address Unknown

Further answering, Berwind refers to and incorporates herein by reference its Answers to

Interrogatory Nos. 1, 2 and 6.


Interrogatory No. 8

Please identify each and every person at or on behalf of Berwind who reviewed the proposal
provided by EMG to Berwind dated March 2,1999, including any attachments, prior to and
including March 17, 1999.

Answer No. 8

Mr. Roy Perry and Mr. Al Corr reviewed the proposal provided by EMG to Berwind
dated March 2, 1999.

Interrogatory No. 9

Please identify with specificity every fact upon which Berwind bases any assertion that EMG was negligent in the performance of any services relating to the Property, including, but not limited to, each and every error, omission, or other deficiency in performance which you contend was done by EMG in connection with the Property which gives rise to any allegation or damages asserted in your Complaint.

Answer No. 9

Berwind objects to this Interrogatory to the extent that it calls upon Berwind to characterize facts or provide information that is more properly the subject of expert testimony. Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds as follows:

Berwind was induced to enter into a contract with EMG on or about March 17, 1999 (the "Contract") by which EMG agreed to perform a Phase I Environmental Site Assessment and an Enhanced Property Condition Evaluation (the "Services") of the buildings located at 1210-1230 Washington Street in Newton, MA (the "Property"). Mr. Corr informed Mr. Dillis that Berwind was particularly interested, *inter alia*, in the structure of the Building and the Garage, as the office building was over 100 years old and both the office building and the Garage abutted active commuter railroad lines and were located close to the Massachusetts Turnpike. EMG represented, at p. 20 of its proposal, in pertinent part, as follows:

> Based on on-site observations, interviews, and review of available documentation, EMG shall:
>
> • *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, and other systems.
>
> • *Identify those components that are exhibiting deferred maintenance issues and provide estimates for* "immediate" (90-day), "short term" (1

> year) and "replacement reserve" (10-year) *costs based on the observed
> conditions,* available maintenance history *and industry-standard useful
> life estimates.* (emphasis added)

The Contract further provided that EMG would perform said Services in accordance with

industry-accepted due diligence practice and using that degree of care and skill ordinarily

exercised under similar conditions by reputable members of EMG's profession practicing in the

same or similar locality at the time of service. EMG further represented to Berwind that a

*qualified* professional engineer would inspect and evaluate the Property and perform any

necessary engineering services per the parties' agreement. At the time that EMG made these

representations, there was, apparently, only one individual on EMG's staff competent to evaluate

the structural integrity of reinforced concrete parking garages and similar structures. EMG had,

nonetheless, purported to evaluate the structure of commercial buildings for Berwind on

numerous prior occasions. This strongly suggests that EMG knew that these representations (as

to its personnel's ability to evaluate the Garage) were false at the time that they were made, or

that EMG made these representations with willful disregard as to their truth or falsity. Such

statements (and the circumstances under which they were made) would also constitute unfair and

deceptive acts and practices by EMG.

 In or around March 1999, Sandra Terepka visited the Property, and inspected the parking

garage (the "Garage") located on the Property. Ms. Terepka was the only EMG employee to

visit/inspect the Garage. Ms. Terepka was not a structural engineer, nor had Ms. Terepka ever

received any meaningful training in structural engineering. Ms. Terepka failed to

observe/appreciate the significance of open and obvious structural and waterproofing deficiencies

in the Garage. Ms. Terepka did, however, understand, from her inspection, that the Garage "had

serious problems" or words to that effect. EMG's Report to Berwind, however, failed to mention

that there were significant structural problems, waterproofing deficiencies, or other significant

problems in Garage. More specifically, EMG's Property Condition Evaluation (the

"Evaluation"), at pp. 35-36, states as follows:

> The framing, walls **and decks** of the parking structure appeared to be in fair
> condition. **Small** areas of spalled concrete and minor rust stains were observed,
> indicating initial corrosion of the steel reinforcing in the ceiling. ... Cleaning and
> patching the areas of spalled concrete with an epoxy concrete patch is required
> within the next year.
>
> The ground level of the parking garage had areas of cracking in the concrete slab.
> ... Sealing cracks is considered to be a part of routine maintenance. No additional
> action is required. (emphasis added)

While deficiencies were noted in an in-ground drain line and the building's roof, these

deficiencies were the subject of pre-closing adjustments by Berwind and the Seller. The

undisclosed deficiencies, however, were many orders of magnitude larger than these disclosed

deficiencies, and, as such, Berwind had no opportunity to negotiate them prior to the closing.

Berwind has since learned that other engineers who had performed a visual inspection of

the Property **prior** to EMG had readily observed that the Garage exhibited significant, open and

obvious structural problems and waterproofing deficiencies. These deficiencies included, *inter*

*alia*, the following:

- slab deflections;
- extensive cracking around reinforcement steel;
- through-slab cracks with florescence and active water leakage;
- concrete delamination along the through-slab cracks;
- slab delamination, scaling and popouts;
- slab cracking around the column base;
- unsealed slab construction joints;

- widespread slab cracks; and

- absence of vehicular-traffic bearing waterproofing on the decks.

When it entered into the Contract, EMG knew that Berwind was hiring EMG to assist Berwind with its due diligence activities for its acquisition of the Property. Further, EMG certified that Berwind and NILP could rely on the representations set forth in the Evaluation. Based on EMG's representations in its Evaluation, Berwind, and NILP in turn, decided to purchase the Property. Had Berwind/NILP known that the Garage suffered from significant structural problems and waterproofing deficiencies, Berwind/NILP would not have purchased the Property for $11.7 million as Berwind/NILP did, or Berwind/NILP would have purchased the Property for a lower price, taking into account the additional costs of repairing the Garage. Further, after Berwind/NILP purchased the Property, Berwind/NILP based its on-going repair and maintenance of the Garage on EMG's representations in its Report.

EMG knowingly and willfully misrepresented the scope of work it would perform and the qualifications of the person who would perform the work at the time it induced Berwind to enter into the Contract. EMG breached its duty of reasonable care owed to Berwind in its performance of its inspection, and its issuance of the Evaluation of the Garage, intentionally and/or with reckless and wanton disregard of its duties owed to Berwind, thereby exposing Berwind to unwarranted risk. EMG's fraud, misrepresentation, negligence, gross negligence, and reckless and wanton breach of its duties to Berwind, directly, proximately, and foreseeably caused Berwind to incur costs in excess of $900,000.00.

As discovery is ongoing, Berwind reserves the right to timely supplement its Answer to this Interrogatory.

Interrogatory No. 10

Please identify with specificity every fact upon which Berwind bases any assertion that EMG was grossly negligent in the performance of any services relating to the Property, including, but not limited to, each and every error, omission, or other deficiency in performance which you contend was done by EMG in connection with the Property which gives rise to any allegation or damages asserted in your Complaint.

Answer No. 10

Berwind refers to and incorporates herein by reference its Answer to Interrogatory No. 9.

Interrogatory No. 11

Please identify with specificity every fact upon which Berwind bases any assertion that EMG committed fraud in the inducement of any agreement.

Answer No. 11

Berwind objects to this Interrogatory to the extent that it calls for a legal conclusion. Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds that, at the time Berwind retained EMG to perform the property condition evaluation of the Property, Mr. Corr informed Mr. Dillis that Berwind was particularly interested, *inter alia,* in the structure of the Building and the Garage, as the office building was over 100 years old and both the office building and the Garage abutted active commuter railroad lines and were located close to the Massachusetts Turnpike. EMG represented, at p. 20 of its proposal, in pertinent part, as follows:

> Based on on-site observations, interviews, and review of available documentation, EMG shall:
>
> - *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, and other systems.

> • ***Identify those components that are exhibiting deferred maintenance issues and provide estimates for*** "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) ***costs based on the observed conditions,*** available maintenance history ***and industry-standard useful life estimates***. (emphasis added)

The Contract further provided that EMG would perform said Services in accordance with industry-accepted due diligence practice and using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service. EMG further represented to Berwind that a *qualified* professional engineer would inspect and evaluate the Property and perform any necessary engineering services per the parties' agreement. At the time that EMG made these representations, there was, apparently, only one individual on EMG's staff competent to evaluate the structural integrity of reinforced concrete parking garages and similar structures. EMG had, nonetheless, purported to evaluate the structure of commercial buildings and parking garages for Berwind on numerous prior occasions. This strongly suggests that EMG knew that these representations (as to its personnel's ability to evaluate the Garage) were false at the time that they were made, or that EMG made these representations with willful disregard as to their truth or falsity.

EMG represented to Berwind that a *qualified* professional engineer, with the ability to observe open and obvious structural and waterproofing issues, would, and did, inspect and evaluate the Property and perform engineering services pursuant to the terms of the Contract. EMG purposefully failed to disclose to Berwind that Sandra Terepka, EMG's representative who was assigned to perform the engineering services pursuant to the terms of the Contract, was a *mechanical* engineer and unqualified to perform a structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract and/or falsely represented that

Ms. Terepka was qualified to perform a structural and waterproofing inspection. Berwind

reasonably relied upon EMG's willful non-disclosure and/or false representation of this material

fact in deciding to enter into the Contract with EMG which contains, among other things,

purported limitations on the amount which Berwind may recover from EMG as a result of

EMG's professional negligence or breach of contract. As a direct, proximate, and foreseeable

result of Berwind's reliance on EMG's willful non-disclosure and/or false representation to

Berwind, EMG caused damage to Berwind in an amount in excess of $900,000.00.

Interrogatory No. 12

Please identify each and every specific fact upon which Berwind bases any assertion that EMG
breached any contract.

Answer No. 12

Berwind objects to this Interrogatory to the extent that it calls for a legal conclusion.
Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds that pursuant the

terms of the Contract, EMG was to observe and evaluate the general condition of the Property,

provide a full description and evaluation of the Property, identify those components on the

Property that exhibited deferred maintenance issues, and provide estimates for future

maintenance costs of the Property. Further, EMG was contractually obligated to perform it work

in accordance with industry-accepted due diligence practice and using that degree of care and

skill ordinarily exercised by licensed, reputable engineers under similar conditions. EMG failed

to observe, fully describe, identify, and/or estimate the cost of repairing the structural problems

and waterproofing deficiencies in the parking garage which engineers using that degree of care

and skill ordinarily exercised by licensed, reputable engineers under similar conditions would

have easily identified by visual observation alone.

Further answering, Berwind refers to and incorporates herein by reference its Answer to

Interrogatory No. 9.

Interrogatory No. 13

Please identify each and every specific act by EMG in connection with its performance of services relating to the Property which Berwind alleges violated G.L. c. 93A.

Answer No. 13

Berwind refers to and incorporates herein by reference its Answers to Interrogatory Nos.

9 and 11.

Interrogatory No. 14

Please identify each and every specific fact upon which Berwind bases any assertion that it has been damaged by the actions of EMG.

Answer No. 14

Berwind refers to and incorporates herein by reference its Answers to Interrogatory Nos.

9 through 13. Further answering, Berwind states that, as a direct and proximate result of EMG's

negligence and breach of contract, Berwind has advanced (paid on behalf of) NILP in excess of

$900,000.00 for the repair of the open and obvious structural and waterproofing deficiencies in

the Garage.

Interrogatory No. 15

If so alleged, please identify each and every specific misrepresentation which you claim was made by EMG.

Answer No. 15

Berwind refers to and incorporates herein by reference its Answers to Interrogatory Nos.

9 and 11.

Interrogatory No. 16

Please identify each and every person or entity who informed, advised, or otherwise indicated to Berwind of any problems or potential problems with the Parking Garage structure at the Property, and for each such person or entity, please identify:

a.  the date of each such communication;
b.  the manner in which each such communication was made i.e. whether by telephone, telegram, letter, face-to-face conversation, written document, electronic mail, etc.;
c.  the name and present address of all persons who were engaged in or in any way participated in each such communication; and
d.  in full and complete detail, the contents of each such communication made on each of the dates listed in your answer to subpart (a), indicating what was said or communicated by each of the persons listed in your answer to subpart (c).

Answer No. 16

Berwind refers to and incorporates herein by reference its Answer to Interrogatory 6.

Further answering, Berwind responds that the information sought in this Interrogatory is

contained in the non-privileged, relevant documents that Berwind has produced to EMG pursuant

to Defendant's Request for the Production of Documents. Pursuant to Fed. R. Civ. P. 33(c),

Berwind refers EMG to said documents. Berwind also reserves the right to supplement this

response as discovery progresses.

Interrogatory No. 17

For each person whom Berwind expects to call as an expert witness at trial, kindly state:

a.  his/her name, address, specialty and professional education and experience;
b.  subject matter on which each such expert is expected to testify;
c.  the substance of facts and opinions which each expert is expected to testify; and

☒003

d.      a summary of the grounds for each such opinion.

Answer No. 17

Berwind has not yet determined each and every expert witness that it may call at trial, and

accordingly reserves its right to timely supplement this Answer prior to trial pursuant to Local

Rule and Federal Rule of Civil Procedure 26(a)(2)(C).  Notwithstanding the foregoing, Berwind

states that it may call:

        Mr. Paul L. Kelley, P.E.
        Simpson Gumpertz & Heger, Inc.
        41 Seyon Street
        Building #1, Suite 500
        Waltham, MA  02453

                        BERWIND PROPERTY GROUP, INC.

                        By: _____
                           Albert J. Corr
                           Vice President
                           Duly Authorized

As to objections,

BERWIND PROPERTY GROUP, INC.,

By its attorneys,

_____
Eric F. Eisenberg, Esq.
BBO No. 544682
Lauren Timoney Upton, Esq.
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109
(617) 345-9000

#527251                                      22

## CERTIFICATE OF SERVICE

I, Lauren Timoney Upton, Esq., hereby certify that on April 29 , 2005, I caused notice of the foregoing to be served upon all parties/counsel of record in the above-captioned matter.