UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP,<br>　　　　Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG,<br>　　　　Defendant. | DOCKET NO. 04-11411-NMG |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Now comes the defendant, Environmental Management Group, Inc. ("EMG"), and, pursuant to Fed. R. Civ. P. 56, hereby submits the following in support of its Motion for Partial Summary Judgment on the claims of the plaintiffs, Berwind Property Group, Inc. and Newton Investors Limited Partnership (hereinafter collectively "Berwind").

**I.   Introduction**

This action arises out of a contract between plaintiffs and EMG executed in March 1999 (the "Contract"), pursuant to which EMG was to perform, *inter alia*, an evaluation of the real estate located at 1220 Washington Street, Newton, Massachusetts (hereinafter "the Property"). At issue is a dispute between Berwind and EMG regarding the adequacy of the report prepared by EMG for Berwind evaluating the basic condition of the structures and operating systems at the Property (the "Report").

The Contract between Berwind and EMG contains a limitation of liability provision which provides:

997285v1

> 8. Professional Liability. EMG's liability, and that of its officers, directors, employees, agents and subcontractors, to the Client or to any third party, due to any negligent professional acts, errors or omissions, or breach of contract by EMG, **shall be limited to an aggregate of $50,000.00**, or EMG's total charges for its Services (whichever is greater). If the Client requests higher limits of professional liability, EMG agrees to increase the aggregate limit, up to a maximum of $1,000,000.00, upon Client's written request at the time of acceptance of the Proposal, provided that Client agrees to pay an additional consideration of 10% of EMG's total charges, or $500.00 (whichever is greater). The additional charge for the higher liability limit is due to the greater risk assumed by EMG, and is not a charge for additional professional liability insurance. This limitation shall not apply to the extent prohibited by law.

Contract, **Exhibit A** at 22 (emphasis added). Berwind did not notify EMG that it wanted to increase the limit of EMG's liability, nor did Berwind pay EMG the additional fee required for such increase. Deposition of Roy Perry, **Exhibit B** at 135-136. The Contract also provided "This agreement shall be governed by the laws of the State of Maryland." **Exhibit A** at 23.

In an effort to circumvent its contractual agreement to limit EMG's liability, Berwind has asserted claims of G.L. c. 93A, "gross negligence," and "fraud in the inducement" of the contract. However, as these claims are wholly unsupported by the undisputed facts, and as all other claims clearly fall within the ambit of the contractual limitation of liability, partial summary judgment must enter for EMG.

## II. Argument

### A. Interpretation of the Contract is a Matter of Law for the Court

Under Massachusetts law, interpretation of a contract "is ordinarily a question for the court." Bank v. IBM, 145 F.3d 420, 424 (1st Cir. 1998) (internal citations omitted). If a contract is unambiguous, "its interpretation is a question of law that is appropriate for a judge to decide on summary judgment." Seaco Ins. Co. v. Barbosa, 435 Mass. 772, 779, 761 N.E.2d 946 (2002); Bank, 145 F.3d at 424. Similarly, if the contract language is

2

unambiguous, then the Court must construe it according to its plain meaning. If that plain meaning clearly favors one party, and there is no material factual dispute, summary judgment is appropriate. Teragram Corp. v. Marketwatch.com, Inc., 2004 U.S. Dist. LEXIS 26410, 12-13 (D. Mass., 2004), *citing* Bank, 145 F.3d at 424. In this case, the materials facts regarding the Contract terms and EMG's scope of service are not in dispute. Accordingly, summary judgment is appropriate on these issues.

B.    **Maryland Law Governs the Plaintiffs' Claims**

The Contract between Berwind and EMG contains a choice-of-law provision calling for the application of the laws of the State of Maryland. **Exhibit A** at 23. In Federal diversity actions, the parties' choice-of-law is governed by the choice-of-law tenets of the forum state, here, Massachusetts. Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005), *citing* Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020 (1941). Where sophisticated, private parties contractually agree to the application of a particular state's law to govern their relationship, in the absence of public policy concerns, Massachusetts courts (and Federal courts sitting in diversity) honor those choice-of-law provisions. See Northeast Data Sys. v. McDonnell Douglas Computer Sys., 986 F.2d 607, 610 (1st Cir. 1993), citing Morris v. Watsco, Inc., 385 Mass. 672 (Mass. 1982), Borden v. Paul Revere Life Ins. Co., 935 F.2d 370, 375 (1st Cir. 1991).

In this case, there are no public policy considerations against enforcing the choice of law provision in the Contract. The parties are sophisticated commercial entities, with equal bargaining power. **Exhibit B**, at 46. The services offered by EMG are commercially available from other service providers, giving Berwind ample opportunity

to elect to use someone else if they did not want to be subject to Maryland law. Further, the limitation of liability clause was not "compulsory." Instead, EMG offered Berwind the opportunity to increase that amount for a nominal sum; something which Berwind elected not to do. **Exhibit A** at 22. Berwind was fully aware of the impact this had on its ability to seek recovery against EMG in the event of a claim. In fact, in contracts with other vendors for this same project, Berwind actually struck provisions which limited the time or amount for which the vendor could be sued. Schofield Brothers Contract, **Exhibit G**. Under these circumstances, Berwind has no basis for asserting that the limitation of liability provision does not apply. As there is no compelling reason that the parties' choice of law should not be honored, in accordance with Massachusetts choice-of-law principles, Maryland law applies to the claims between the parties. See Northeast Data Sys., 986 F.2d at 610, *citing* Morris, 385 Mass. 672, Borden, 935 F.2d at 375.

Similarly, the parties' choice of Maryland law applies to all claims arising from performance of the Contract. "The First Circuit Court of Appeals has [] held that where a breach of contract is an essential element of a tort claim, a contractual choice of law provision also governs the tort actions arising therefrom." Aisenber v. Hallmark Marketing Corp., 337 F. Supp. 257, 261 (D. Mass. 2004), citing Northeast Data Systems, 986 F.2d at 609-10; see also McAdams v. Mass. Mut. Life Ins. Co., 2002 U.S. Dist. LEXIS 9944, *39 (D. Mass.) (stating, "a choice of law provision should apply to non-contract claims where the basic source of any duty owed by defendants to the plaintiff is derived from the contractual relationship structured by the underlying agreement) (citations omitted), *affirmed* 391 F.3d 287 (1st Cir. 2004).

Similarly, the Eight Circuit has opined that, even where a choice of law provision is narrowly drafted and narrowly construed, the choice of law provision still governs tort claims stemming from the contract itself:

> [Plaintiff] asserts, however, that the contractual choice of law provisions do not govern the negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment claims because they are not contract claims. [Plaintiff's] claims for negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment raise issues of performance and compensation for work done under the [] contracts. Although mainly styled as torts, these claims stem from [Defendant's] alleged failure [to perform], as required under the contracts. The unjust enrichment claim concerns the amount of compensation which [Plaintiff] should receive for [its performance] pursuant to a contract. These claims are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contracts would be governed by Minnesota law. [Plaintiff] thus consented to the application of Minnesota law to such claims.

Northwest Airlines v. Astraea Aviation Servs., 111 F.3d 1386, 1392 (8th Cir. 1997). The circumstances in this case are directly analogous.

Although mainly styled as torts, all of Berwind's claims stem solely from EMG's purported failure to perform under the Contract. Thus, under the federal case law applicable to this and other Circuits, Berwind's claims fall within the ambit of the express agreement that the Contract would be governed by Maryland law. See Northwest Airlines, 111 F.3d at 1392; Aisenber, 337 F. Supp. at 261.

C.  **The Plaintiffs' Negligence, Negligent Misrepresentation, Breach of Contract, and G.L. c. 93A Claims Are Subject to the Terms of the Limitation of Liability Clause in the Contract**

Maryland law expressly permits enforcement of limitation of liability provisions such as those contained in contracts between private parties. "Except in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, wither at the time of making their principal contract, or subsequently thereto." Schrier v. Beltway Alarm Company, 73 Md. App.

5

997285v1

281, 533 A.2d 1316 (1987) (holding alarm contract's 'limitation of liability' clause limiting company's liability to $250 was not unconscionable and was not invalidated by public policy, notwithstanding the fact that personal injury was involved). Moreover, in the specific context of property inspection services, the Maryland Court of Appeals has, on summary judgment, upheld a contract provision limiting the liability of a home inspector to an amount not to exceed the fee paid for its services. See Baker v. Roy Hass Assoc., 97 Md. App. 371 (1993).[1] Therefore, Berwind is limited by the terms of the Contract to a collective recovery of no more than $50,000 on its claims of negligence, negligent misrepresentation, breach of contract, and violation of G.L. c. 93A.[2]

      1.      **The Plaintiffs' negligence and negligent misrepresentation claims are subject to the limitation of liability clause in the Contract**

Under Maryland law, parties may agree to limit liability for the negligent performance of services. In fact, Maryland permits parties, via a limitation of liability clause, to completely avoid liability for negligence resulting from performance under a contract. Baker, 97 Md. App. at 377-78, citing Winterstein v. Wilcom, 16 Md. App. 130, 135 (1972), citing Prosser, *Law of Torts*, 3d Ed. (1964), § 67 at 456. As the language of the Contract between Berwind and EMG does not provide for a greater restriction than that allowed under Maryland law, the limitation of liability agreed by the parties is applicable to Berwind's negligence claims in this action.

      2.      **The Plaintiffs' breach of contract claims are subject to the limitation of liability clause in the Contract**

---

[1] The same result follows under Massachusetts law. E.g. Canal Electric Co. v. Westinghouse Electric Corp., 973 F.2d 988, 996 (1st Cir. 1992) (stating, typically a "liability limitation clause simply reflects a decision by highly sophisticated business entities about how to allocate certain risks. . ."), citing Deerskin Trading Post, Inc. v. Spencer Press Inc., 398 Mass. 118 (1986).

[2] As such amount is greater than the fees charged by EMG under the Contract.

Maryland law also enforces limitation of liability clauses for breach of contract claims, so long as the limitation of liability clause was not the product of unfair bargaining power or against public policy. Baker, 97 Md. App. at 379-80. As noted above, the Contract between Berwind and EMG was not the result of unfair bargaining power between the parties. Berwind had other choices for these services as well as the ability to seek a revision in the terms of the Contract to increase the limit of EMG's liability. Furthermore, under Maryland law, building inspection services "do not fall under the realm of a public duty or concern the public interest." Id. at 381. Thus, as the parties to the instant limitation of liability clause are sophisticated business entities, and as the Contract terms do not impact public policy, Maryland law applies the limitation of liability clause to Berwind's breach of contract claim.

   **3. The Plaintiffs' G.L. c. 93A claims are subject to the limitation of liability clause in the Contract.**

While Berwind's cause of action alleging violation of G.L. c. 93A clearly falls outside the ambit of the substantive law of Maryland, courts in that state have held that consumer protection act claims such as those brought under G.L. c. 93A are subject to limitation by contractual agreement.

Moreover, this court, as well as the First Circuit, has held that parties who have agreed to a contractual choice-of-law clause may not seek to circumvent the application of the law of the chosen forum through the artful pleading of causes of action afforded only under Massachusetts law.

> In view of this case's purely commercial context, the most appropriate course is to construe [defendant's] pleadings strictly. Indeed, in Northeast Data Systems, the court of appeals, facing the issue of whether a choice-of-law clause precluded a

997285v1

Chapter 93A claim, **warned trial courts to cast a wary eye on contract-based Chapter 93A claims posing as tort claims**. It noted:

> [One] district court reasoned that any violation of Chapter 93A is a "tort" and therefore no alleged Chapter 93A violation could fall within the scope of a contractual choice-of-law provision that talks about "contracts." This reasoning, however, seems to exalt pleading form over fact-related substance. **Such reasoning would undermine the parties' choice of law agreement by permitting one of them, through artful pleading, to bring what is little more than a breach of contract claim, under law that both parties have agreed would not apply**.
>
> 986 F.2d at 610 (citation omitted).
>
> As in Northeast Data Systems, [Defendant] seeks to gain an unfair advantage -- here, through the artful use of affidavits **to transform its pumpkin of a contract claim into 93A's coach and four**. In [Defendant's] complaint, the breach of warranty and Chapter 93A claims rested on precisely the same factual foundation. [Plaintiff] is correct that, on the eve of summary judgment, [Defendant] should not be allowed to dress up what is in essence a breach of contract claim to appear more pleasing to a tort lover's eye.

Mead Corp. v. Stevens Cabinets, 938 F. Supp. 87, 90-91 (D. Mass. 1996) (applying contractual limitation of liability clause to defendant's counterclaim alleging 93A violation). As a result, "[u]nder Massachusetts law, an agreed-to limitation of liability barring an award of damages on a breach of warranty claim, employed in a purely commercial context, is effective against a Chapter 93A claim forming merely 'an alternate theory of recovery under the contract.'" Mead Corp. v. Stevens Cabinets, 938 F. Supp. 87, 90 (D. Mass. 1996), quoting Canal Elec. Co. v. Westinghouse Elec. Corp., 406 Mass. 369, 377-79 (1990). This is "[e]specially so where the factual averments pleaded in the complaint are exactly the same for the Chapter 93A count as for the breach of contract count." Mead Corp., 938 F. Supp. at 90-91.

In this case, the Plaintiffs' complaint and answers to interrogatories identify the exact same conduct as being the basis for both the breach of contract and G.L. c. 93A

claims. Berwind Answers to Interrogatories, **Exhibit J**, Answers to Interrogatories No. 9-13. Moreover, these claims focus on the formation of the <u>contractual</u> relationship between the parties, not the performance of services by EMG (as the negligent performance of services alone does not give rise to a violation of G.L. c. 93A as a matter of law). Additionally, while a chapter 93A § 9 claim analogous to a tort-based recovery may override any contractual defenses, Massachusetts law holds that a § 11 claim founded on a contract theory is subject to a contractual limitation of remedies provision. <u>Winter Panel Corp. v. Reichhold Chems., Inc.</u>, 823 F. Supp. 963, 974 (D. Mass. 1993). <u>See</u> <u>also</u> Gilleran, The Law of Chapter 93A, § 10:4, at 333 (1989).

Having chosen to assert the exact same facts as the basis for both a breach of contract and G.L. c. 93A claims, the Plaintiffs now cannot try and recharacterize their claims to avoid the effect of the voluntarily agreed contractual choice of law and limitation of liability provisions. Thus, in accordance with <u>Mead</u> and <u>Northeast Data Systems</u>, Berwind cannot avoid the application of the limitation of liability clause set forth in the Contract by assertion of a G.L. c. 93A claim. <u>Mead</u>, at 90-91; <u>Northeast Data Systems</u>, 986 F.2d at 610.

**D.    The Plaintiffs Remaining Claims Fail as a Matter of Law**

**1.    EMG has not violated G.L. c. 93A**

Moreover, even if the plaintiffs could avoid application of the Contract's provisions by pursuing a G.L. c. 93A claim, such action would still be ineffectual as the asserted claim fails as a matter of law.

As the bases for their G.L. c. 93A claim, Berwind has alleged that EMG misrepresented the scope of the Services that it would perform, misrepresented the qualifications of the person who would perform those Services, and issued the Report

9

with intentional or reckless disregard to its accuracy.  **Exhibit J**, Answer to Interrogatory No. 13.  However, the undisputed facts demonstrate that these assertions are simply without support, and are made solely in an attempt to circumvent the Contract's limitation of liability clause.

The level of conduct forms a violation of G.L. c. 93A § 11 is a relatively high one and exceeds mere breach of contract or negligence.  See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979) ("A mere breach of contract, without more, does not violate G.L. c. 93A."); Madan v. Royal Indem. Co., 26 Mass. App. Ct. 756, 762 (1989); Chambers Steel Engraving Co. v. Tambrands, Inc., 895 F.2d 858, 861 (1st Cir. 1990) (citing Pepsi-Cola Metropolitan Bottling Co. v. Checkers, Inc., 754 F.2d 10, 18 [1st Cir. 1985]).  See also Meyer v. Wagner, 429 Mass. 410, 424 (1999) ("Negligence alone is not enough to support a G.L. c. 93A claim"), *rev'd on other grounds*; Worldwide Commodities, Inc. v J. Amicone Co., 1991 Mass. App. Div. 157, 160 (1991) ("The conduct proscribed by G.L. c. 93A is not simply failure to fulfill business obligations.")  Given the specific circumstances of the transaction at issue, even taking Berwind's assertions as true, at most Berwind can only establish that EMG may have potentially been negligent in the preparation of the Report (which EMG expressly denies).  And since such mere negligence is insufficient to state a claim of G.L. c. 93A liability, judgment must enter for EMG on the G.L. c. 93A claim against it.

    **a.**    **EMG did not misrepresent the scope of the Services**

The scope of EMG's services was set forth in its Proposal.  The Proposal provided by EMG consisted of 24 pages.  Pages 1 and 2 set forth the information regarding the Property to be reviewed and the scope of the Report to be provided.  Pages

3 through 19 related to the Phase I environmental site assessment. Pages 21 through 23 set forth the terms and conditions applicable to the Contract. Page 24 was the authorization to proceed with work to be signed by Berwind. Accordingly, the complete scope of the Services for the Property Condition Evaluation ("PCE") was set forth in a single page, page 20. In general, those services were to provide an assessment of the Property based upon an on-site visual inspection, interviews with site maintenance personnel, and review of available documentation. **Exhibit A** at 20. Berwind did not expect EMG to perform any invasive or destructive testing to determine the structural integrity of the Property. **Exhibit B** at 134. And, as evidenced by the Report, EMG performed the services set forth in its proposal. EMG visited the site to visually observe its condition during a two day period. **Exhibit D** at 2. EMG spoke to on-site and City of Newton personnel to learn about the condition of the Property. **Exhibit D** at Appendix C. EMG reviewed available documentation regarding the property, specifically identifying which documents it was able to locate. **Exhibit D** at Appendix C. This led to the issuance of the Report in conformance with the terms in the Proposal. **Exhibit D**. Accordingly, there is no evidence that EMG misrepresented the scope of the services it intended to perform.

    b.  **EMG did not misrepresent Hoffman's credentials**

Similarly, EMG did not misrepresent the qualifications of the person provided to perform the evaluation of the Property. Berwind has acknowledged that it asked EMG for an MEP Analysis. **Exhibit C** at 103-04. This meant providing a mechanical or electrical engineer. EMG provided a mechanical engineer, Hoffman, who even at that time had already performed several hundred other property condition evaluations.

11

Moreover, contrary to Berwind's original claim that it did not know that Hoffman was not a structural engineer, as this Court has already ruled, the Report actually contains Hoffman's resume as an exhibit, which identifies her as a mechanical engineer. As Hoffman met the criteria called for under the Proposal, EMG did not misrepresent the qualifications of the person performing the Services.

        **c.     EMG did not intentionally or recklessly issue the Report**

Berwind's characterizations aside, there is no evidence that the Report was issued with intentional or reckless disregard for accuracy. Included in the Report were several references to potential problems with the parking garage, and a recommendation that it be further evaluated by a "local structural engineer." **Exhibit D** at 3. Moreover, to ensure that Hoffman's characterizations of the Property could be viewed in proper context, EMG provided photographs showing the conditions observed. **Exhibit D** at Appendix A. Berwind can cite to no information observable on the dates of Hoffman's visit to the site, or documents which were provided to EMG which were intentionally or recklessly ignored in the Report.

Moreover, "a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair." Madan v. Royal Indem. Co., 26 Mass. App. Ct. at 763, *quoting* Swanson v. Bankers Life Co., 389 Mass. 345, 349 (1983). Berwind is a sophisticated commercial entity. It had done business with EMG before, and understood the scope of the services EMG would perform. It also received the Report indicating that further study was required, which it elected not to do until after it had purchased the Property. Such experience, scrutiny, and conduct weighs against finding EMG's action to be "unfair and deceptive."

### d.   Berwind's 93A claims are barred by the economic loss doctrine

Berwind's sole claim for damages against EMG is for economic loss. Specifically, Berwind alleges that it had to expend money to repair the problems with the Property which was purportedly not identified in the Report. But under Massachusetts law, even if EMG's conduct were deemed violative of G.L. c. 93A, such purely economic damages cannot be recovered in an action under Chapter 93A, § 11.

G.L. c. 93A affords recovery only to a "person...who suffers any loss of money or property, real or personal, as a result of the use or employment by another. . .of. . .an unfair or deceptive set or practice. . ." Canal Electric Co. v. Westinghouse Electric Corp., 756 F. Supp. 620, 630 (D. Mass. 1991). Absent such loss, even proof of conduct amounting to an unfair or deceptive act or practice will not support liability under Chapter 93A, § 11. Frank Cooke, Inc. v. Hurwitz, 10 Mass. App. Ct. 99, 110-11 (1980). However, economic harm does not constitute such loss for purposes of recovery under G.L. c. 93A. W.R. Construction & Consulting, Inc. V. Jeld-Wen, Inc., D/B/A/ Pozzi Window, CCH Prod. Liab. Rep. P16, 429 (D. Mass. 2002); Canal Elec. Co. v. Westinghouse Elec. Corp., 973 F.2d 988, 998 (1st Cir. 1992). As Berwind has allegedly suffered only unrecoverable economic harm, it cannot maintain a G.L. c. 93A claim.

### 2.   EMG has not committed gross negligence

As noted above, EMG's performance of services under the Contract is governed by agreement under the laws of the State of Maryland. Applying Maryland's definition of gross negligence to the undisputed facts, Berwind cannot establish the necessary elements to support such a claim.

13

997285v1

Under Maryland law, a heightened burden of proof is imposed upon plaintiffs seeking to assert gross negligence claims:

> [W]hile "most courts consider that 'gross negligence' falls short of a reckless disregard of the consequences, and differs from ordinary negligence only in degree, and not in kind," *Maryland has eliminated this distinction and treats gross negligence as a form of wanton or reckless conduct falling just short of actual malice.*

Assistant Attorney General Randolph Stuart Sergeant, *Gross, Reckless, Wanton, and Indifferent Gross Negligence in Maryland Civil Law*, 30 U. Balt. L. Rev. 1, 47 (2000) (emphasis added), citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* 34, at 212 (5th ed. 1984); Medina v. Meilhammer, 62 Md. App. 239, 249 (1985). Accordingly, for a defendant to be found liable for gross negligence there must be:

> An <u>intentional failure</u> to perform a manifest duty in <u>reckless disregard of the consequences</u> as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully <u>only when he inflicts injury intentionally</u> or is so <u>utterly indifferent</u> to the rights of others that he acts as if such rights did not exist.

Marriott Corp. v. Chesapeake & Potomac Tel. Co., 124 Md. App. 463, 478 (1998) (emphasis added) (citations omitted). Berwind has presented no set of facts which could remotely establish that EMG intentionally ignored its duties under the Contract or acted with such indifference that it exerted no effort to comport with its requirements.

Moreover, Maryland courts have specifically applied this heightened standard of gross negligence in determining whether a claim falls within a contractual exculpatory or limitation of liability clause. In Boucher v. Riner, 68 Md. App. 539 (1986), a parachuting student was injured when he fell into power lines while parachuting. The plaintiff alleged that his instructor realized the danger, but rather than warn him the instructor simply directed the student to turn his back to the power lines. Upholding the

14

applicability of a limitation of liability provision, the Maryland Court of Special Appeals held that even under these extreme circumstances, where there was an obvious and clear risk of serious injury or even death, the plaintiff still failed to prove gross negligence as a matter of law, stating that:

> [V]iewing all of the evidence in the light most favorable to the [Plaintiff], we cannot say that [the instructor's] conduct amounted to a wanton or reckless disregard for [Plaintiff's] life. . .Rather, the conduct alleged here reflects, at worst, poor judgment on the part of [the instructor] that, while perhaps amounting to ordinary negligence, does not rise to the level of gross negligence. We see no evidence of a premeditated decision, deliberately arrived at, by an indifferent jumpmaster that should have indicated almost certain harm to others.

Id. at 547-48 (affirming summary judgment and enforcing exculpatory clause notwithstanding plaintiff's assertions of gross negligence). The law is the same with regard to claims of property damage.

In Marriot, *supra*, the Maryland Court of Special Appeals affirmed the trial court's allowance of summary judgment to the defendant on plaintiff's claims for gross negligence. 124 Md. App. 463. The Marriot case involved claims against a telephone company after construction workers mistakenly cut through the telephone lines while they were working. Importantly, the telephone company's tariff (treated as a contract between the company and its customers), contained a limitation of liability clause for damages arising from its negligence. Id. Plaintiff attempted to circumvent the limitation of liability clause by alleging gross negligence for the phone company's failure to use the best available method for locating (and avoiding the severance of) underground cables. Id. The court rejected this argument, stating, "although the evidence might support a negligence finding, it could not [as a matter of law] support a finding of gross negligence. . .nothing suggests that [the company's] failure to [use the best available method] amounted to "an intentional failure to perform a manifest duty in reckless disregard of the

15

consequences as affecting the life or property of another." Id. at 480. The facts in this case present a similar situation.

While Berwind may argue that Hoffman's inspection was not thorough enough, or that the report did not adequately warn that the conditions observed could be indicative of more serious problems (all of which are expressly denied), there is no basis for asserting that either the manner of Hoffman's inspection of the Property or the language of EMG's resulting Report amount to an "intentional failure" to perform a contractual duty in "wanton or reckless disregard" for Berwind's property. Similarly, there is no allegation, let alone evidence, that any alleged deficiencies in the Report were the result of "premeditated decisions, deliberately arrived at" by EMG, or that EMG showed "indifference" which would result in "certain harm" to Berwind. Rather, the allegations made by Berwind reflect, *at most*, claims of ordinary negligence. Thus, consistent with the holdings of Boucher and Marriot, Berwind cannot establish a claim of gross negligence against EMG. Therefore, the limitation of liability clause must be enforced against Berwind, notwithstanding its allegation of gross negligence. Boucher, 68 Md. App. 539; Marriot, 124 Md. App. 463.

### 3. EMG Did Not Fraudulently Induce Berwind to Enter Into the Contract

Berwind's claim for Fraud in the Inducement must be dismissed if Berwind cannot establish all of the following five, essential elements:

1)   that the defendant made a false representation to the plaintiff;

2)   that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth;

3)   that the misrepresentation was made for the purpose of defrauding the plaintiff;

16

997285v1

4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and

5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

Sass v. Andrew, 152 Md. App. 406, 429 (2003), citing Nails v. S & R, Inc., 334 Md. 398 (1994). Fraudulent inducement is merely "a subspecies of fraud" where a party is induced by a fraud to enter into a contract. Sass, 152 Md. App. at 431-432. Fraudulent inducement cannot be distinguished from the essential elements of fraud. Id. Similarly, even reasonable inferences suggesting fraud are not enough to survive a motion for summary judgment. See Sass, 152 Md. App. at 265. Clear and convincing evidence supporting each element of a fraud claim is required to prove such a claim. Id., citing First Nat'l Bank v. U.S.F. & G. Co., 275 Md. 400, 411 (1975) (stating, "When fraud. . .is imputed, something more than a mere preponderance of evidence must be produced. . ."). The "burden of proof is on the one charging fraud to establish by clear, specific acts, facts that in law constitute fraud." Residential Warranty Corp. v. Bancroft Homes Greenspring Valley, Inc., 126 Md. App. 294, 310-311, (1999), citing Starfish Condominium Ass'n v. Yorkridge Servo Corp. Inc., 295 Md. 693, 714 (1983). Without such clear and convincing evidence, there is no genuine issue of material fact to prevent summary judgment. Id. at 311. Given Berwind's agreement to the terms and conditions of the Contract and receipt and review of the Report, Berwind cannot and does not, present genuine issues of material fact that avoid an imposition of summary judgment dismissing its claim for fraud in the inducement.

Berwind's original "inducement" claim was based on the assertion that EMG had represented that a structural, not mechanical, engineer would perform the Services. However, the individual at Berwind who engaged EMG has actually confirmed the

17

997285v1

contrary to be true. Again, Mr. Corr, who solicited the Proposal from EMG, has stated that he confirmed with Mr. Dillis that Berwind wanted an MEP analysis, which required that a mechanical or electrical engineer be provided. As such, this claim fails factually.

To the extent that Berwind now seeks to allege that because EMG purportedly failed to properly perform its Services it fraudulently induced Berwind to enter into the Contract, such an argument has expressly been rejected under Maryland law.

In the analogous case of Baker v. Roy Hass Assoc., 97 Md. App. 371 (1993), a residential property owner filed a complaint for breach of contract, negligence, and fraud against a home inspector who failed to discover substantial defects on a roof and instead reported the roof to be in a "satisfactory condition". Id. at 374. The defendant issued a report on the condition of the roof without actually climbing on the roof to look at it. It was undisputed that had the home inspector physically inspected the roof, the defects would have been "patent and obvious." Id. at 377.

Nonetheless, the Maryland Appeals Court affirmed the grant of summary judgment in favor of the defendant both finding that a claim of fraud failed as a matter of law and enforcing a limitation of liability provision in favor of the defendant. In doing so, the Baker court concluded, as a matter of law, that the inspector's "inadequate inspection is a classic example of ordinary negligence. Its conduct could not be characterized as indicating a wanton or reckless disregard for [the property owner's] rights. Nor was there an implication of 'malice and evil intention.'" Id. at 378-379 (internal citations omitted). The circumstances in Baker present an even more extreme case than is present here.

It is undisputed that EMG performed the Services called for under the Contract. But unlike the plaintiff in <u>Baker</u> (inexperienced residential home owner), Berwind is a sophisticated property developer. And unlike the defendant in <u>Baker</u> (who did not physically inspect the roof in question), EMG did have an inspector physically view, and photograph, the parking garage at issue. Yet, even under the more extreme circumstances in <u>Baker</u>, the plaintiff was still not permitted to escape the limitation of liability provision contained in its contract by asserting a fraud claim. <u>Baker</u>, 97 Md. App. at 381. Applied to this case, even if there were some error or omission in EMG's services (which is expressly denied), there is still no evidence of fraudulent intent, lest every error or omission of a design professional would constitute a fraud case. Accordingly, the law as exemplified in <u>Baker</u> should control this Motion, and thus the plaintiffs' claim for fraud in the inducement fails as a matter of law.

997285v1

## CONCLUSION

As the foregoing demonstrates, Berwind's negligence, negligent misrepresentation, breach of contract, and G.L. c. 93A claims are governed by the contractual limit of liability clause freely entered into by the parties. Additionally, Berwind's G.L. c. 93A, gross negligence, and fraud in the inducement claims fail as a matter of law under the law applicable to the parties' relationship. Therefore, as a matter of law, partial summary judgment on the issues raised herein should be allowed.

Respectfully submitted,

ENVIRONMENTAL MANAGEMENT
GROUP, INC. d/b/a EMG
By its Attorneys,

MORRISON MAHONEY LLP


/s/sbolotin
Steven J. Bolotin, BBO#564085
Michael H. Hayden, BBO#660746
250 Summer Street
Boston, MA  02210
(617) 439-7500

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 26, 2006.


/s/sbolotin
Steven J. Bolotin

997285v1