UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DOCKET NO.  04-11411-NMG

|  |  |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP, <br> Plaintiffs, <br><br> v. <br><br> ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG, <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANT, ENVIRONMENTAL MANAGEMENT GROUP, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the defendant, Environmental Management Group, Inc. ("EMG") and, in support of its motion for partial summary judgment on the claims of the plaintiffs, Berwind Property Group, Inc. and Newton Investors Limited Partnership (hereinafter collectively "Berwind"), hereby offers the following statement of undisputed material facts:

**Statement of Undisputed Material Facts**

1.    This action arises out of a contract between plaintiffs and EMG executed in March 1999 (the "Contract"), pursuant to which EMG was to perform certain services in connection with the real estate located at 1220 Washington Street, Newton, Massachusetts (hereinafter "the Property").  Contract, attached hereto as **Exhibit A**.

2.    Berwind is a large and sophisticated company and acquires property for its seven investment funds, which have $585,000,000.00 of equity product types,

designated as office, industrial, retail and development. Deposition Transcript of Berwind Senior Vice President of Acquisitions, Roy C. Perry (hereinafter "Mr. Perry"), attached hereto as **Exhibit B**, at 46.

3. Berwind's acquisition criteria remained more or less the same between 1999 and 2005. **Exhibit B**, at 46-47.

4. On March 1, 1999, Berwind contacted Matt Dillis of EMG seeking a proposal to perform certain assessment services regarding the Property, including a visual inspection of the Property (the "Services").[1]  **Exhibit B**, at 135; Deposition Transcript of Berwind Vice President, Albert J. Corr III (hereinafter "Mr. Corr"), attached hereto as **Exhibit C**, at 97, 132-33.

5. The Property consisted of two structures, principally a two-story, 89,715 square foot office building, and secondly a three-story parking garage. EMG Property Condition Evaluation, dated April 6, 1999, hereinafter "EMG Report", attached hereto as **Exhibit D**, at 1-2.

6. At the time EMG was asked to submit a proposal for the Services, Berwind had made an offer to purchase the Property, and "probably would have sent the property description from the offering memorandum" to EMG when it asked EMG to perform an analysis in furtherance of that offer. **Exhibit C** at 101.

7. Berwind had previously engaged EMG to perform similar services of other properties Berwind was considering for acquisition and "based upon [Berwind's] history and dealings with EMG [there developed] a certain level of trust" between Berwind and EMG. **Exhibit B**, at 67; **Exhibit C**, at 73.

---

[1]     In addition to an analysis of the condition of the physical structures at the Property, EMG was also retained to perform a Phase I environmental analysis. This was handled separately, and there is no claim relating to those services. As such, those services are not addressed herein.

8.     On March 2, 1999, EMG sent Berwind a proposal for the requested Services. This proposal was intended to become the contract between Berwind and EMG upon acceptance and execution by Berwind.    Accordingly, the proposal also contained the proposed contract terms and conditions between Berwind and EMG.  **Exhibit A**.

9.     On or about March 3, 1999, Mr. Corr received the EMG proposal and reviewed it to confirm the agreed fee.  **Exhibit C**, at 102-03.

10.    Mr. Corr also confirmed with Mr. Dillis that the proposal was for an Enhanced MEP analysis.  **Exhibit C**, at 103-04.

11.    Mr. Dillis would not have booked an MEP analysis unless it was requested by Berwind.  Deposition of Matthew Dillis attached at **Exhibit E**, at 73-74.

12.    The term "Enhanced PCE" referred to a request by the customer (Berwind) that EMG provide a specific individual or discipline to perform the requested services, but no change in the scope of the services to be performed.  **Exhibit E**, at 46.

13.    Berwind understood that an Enhanced MEP Analysis meant that the person performing the Services would be a mechanical engineer and that the review would focus on the Property's mechanical, electrical, and plumbing systems. Melrose Hotel Proposal attached hereto as **Exhibit F**, at 8.

14.    Thereafter, Mr. Corr provided the proposal to his supervisor, Mr. Perry for review and execution.  **Exhibit C**, at 103-04.

15.    Based on the instructions recorded by EMG, Mr. Perry also understood that Berwind was requesting an MEP Analysis.  **Exhibit B**, at 132-33.

1003938v1

16.     The proposed contract between Berwind and EMG contained in the proposal

included a limitation of liability provision which provides:

8.     Professional Liability.  EMG's liability, and that of its officers, directors,
employees, agents and subcontractors, to the Client or to any third party, due to
any negligent professional acts, errors or omissions, or breach of contract by
EMG, **shall be limited to an aggregate of $50,000.00**, or EMG's total charges
for its Services (whichever is greater).  If the Client requests higher limits of
professional liability, EMG agrees to increase the aggregate limit, up to a
maximum of $1,000,000.00, upon Client's written request at the time of
acceptance of the Proposal, provided that Client agrees to pay an additional
consideration of 10% of EMG's total charges, or $500.00 (whichever is greater).
The additional charge for the higher liability limit is due to the greater risk
assumed by EMG, and is not a charge for additional professional liability
insurance.  This limitation shall not apply to the extent prohibited by law.

**Exhibit A**, at 22 (emphasis added).

17.     Prior proposals/contracts between Berwind and EMG also contained such a

limitation of liability clause.   **Exhibit F**, at 11.

18.     Mr. Perry reviewed the portion of the EMG proposal providing for a limit of

EMG's professional liability before executing it.  **Exhibit B**, at 135.

19.     Berwind did not notify EMG that it wanted to increase the limit of EMG's

liability, nor did Berwind pay EMG the additional fee required for such increase.

**Exhibit B**, at 135-136.

20.     The Proposal also provided "This agreement shall be governed by the laws of the

State of Maryland."  **Exhibit A**, at 23.

21.     Berwind did not request that EMG make any changes to the terms of the proposed

contract language between the parties.  **Exhibit B**, at 135-136.

22.     Berwind did alter proposals from others providing services relating to the

purchase of the Property which imposed limits on the time or extent of a service

provider's liability.  Schofield Brothers Contract, attached hereto as **Exhibit G**.

4

23.    On March 17, 1999, Mr. Perry executed the proposal on behalf of Berwind and authorized EMG to proceed with the Services.  **Exhibit B**, at 130; Acceptance and Authorization attached hereto as **Exhibit H**.

24.    Berwind did not ask EMG to perform any additional services beyond those set forth in the Contract.  **Exhibit B**, at 133-34.

25.    The total fee for all of EMG's Services relating to the Property, including the environmental analysis, was $9,300.  **Exhibit H**.

26.    EMG assigned Sandra Hoffman (*nee* Terepka) (hereinafter "Hoffman") to perform the Services.  Deposition Transcript of Sandra Hoffman, attached hereto as **Exhibit I**, at 112.

27.    Hoffman is a licensed professional engineer in the state of Florida, and has been conducting property condition evaluations for approximately eleven and one half years.  **Exhibit I**, at 30, 113.

28.    Hoffman came to Massachusetts on March 29 and March 30 to perform the Services.  **Exhibit D**, at *cover page* and page 2.

29.    Hoffman interviewed the property manager, John Stewart, examined the City of Newton Building Department file on the Property, viewed all areas of the Property to which she was granted access, including the parking garage, and photographed the Property to confirm the condition as she viewed it.  **Exhibit D**, at 43, Appendix A.

30.    Following the site visit, in April 1999, EMG provided Berwind with a Property Condition Evaluation Report.  **Exhibit D**.

1003938v1

31.    In the Report, Hoffman was identified as the EMG employee who performed the

evaluation.  **Exhibit D**, at 2.

32.    Included in the Report was Hoffman's resume, indicating that she was a

mechanical engineer licensed in Florida and California.    As such, her

qualifications were disclosed to the plaintiffs since the date of the EMG report,

April 16, 1999.[2] **Exhibit D**, at 47-48.

33.    Included in the Report were several references to potential problems with the

parking garage, and a recommendation that it be further evaluated by a "local

structural engineer." **Exhibit D**, at 3.

34.    Berwind asserts the same factual basis (EMG's purported failure to fully disclose

the extent of the structural problems with the Property's parking garage) as

grounds for its breach of contract, tort, and G.L. c. 93A claims.  Berwind Answers

to Interrogatories, **Exhibit J**, Answers to Interrogatories No. 9-13.

Respectfully submitted,

ENVIRONMENTAL MANAGEMENT
GROUP, INC. d/b/a EMG
By its Attorneys,

MORRISON MAHONEY LLP


/s/sbolotin
_____
Steven J. Bolotin, BBO#564085
Michael H. Hayden, BBO#660746
250 Summer Street
Boston, MA  02210
(617) 439-7500

---

[2]    In this Court's December 5, 2005 Memorandum and Order denying plaintiffs' motion to amend to bring claims against EMG employees individually, this Court expressly noted that EMG provided Berwind with Hoffman's credentials as part of its report, correctly identifying her as a mechanical engineer. Memorandum and Order at 13.

1003938v1

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on June 26, 2006.

/s/sbolotin
Steven J. Bolotin

1003938v1