# EXHIBIT J

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) ) | DOCKET NO. 04-11411-NMG |
| v. | ) ) | |
| ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG, | ) ) ) | |
| Defendant. | ) ) ) | |

## BERWIND PROPERTY GROUP, INC.'S ANSWERS TO ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG'S FIRST SET OF INTERROGATORIES

Pursuant to F.R.C.P. 33, Plaintiff Berwind Property Group, Inc. ("Berwind") hereby responds to the correspondingly numbered paragraphs of the First Set of Interrogatories ("Interrogatories") served by Defendant Environmental Management Group, Inc. d/b/a EMG ("EMG") as follows:

## GENERAL OBJECTIONS

1.     Berwind objects to the Interrogatories, and the instructions and definitions contained therein, to the extent that they purport to impose upon Berwind duties or obligations that exceed the requirements and permissible scope of discovery under the Federal Rules of Civil Procedure.

2.     Berwind objects to the Interrogatories to the extent that they seek information protected by the work product doctrine, the attorney/client privilege, and any other privilege cognizable at law.

Interrogatory No. 9

Please identify with specificity every fact upon which Berwind bases any assertion that EMG was negligent in the performance of any services relating to the Property, including, but not limited to, each and every error, omission, or other deficiency in performance which you contend was done by EMG in connection with the Property which gives rise to any allegation or damages asserted in your Complaint.

Answer No. 9

Berwind objects to this Interrogatory to the extent that it calls upon Berwind to characterize facts or provide information that is more properly the subject of expert testimony. Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds as follows:

Berwind was induced to enter into a contract with EMG on or about March 17, 1999 (the "Contract") by which EMG agreed to perform a Phase I Environmental Site Assessment and an Enhanced Property Condition Evaluation (the "Services") of the buildings located at 1210-1230 Washington Street in Newton, MA (the "Property"). Mr. Corr informed Mr. Dillis that Berwind was particularly interested, *inter alia,* in the structure of the Building and the Garage, as the office building was over 100 years old and both the office building and the Garage abutted active commuter railroad lines and were located close to the Massachusetts Turnpike. EMG represented, at p. 20 of its proposal, in pertinent part, as follows:

> Based on on-site observations, interviews, and review of available documentation, EMG shall:
>
> - *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, and other systems.
>
> - *Identify those components that are exhibiting deferred maintenance issues and provide estimates for* "immediate" (90-day), "short term" (1

year) and "replacement reserve" (10-year) *costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates.* (emphasis added)

The Contract further provided that EMG would perform said Services in accordance with industry-accepted due diligence practice and using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service. EMG further represented to Berwind that a *qualified* professional engineer would inspect and evaluate the Property and perform any necessary engineering services per the parties' agreement. At the time that EMG made these representations, there was, apparently, only one individual on EMG's staff competent to evaluate the structural integrity of reinforced concrete parking garages and similar structures. EMG had, nonetheless, purported to evaluate the structure of commercial buildings for Berwind on numerous prior occasions. This strongly suggests that EMG knew that these representations (as to its personnel's ability to evaluate the Garage) were false at the time that they were made, or that EMG made these representations with willful disregard as to their truth or falsity. Such statements (and the circumstances under which they were made) would also constitute unfair and deceptive acts and practices by EMG.

In or around March 1999, Sandra Terepka visited the Property, and inspected the parking garage (the "Garage") located on the Property. Ms. Terepka was the only EMG employee to visit/inspect the Garage. Ms. Terepka was not a structural engineer, nor had Ms. Terepka ever received any meaningful training in structural engineering. Ms. Terepka failed to observe/appreciate the significance of open and obvious structural and waterproofing deficiencies in the Garage. Ms. Terepka did, however, understand, from her inspection, that the Garage "had serious problems" or words to that effect. EMG's Report to Berwind, however, failed to mention

that there were significant structural problems, waterproofing deficiencies, or other significant

problems in Garage. More specifically, EMG's Property Condition Evaluation (the

"Evaluation"), at pp. 35-36, states as follows:

> The framing, walls *and decks* of the parking structure appeared to be in fair condition. *Small* areas of spalled concrete and minor rust stains were observed, indicating initial corrosion of the steel reinforcing in the ceiling. ... Cleaning and patching the areas of spalled concrete with an epoxy concrete patch is required within the next year.
>
> The ground level of the parking garage had areas of cracking in the concrete slab. ... Sealing cracks is considered to be a part of routine maintenance. No additional action is required. (emphasis added)

While deficiencies were noted in an in-ground drain line and the building's roof, these

deficiencies were the subject of pre-closing adjustments by Berwind and the Seller. The

undisclosed deficiencies, however, were many orders of magnitude larger than these disclosed

deficiencies, and, as such, Berwind had no opportunity to negotiate them prior to the closing.

Berwind has since learned that other engineers who had performed a visual inspection of

the Property *prior* to EMG had readily observed that the Garage exhibited significant, open and

obvious structural problems and waterproofing deficiencies. These deficiencies included, *inter*

*alia*, the following:

- slab deflections;

- extensive cracking around reinforcement steel;

- through-slab cracks with florescence and active water leakage;

- concrete delamination along the through-slab cracks;

- slab delamination, scaling and popouts;

- slab cracking around the column base;

- unsealed slab construction joints;

- widespread slab cracks; and

- absence of vehicular-traffic bearing waterproofing on the decks.

When it entered into the Contract, EMG knew that Berwind was hiring EMG to assist Berwind with its due diligence activities for its acquisition of the Property. Further, EMG certified that Berwind and NILP could rely on the representations set forth in the Evaluation. Based on EMG's representations in its Evaluation, Berwind, and NILP in turn, decided to purchase the Property. Had Berwind/NILP known that the Garage suffered from significant structural problems and waterproofing deficiencies, Berwind/NILP would not have purchased the Property for $11.7 million as Berwind/NILP did, or Berwind/NILP would have purchased the Property for a lower price, taking into account the additional costs of repairing the Garage. Further, after Berwind/NILP purchased the Property, Berwind/NILP based its on-going repair and maintenance of the Garage on EMG's representations in its Report.

EMG knowingly and willfully misrepresented the scope of work it would perform and the qualifications of the person who would perform the work at the time it induced Berwind to enter into the Contract. EMG breached its duty of reasonable care owed to Berwind in its performance of its inspection, and its issuance of the Evaluation of the Garage, intentionally and/or with reckless and wanton disregard of its duties owed to Berwind, thereby exposing Berwind to unwarranted risk. EMG's fraud, misrepresentation, negligence, gross negligence, and reckless and wanton breach of its duties to Berwind, directly, proximately, and foreseeably caused Berwind to incur costs in excess of $900,000.00.

As discovery is ongoing, Berwind reserves the right to timely supplement its Answer to this Interrogatory.

Interrogatory No. 10

Please identify with specificity every fact upon which Berwind bases any assertion that EMG was grossly negligent in the performance of any services relating to the Property, including, but not limited to, each and every error, omission, or other deficiency in performance which you contend was done by EMG in connection with the Property which gives rise to any allegation or damages asserted in your Complaint.

Answer No. 10

Berwind refers to and incorporates herein by reference its Answer to Interrogatory No. 9.

Interrogatory No. 11

Please identify with specificity every fact upon which Berwind bases any assertion that EMG committed fraud in the inducement of any agreement.

Answer No. 11

Berwind objects to this Interrogatory to the extent that it calls for a legal conclusion.

Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds that, at the time

Berwind retained EMG to perform the property condition evaluation of the Property, Mr. Corr

informed Mr. Dillis that Berwind was particularly interested, *inter alia,* in the structure of the

Building and the Garage, as the office building was over 100 years old and both the office

building and the Garage abutted active commuter railroad lines and were located close to the

Massachusetts Turnpike. EMG represented, at p. 20 of its proposal, in pertinent part, as follows:

> Based on on-site observations, interviews, and review of available documentation, EMG shall:
>
> - *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, and other systems.

- *Identify those components that are exhibiting deferred maintenance issues and provide estimates for* "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) *costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates.* (emphasis added)

The Contract further provided that EMG would perform said Services in accordance with industry-accepted due diligence practice and using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service. EMG further represented to Berwind that a *qualified* professional engineer would inspect and evaluate the Property and perform any necessary engineering services per the parties' agreement. At the time that EMG made these representations, there was, apparently, only one individual on EMG's staff competent to evaluate the structural integrity of reinforced concrete parking garages and similar structures. EMG had, nonetheless, purported to evaluate the structure of commercial buildings and parking garages for Berwind on numerous prior occasions. This strongly suggests that EMG knew that these representations (as to its personnel's ability to evaluate the Garage) were false at the time that they were made, or that EMG made these representations with willful disregard as to their truth or falsity.

EMG represented to Berwind that a *qualified* professional engineer, with the ability to observe open and obvious structural and waterproofing issues, would, and did, inspect and evaluate the Property and perform engineering services pursuant to the terms of the Contract. EMG purposefully failed to disclose to Berwind that Sandra Terepka, EMG's representative who was assigned to perform the engineering services pursuant to the terms of the Contract, was a *mechanical* engineer and unqualified to perform a structural and waterproofing inspection and evaluation of the Garage as required by the terms of the Contract and/or falsely represented that

Ms. Terepka was qualified to perform a structural and waterproofing inspection. Berwind

reasonably relied upon EMG's willful non-disclosure and/or false representation of this material

fact in deciding to enter into the Contract with EMG which contains, among other things,

purported limitations on the amount which Berwind may recover from EMG as a result of

EMG's professional negligence or breach of contract. As a direct, proximate, and foreseeable

result of Berwind's reliance on EMG's willful non-disclosure and/or false representation to

Berwind, EMG caused damage to Berwind in an amount in excess of $900,000.00.

Interrogatory No. 12

Please identify each and every specific fact upon which Berwind bases any assertion that EMG
breached any contract.

Answer No. 12

Berwind objects to this Interrogatory to the extent that it calls for a legal conclusion.

Berwind further incorporates the General Objections, to the extent applicable.

Subject to and without waiving these objections, Berwind responds that pursuant the

terms of the Contract, EMG was to observe and evaluate the general condition of the Property,

provide a full description and evaluation of the Property, identify those components on the

Property that exhibited deferred maintenance issues, and provide estimates for future

maintenance costs of the Property. Further, EMG was contractually obligated to perform it work

in accordance with industry-accepted due diligence practice and using that degree of care and

skill ordinarily exercised by licensed, reputable engineers under similar conditions. EMG failed

to observe, fully describe, identify, and/or estimate the cost of repairing the structural problems

and waterproofing deficiencies in the parking garage which engineers using that degree of care

and skill ordinarily exercised by licensed, reputable engineers under similar conditions would

have easily identified by visual observation alone.

Further answering, Berwind refers to and incorporates herein by reference its Answer to

Interrogatory No. 9.

Interrogatory No. 13

Please identify each and every specific act by EMG in connection with its performance of
services relating to the Property which Berwind alleges violated G.L. c. 93A.

Answer No. 13

Berwind refers to and incorporates herein by reference its Answers to Interrogatory Nos.

9 and 11.

Interrogatory No. 14

Please identify each and every specific fact upon which Berwind bases any assertion that it has
been damaged by the actions of EMG.

Answer No. 14

Berwind refers to and incorporates herein by reference its Answers to Interrogatory Nos.

9 through 13. Further answering, Berwind states that, as a direct and proximate result of EMG's

negligence and breach of contract, Berwind has advanced (paid on behalf of) NILP in excess of

$900,000.00 for the repair of the open and obvious structural and waterproofing deficiencies in

the Garage.

Interrogatory No. 15

If so alleged, please identify each and every specific misrepresentation which you claim was
made by EMG.

04/29/2005 08:37 FAX                                                                    ☑003

      d.     a summary of the grounds for each such opinion.

Answer No. 17

Berwind has not yet determined each and every expert witness that it may call at trial, and accordingly reserves its right to timely supplement this Answer prior to trial pursuant to Local Rule and Federal Rule of Civil Procedure 26(a)(2)(C). Notwithstanding the foregoing, Berwind states that it may call:

> Mr. Paul L. Kelley, P.E.
> Simpson Gumpertz & Heger, Inc.
> 41 Seyon Street
> Building #1, Suite 500
> Waltham, MA 02453

BERWIND PROPERTY GROUP, INC.

By: _____
     Albert J. Corr
     Vice President
     Duly Authorized

As to objections,

BERWIND PROPERTY GROUP, INC.,

By its attorneys,

_____
Eric F. Eisenberg, Esq.
BBO No. 544682
Lauren Timoney Upton, Esq.
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000

#527251                                                                 22