

1

**VOLUME I**
**PAGES:** 1-191
**EXHIBITS:** 14-39

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
DOCKET NO. 04-11411-NMG

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
BERWIND PROPERTY GROUP, INC.                    \*
and NEWTON INVESTORS LIMITED                    \*
PARTNERSHIP,                                    \*
                    Plaintiffs                  \*
                                                \*
vs.                                             \*
                                                \*
ENVIRONMENTAL MANAGEMENT                        \*
GROUP, INC., d/b/a EMG,                         \*
                    Defendant                   \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**DEPOSITION OF ROY C. PERRY**, a witness produced by Berwind Property Group, Inc., taken pursuant to the applicable provisions of the Massachusetts Rules of Civil Procedure 30(b)(6), before Linda Horne, CSR #114593, Registered Professional Reporter and Notary Public within and for the Commonwealth of Massachusetts, at the Law Offices of Hinckley, Allen & Snyder LLP, 28 State Street, Boston, Massachusetts, on Tuesday, April 26, 2005, commencing at 10:16 a.m.

EPPLEY COURT REPORTING, LLC
Post Office Box 382
Hopedale, Massachusetts 01747
(508) 478-9795      (508) 478-0595 (Fax)
leppley@msn.com

2

```
 1    APPEARANCES:

 2    Representing the Plaintiffs:

 3        HINCKLEY, ALLEN & SNYDER LLP

 4        28 State Street

 5        Boston, MA   02109-1775

 6        BY:  ERIC F. EISENBERG, ESQ.

 7        (617) 378-4224   (617) 378-4225    (Fax)

 8

 9    Representing the Defendant:

10        MORRISON MAHONEY LLP

11        250 Summer Street

12        Boston, MA   02210-1181

13        BY:  STEVEN J. BOLOTIN, ESQ.

14        (617) 737-8878   (617) 342-4943    (Fax)

15

16

17

18

19

20

21

22

23

24
```

```
 1    inadequate drainage, efflorescence on the
 2    exterior brick, mineral deposits, and minor
 3    concrete deterioration due to water intrusion
 4    were observed in the parking garage, requiring
 5    additional evaluation by a local Professional
 6    Engineer, as discussed in Section 7.  The cost of
 7    this work is included in the Immediate Repairs
 8    Cost Estimate (Table 1)."
 9              Did you hire somebody to look at ponding
10    water, inadequate drainage, efflorescence on the
11    exterior brick, mineral deposits and minor
12    concrete deterioration due to water intrusion in
13    the parking garage?
14        A.    Let's look at Table 1.
15        Q.    No, sir.  Let's answer the question.
16    Did you hire somebody to do that?  It's a yes or
17    no.
18        A.    Yes.
19        Q.    Who did you hire to do that?
20        A.    We hired the person under Section 7
21    where it said to discuss with the drainage.
22    That's who we -- that's the work we had done with
23    the drainage.  It's mentioned here on this Page
24    5.  In my opinion, it has to do with the drainage
```

1  problem. That's what we did. That's what we
2  took care of in the third amendment to the
3  purchase and sale agreement.
4      Q.  Actually, sir, under the third amendment
5  to the purchase and sale agreement, you didn't
6  hire the person. The owner did, correct?
7      A.  It was done.
8      Q.  How do you know?
9      A.  We had somebody follow up on it.
10     Q.  And you know exactly what was done in
11 order to fix that?
12     A.  The drainage was cleared when we
13 purchased the property.
14     Q.  And what about the issues of ponding
15 water, what was done to rectify that by the
16 consultant hired by the seller?
17     A.  I assume the ponding water occurred from
18 the clogged drainage systems.
19     Q.  You don't know that one way or another?
20     A.  If it wasn't the way the report is
21 written, if they thought there were additional
22 problems, it should have been mentioned in the
23 report.
24     Q.  It is mentioned in the report. It says,