# MORRISON MAHONEY LLP

COUNSELLORS AT LAW

250 SUMMER STREET
BOSTON, MASSACHUSETTS 02210-1181
617-439-7500

| | |
|---|---|
| MASSACHUSETTS | CONNECTICUT |
| BOSTON | HARTFORD |
| FALL RIVER | |
| SPRINGFIELD | NEW YORK |
| WORCESTER | NEW YORK |
| | |
| RHODE ISLAND | ENGLAND |
| PROVIDENCE | LONDON |

Steven J. Bolotin
Phone: 617-737-8878
Fax: 617-342-4943
sbolotin@morrisonmahoney.com

July 27, 2006

Lauren Timoney Upton, Esq.
Hinckley, Allen & Snyder, LLP
28 State Street
Boston MA  02109

Re: Berwind Property Group, Inc. and Newton Investors Limited Partnership
Vs: Environmental Management Group, Inc. d/b/a EMG
   Docket No.: 04-11411-NMG
   Our File: 10014388

Dear Ms. Upton:

Enclosed with respect to the above-referenced matter, please find the report of our expert, Commercial Construction Consulting, Inc.

Very truly yours,

Steven J. Bolotin

SJB:sw
Enclosure

RECEIVED JUL 28 2006

962432v1



# Analysis of Property Condition Evaluation Report
of 1210-1230 Washington Street, Newton, Massachusetts
Dated April 6, 1999
Provided by EMG to Berwind Property Group, Inc.

Prepared by James Kirby
Commercial Construction Consulting, Inc.
313 Congress Street
Boston, Massachusetts 02210

## Factual Basis of Opinions

Berwind Property Group, Inc. ("Berwind") is a large and sophisticated property developer experienced in the purchase, redevelopment, and operation of commercial properties. Prior to the engagement in question, Berwind had retained Environmental Management Group, Inc ("EMG") to perform similar analyses on other properties, and was familiar with the scope of services EMG provided.

In March 1999, Berwind requested a proposal from EMG to perform a Property Condition Evaluation ("PCE") of 1210-1230 Washington Street, Newton, Massachusetts (the "Property"). The Property consisted of a three story office building and a three story parking garage, which was used solely for parking for office tenants and visitors. Berwind specifically asked EMG to provide someone experienced with mechanical, electrical, and plumbing ("MEP") systems, making this a request for an "Enhanced" PCE. Berwind understood that in requesting an Enhanced PCE with an MEP focus, it was asking EMG to send a single mechanical or electrical engineer to perform a visual inspection of the Property and provide a report outlining those observations.

EMG sent Berwind a written proposal containing the scope of services it intended to perform. This scope of services was consistent with similar engagements EMG had previously performed for Berwind. After Berwind confirmed that price quoted by EMG was for an MEP analysis, it signed the proposal making it a written contract between the parties (the "Agreement").

As requested by Berwind, EMG provided a mechanical engineer, Sandra Terepka, to perform the PCE. Ms. Terepka was not only a licensed mechanical engineer, but had performed literally hundreds of previous property evaluations. As such, she was fully qualified to perform a visual inspection of the Property.

Ms. Terepka visited the Property to perform the visual inspection called for under the Agreement. She toured the entire property, including the parking garage, spoke with the maintenance manager identified by Berwind, reviewed the materials provided by Berwind in response to EMG's initial questionnaire to Berwind, and reviewed materials available to her regarding the Property located at the Newton Building Department. She



took notes of all observations and conversations, and photographed the conditions she saw.

Following her view of the Property, Ms. Terepka prepared a draft report. EMG then took Ms. Terepka's draft and arranged it into a final format previously provided to, and accepted by, Berwind (the "Report"). The final Report contained copies of Ms. Terepka's interview notes, photographs, and her curriculum vitae.

In her Report, Ms. Terepka indicated in several locations, her recommendation that Berwind retain a structural engineer to review the parking garage drainage and structure. The basis for this recommendation was her notation of a number of problems she observed in the parking garage, including signs of water infiltration in the concrete decking, as well as indications of prior repairs for which documentation could not be provided. It was specifically recommended that such study be performed prior to the purchase of the Property. EMG was not asked to perform such a structural analysis, nor did Berwind follow the report's recommendations until after it had purchased the Property.

**Materials Reviewed**

Proposal/Agreement between Berwind and EMG

Property Condition Evaluation Report

EMG file regarding 1210-1230 Washington Street, Newton, Massachusetts

Berwind's Answers to Interrogatories

Depositions of Albert Corr, Roy Perry, Sandra Terepka Hoffman, Michael Collins, Matthew Dillis

Simpson Gumpertz & Heger Reports regarding the Property and Expert Witness Report

Property Condition Evaluation Standards, including those prepared by the ASTM

**Opinions**

With regard to the services performed by Ms. Terepka, her actions were consistent with the terms of the Agreement and complied with the standard of practice for performance of property condition assessments in place at the time. Berwind asked EMG to provide a mechanical or electrical engineer to perform a PCE which focused on the mechanical, electrical, and plumbing systems of the office building it was purchasing. Ms. Terepka is a mechanical engineer, and was at the time she performed her services. Ms. Terepka performed a visual inspection of the Property consistent with both the terms of the Agreement and the applicable standards. She spoke with the appropriate individuals and sought the appropriate information in order to learn about the condition of the Property. Finally, she documented her observations photographically and summarized her communications with others in writing, all of which were provided to



Berwind. As such, her inspection of the property conformed with the standard of practice for the profession.

With regard to the Report issued by EMG, it was consistent with the terms of the Agreement and complied with the standard of practice for performance of property condition assessments in place at the time. Berwind's sole complaint is that the Report fails to identify what Berwind seeks to characterize as "open and obvious" indications of structural distress in the parking garage. However, unusual conditions observable at the time of EMG's engagement were noted in the Report. Again, this is confirmed by the contemporaneous photographs taken by Ms. Terepka. These documents demonstrate that the recommendations and conclusions made in the Report are consistent with the information available to EMG based upon a visual inspection of the Property as called for under the Agreement and applicable property condition assessment standards.

Similarly, Berwind asserts that EMG acted improperly in sending Ms. Terepka to the Property because she was "unqualified" to perform a structural analysis of the Property parking garage. However, that was not what Berwind retained EMG to do. Instead, Berwind specifically requested that EMG provide a mechanical engineer rather than a structural engineer, and to perform a visual inspection of the entire Property rather than focus its efforts solely on the parking garage. Nevertheless, the Report does identify issues associated with the parking garage structure. Contained in the Report are notations and photographs of areas of spalled concrete, corrosion of steel reinforcing, and water penetration in the concrete decking of the parking garage. The Report further indicates that additional areas had been repaired prior to the inspection, but that the identified Property contact did not know the extent of these repairs. Similarly, the Report makes numerous references to problems with drainage in the parking garage, including ponding water and clogging of the storm drain system.

As the mechanical engineer requested by Berwind to observe the entire Property identified conditions in a specific area which indicated the potential for structural problems to exist, EMG appropriately recommended that before completing the purchase of the Property, Berwind retain a structural engineer to perform a review solely of the parking garage drainage and structure. This was prominently done in the Report in the two sections most likely to be read by Berwind. In the executive summary of the General Physical Condition of the Property contained on page 3 of the Report, the very first recommendation made is that Berwind "[r]etain structural engineer to review parking garage drainage and structure." This recommendation was repeated only a page later, in the section Recommendations for Equity Investors (*i.e.* Berwind). Such recommendation was the appropriate method to address these issues, as they called for a more in-depth review of a specific area of the Property by a more specialized individual than was contracted for by Berwind or was consistent with industry practice for a visual general property condition assessment.

### Credentials

James Kirby is the president of Commercial Construction Consulting, Inc. ("C3"), a consulting engineering firm performing due diligence inspections annually on properties with a total value in excess of $3 billion. Mr. Kirby personally performs due diligence property inspections for regional, national, and international clients, and is familiar with the applicable standards and practices of due diligence firms in Massachusetts in effect at the time the services in question were performed. His curriculum vitae is appended hereto.

Mr. Kirby has been retained specially for this litigation, has no personal involvement in the outcome of this matter, and is being compensated for his services at the rate of $250 per hour.

Commercial Construction Consulting, Inc.

_____
James P. Kirby, President