UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP,<br>    Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG,<br>    Defendant. | DOCKET NO. 04-11411-NMG<br><br>**LEAVE TO FILE GRANTED<br>SEPTEMBER 19, 2006** |

**REPLY OF ENVIRONMENTAL MANAGEMENT GROUP, INC. TO PLAINTIFFS' OPPOSITION TO DEFENDANTS MOTION FOR PARTIAL SUMMARY JUDGMENT**

NOW COMES the defendant, Environmental Management Group, Inc. (hereinafter "EMG"), and hereby offers the following reply to the plaintiffs' opposition to defendant's motion for partial summary judgment. In their Opposition, the plaintiffs, Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively "Berwind") argue that fraud in the inducement "vitiates" the Contract at issue and, therefore, Massachusetts law, rather than the Contract's choice of Maryland law, shall apply to the plaintiffs' claims. However, applying Massachusetts law as asserted by Berwind, all of the plaintiffs' claims are precluded as a matter of law. In support hereof EMG offers the following reply, *arguendo*, addressing the plaintiffs' claims under Massachusetts law.

I. **STATEMENT OF ADDITIONAL UNDISPUTED FACTS**

In addition to the defendant's Statement of Undisputed Material Facts in support of its motion for partial summary judgment, EMG offers the following additional undisputed facts:

35. "[The EMG Report] includes the resume of Ms. Hoffman (nee Terepka) which specifically identifies her background as a mechanical engineer. **Exhibit D.** [1]

36. Page 3 of the EMG report makes a specific recommendation that Berwind to '[r]etain [a] structural engineer to review parking garage drainage and construction'. Memorandum and Order dated December 5, 2005, attached hereto as **Exhibit K**, at 13.

37. Pursuant to the prior rulings of this Court in this matter, "Plaintiffs cannot now claim that they had no way of knowing that Hoffman lacked expertise in structural engineering when they had that information at the time of EMG's evaluation in April, 1999." **Exhibit K** at 13.

38. Ken Cala was Berwind's asset manager, the person assigned by Berwind to oversee the operation of the property, following its purchase. Deposition of Albert Corr, p. 19, attached hereto as **Exhibit L**.

39. In March 2001, Mr. Cala followed EMG's advice to retain a structural engineer to review the parking garage drainage and structure, and retained the engineering firm of Edwards and Kelcey to inspect and report on the garage. E-mail correspondence from Ken Cala to Patrick DiGregorio, with copy to Berwind Vice President, Albert Corr, dated October 2, 2003, attached hereto as **Exhibit M**.

40. Edwards and Kelcey visited the property on March 22, 2001, and provided a report (hereinafter the "Edwards and Kelcey" Report) to the plaintiff's property manager, Nordblom Company, addressed to Chris Finlay. Edwards and Kelcey Report, attached hereto as **Exhibit N**.

41. The plaintiff's property manager, Nordblom Company, forwarded the Edwards and Kelcey Report to Berwind Vice President, Albert Corr, on April 11, 2001. **Exhibit N**.

42. The Edwards and Kelcey Report recommended remediation for the following structural defects and waterproofing deficiencies:

    • An approximately 50-foot long crack along a construction joint;
    • Moisture infiltration in the 50' long crack;
    • Ponding water on the pavement, along the construction joint and above the area where the large spalled concrete section was located;
    • Areas of spalled concrete in isolated areas of the underside of the deck and spalling concrete in isolated areas of the pavement surface (roof level);

---

[1] The EMG Property Condition Evaluation, dated April 6, 1999, hereinafter "EMG Report", is attached to the Defendant's Statement of Undisputed Material Facts as **Exhibit D**.

998627v1

- No control joint constructed in the slab, resulting in visible cracks;
- A number of leaking drains, missing sealant; and
- A number of drains unable to properly evacuate water.

**Exhibit N**.

43. Berwind contends that these defects were "readily observable" to an engineer reviewing the Property at or before the time of EMG's Report. Complaint, paragraph 14.

44. Plaintiffs filed their original complaint in Suffolk Superior Court on March 8, 2004. Suffolk Superior Court docket sheet attached hereto as **Exhibit O**.

## II. ARGUMENT

### A. Plaintiff's Claims Are Time Barred By G.L. c. 206, § 2A

The plaintiff's causes of action for negligence and gross negligence (Count I), negligent and grossly negligent misrepresentation (Count II) and fraud in the inducement (Count IV) against EMG are barred by G.L. c. 206, § 2A. Each action is subject to a three-year statute of limitations under G.L. c. 206, § 2A.[2] See Wolinetz v. Berkshire Life Ins. Co., 361 F.3d 44, 47 (1st Cir. 2004). "'[T]he action accrues when the injured party knew, or, in the exercise of reasonable diligence, should have known, the factual basis for the cause of action.'" O'Rourke v. Jason Inc., 978 F.Supp. 41, 50 (D. Mass. 1997), quoting Tagliente v. Himmer, 949 F.2d 1, 4 (1st Cir. 1991). The burden is on the plaintiff to present facts sufficient to take the case outside of the applicable statute of limitations. Wolinetz, 361 F.3d at 47, citing Franklin v. Albert, 381 Mass. 611 (1980). Summary judgment is appropriate with respect to a statute of limitations defense where there is no dispute as to the essential evidentiary facts controlling the application of the statute of limitations. Catrone v. Thoroughbred Racing Ass'n, 929 F.2d 881, 886 (1st Cir. 1991), citing Fidler v. E.M. Parker Co., 394 Mass. 534 (1985).

---

[2] Massachusetts conflict of law rules determine whether Massachusetts or Maryland statute of limitations governs this case. Reisch v. McGuigan, 745 F. Supp. 56, 58 (D. Mass. 1990); Gonzalez v. Temple Mountain Ski Resort, Inc., 613 F. Supp. 354, 355 (D. Mass. 1985). In Massachusetts, statutes of limitations are procedural and are, therefore, governed by the law of the forum state. See Hemric v. Reed & Prince Mfg. Co., 739 F.2d 1, 2 (1st Cir. 1984); Alves v. Siegel's Broadway Auto Parts, Inc., 710 F. Supp. 864, 867 (D. Mass. 1989).

1.  **Berwind's Fraud in the Inducement Claim is Time Barred**

In their Opposition, the plaintiffs assert a claim for fraud in the inducement as "[t]he evidence establishes that EMG knowingly and willfully misrepresented the scope of work it would perform and the qualifications of the person(s) who would perform the work at the time it induced Berwind to enter into the Contract". Specifically, from the outset of this litigation, Berwind has contended that it was fraudulently induced to enter into the Contract because EMG "failed to disclose" that the person performing the review of the Property was "a *mechanical engineer* and unqualified to perform a complete structural and waterproofing inspection and evaluation as required by the terms of the Contract." Complaint, paragraph 19. Notwithstanding EMG's express denial of any such assertion, it is undisputed that Berwind possessed the information which forms the basis of their fraud in the inducement claim, to wit, Hoffman's asserted lack of expertise in structural engineering, as of their April, 1999 receipt of the EMG Report, which "specifically identifies [Hoffman's] background as a mechanical engineer". **Exhibit K** at 13. As such, Berwind had until April, 2002 to file a claim for fraud in the inducement of the Contract. They failed to do so, instead waiting nearly *five years* before filing their original complaint in Suffolk Superior Court on March 8, 2004. **Exhibit O**. Thus, the plaintiffs' fraud in the inducement claim is barred under G.L. c. 206, § 2A.

2.  **Plaintiff's Negligence and Misrepresentation Claims Are Time Barred**

As this Court has already noted, the EMG Report includes a specific recommendation by EMG to Berwind to "[r]etain [a] structural engineer to review parking garage drainage and construction". **Exhibit K** at 13. *See also* **Exhibit D**, p. 3, 4, 5, 35, and Table 1 (addressing the recommendation to "Retain structural engineer to review parking garage drainage and structure). Eventually, Berwind's "asset manager," Ken Cala, followed this advice and retained the

engineering firm of Edwards and Kelcey to inspect and report on the garage.  **Exhibit M**. Although in 2003 Mr. Cala indicates that this was done "early on," the documents produced by Berwind indicate that they waited two full years after receiving the EMG Report to follow the recommendation.  Specifically, Edwards and Kelcey visited the property on March 22, 2001. They then provided a report to the Berwind's property manager, Nordblom Company, recommending remediation for a number of structural defects and waterproofing issues.  **Exhibit N**.  Nordblom then forwarded the Report to Berwind Vice President, Albert Corr, on April 11, 2001.  **Exhibit N**.

Under Massachusetts law, a plaintiff need not be fully aware of all of the factual and legal elements of a claim in order for the claim to accrue.  See Malapanis v. Shirazi, 21 Mass. App. Ct. 378, 382 (1986) ("Massachusetts does not require discovery of each of the elements of the cause of action -- duty, breach, causation, and damages -- before the limitation clock . . . starts ticking"); see also Lijoi v. Massachusetts Bay Transportation Authority, 28 Mass. App. 926, 928 (1990) (only a "modicum of knowledge" concerning the plaintiffs' injury and its possible cause is necessary to start the period of limitations).  Indeed, a plaintiff need not have recognized that he or she had a potential legal claim at all.  See Fidler v. Eastman Kodak Co., 714 F.2d 192, 199 (1st Cir. 1983).  "The important point is that a statute of limitations starts to run when an event has occurred which was reasonably likely to put a plaintiff on notice of that someone may have caused his injury."  O'Rourke, 978 F.Supp. at 52, *citing* Bowen v. Eli Lilly & Co., 408 Mass. 204 (1990).  Here, Berwind contends that it first became aware of its causes of action when it received the Edwards and Kelcey report on April 10, 2001.  It seeks to use that date as the "trigger" for the statute of limitations under the discovery rule.  However, as the bases

5

for the plaintiffs' claims were not "inherently unknowable" until that date, they cannot rely on their "willful blindness" to toll the applicable limitations period.

Berwind has asserted two "bases" for its misrepresentations claim. First, that EMG misrepresented Ms. Hoffman's credentials, and second, that it misrepresented the condition of the Property. The latter argument is also the basis for its negligence claim. However, the undisputed facts show that Berwind knew or in the exercise of reasonable diligence should have known of the facts which support all of these claims well before April 2001.

With regard to the claim that EMG misrepresented Ms. Hoffman's credentials, this Court has already issued a ruling indicating that Berwind knew those credentials as of April 1999. **Exhibit K**. Given this actual knowledge, Berwind cannot argue that the limitations period for any claim which is based upon Ms. Hoffman's abilities did not begin to run at that time. Using April 1999 as a starting date, the statute of limitations would have run on all of Berwind's claims (other than breach of contract, which is undeniably subject to the limitation of liability provision of the Contract) prior to the initiation of this action.

With regard to the allegations based upon the condition of the property, it is undisputed that in April 1999 Berwind received the EMG Report, which identified a number of defects in the parking garage at issue. But Berwind's claim is that there were other defects in the Property which were not identified in the EMG Report. **However, these alleged defects could, and in the exercise of reasonable diligence, should have been identified long before 2001.**

As noted above, the EMG Report specifically recommended that a structural engineer review the parking garage. Had that been done, the defects which Berwind alleges were not identified in the EMG Report would have been observed. This cannot be disputed by Berwind, as they have expressly alleged that these conditions were readily observable **before and at the**

6

998627v1

**time** EMG did its review of the Property. Complaint, paragraph 19. As such, the only reason for the "delay" in identifying these alleged problems is that Berwind waited **two years** to follow EMG's advice and retain the engineering firm of Edwards and Kelcey to inspect and report on the garage. Under Massachusetts law, that is insufficient to toll the running of the statute of limitations. Albrecht v. Clifford, 436 Mass. 706, 715 (2002).

Citing Friedman v. Jablonski, 371 Mass. 482, 487 (1976), the Supreme Judicial Court stated in Albrecht that "Plaintiffs who assert that their cases should not be barred by the statute of limitations have the burden of demonstrating that they did not know of the defect within the statute of limitations and that 'in the exercise of reasonable diligence, they should not have known.'" Albrecht, 436 Mass. at 715, citing Friedman, 371 Mass. at 487. In Albrecht, the SJC upheld a grant of summary judgment for a contractor on statute of limitations grounds even where the plaintiffs were unaware of problems with their home because they failed to have an inspection done which would have disclosed those problems. Quoting the trial court, the SJC refused to toll the statute of limitations where:

> The defects alleged were readily seen on an inspection conducted sometime after December of 1996. Such an inspection equally as well could have been conducted in 1993 when the [plaintiffs] moved in.

Albrecht, 436 Mass. at 715. This argument applies equally, if not more forcefully, to Berwind.

Here, the plaintiffs are Berwind and an entity it created to own the Property. These are property developers in the business of buying and operating commercial real estate, far more sophisticated than the residential homeowners in Albrecht. In 1999, they were provided a written report which specifically recommended that Berwind "[r]etain [a] structural engineer to review parking garage drainage and structure." **Exhibit D**, p. 3, 4, 5, 35, and Table 1. This was the recommendation which was followed by Berwind's asset manager, only he waited two years to do so. **Exhibits L-N**. Under Massachusetts law, it is inappropriate to permit a sophisticated

7

commercial plaintiff, aware of the need to conduct an investigation, to delay doing so, and then hide behind its willful blindness in order to toll the applicable limitations period. Such action would essentially negate the purpose of a limitations period, as it would allow plaintiffs to delay undertaking actions which they know are necessary to determine whether they have been harmed in order to delay the running of the limitations period (and in the process allow a condition to deteriorate, thus unnecessarily increasing their claimed damages).

Berwind's decision to delay retaining Edwards and Kelcey does not toll the statute of limitations. Berwind equally as well could (and should) have followed EMG's recommendation to have the Property reviewed by a structural engineer in 1999 when they purchased the Property. Id. Any other result would place a lower burden on a sophisticated commercial real estate investor than that imposed upon a residential home owner by the Supreme Judicial Court.

    B.    **The Limitation of Liability Provision in the Contract Must be Enforced Under Massachusetts Law**

As with Maryland law, Massachusetts law also clearly holds that a contracting party can utilize language in its agreements which exempt it from its own liability. "The allocation of risk by agreement is not contrary to public policy." Minassian v. Ogden Suffolk Downs, Inc., 400 Mass. 490, 492 (1987). Clauses in contracts that pre-establish parties' liabilities, even clauses that relieve one party from all liability, are routinely enforced as long as the provisions are clearly and unambiguously drafted. Shea v. Baystate Gas Co., 383 Mass. 218, 222 (1981); Cormier v. Cent. Mass. Chapter of the National Safety Council, 416 Mass. 286, 288 (1993). "Whether such contracts be called releases, covenants not to sue, or indemnification agreements, they represent 'a practice our courts have long found acceptable.'" Sharon v. City of Newton, 437 Mass. 99, 105 (2002), quoting Minassian, 400 Mass. at 493. Thus, "[a] party may, by

agreement, allocate risk and exempt itself from liability that it might subsequently incur as a result of its own negligence." Sharon, 437 Mass. at 105 (2002).

As indicated in EMG's Motion for Partial Summary Judgment, the Contract between Berwind and EMG contains a limitation of liability provision which provides:

> 8. Professional Liability. EMG's liability, and that of its officers, directors, employees, agents and subcontractors, to the Client or to any third party, due to any negligent professional acts, errors or omissions, or breach of contract by EMG, **shall be limited to an aggregate of $50,000.00**, or EMG's total charges for its Services (whichever is greater). If the Client requests higher limits of professional liability, EMG agrees to increase the aggregate limit, up to a maximum of $1,000,000.00, upon Client's written request at the time of acceptance of the Proposal, provided that Client agrees to pay an additional consideration of 10% of EMG's total charges, or $500.00 (whichever is greater). The additional charge for the higher liability limit is due to the greater risk assumed by EMG, and is not a charge for additional professional liability insurance. This limitation shall not apply to the extent prohibited by law.

Contract, **Exhibit A** at 22 (emphasis added). As set forth in greater detail in the defendant's memorandum of law in support of its motion for partial summary judgment, Berwind was familiar with this contractual provision as it had executed other contracts with EMG which contained the same language. Berwind did not notify EMG that it wanted to increase the limit of EMG's liability, nor did Berwind pay EMG the additional fee required for such increase. Deposition of Roy Perry, **Exhibit B** at 135-136.

The terms and effect of this provision are clear. They represent the allocation of liability between two sophisticated business entities. Therefore, under Massachusetts law, such "an unambiguous agreement must be enforced according to its terms." Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 706 (1992), citing Freelander v. G.&K. Realty Corp., 357 Mass. 512, 516 (1970).

1. **Berwind Cannot Avoid the Limitation of Liability Provision in the Contract By Asserting Fraud in the Inducement**

In an effort to circumvent its agreement to limit EMG's liability, Berwind has argued that this Contractual provision cannot be enforced because it was obtained by fraud. However, such an argument fails as a matter of law.

Plaintiffs argue, in their Opposition, that their fraud in the inducement claim "vitiates" the Contract and, as a result, the Contract's limitations of liability clause is inapplicable. Plaintiffs' argument, however, is misplaced as their failure to satisfy the applicable statute of limitations on their fraud in the inducement claim also precludes the plaintiff from asserting fraud in the inducement defensively to avoid the Contract's limitation of liability clause. Mistry Prabhudas Manji Eng. Pvt. Ltd. v. Raytheon Eng'rs & Constructors, Inc., 213 F. Supp. 2d 20, 22-24 (D. Mass 2002). That is because under Massachusetts law, a party cannot use "fraud" as a defense to a contract where an affirmative claim based on the same conduct is barred by the statute of limitations.

In Mistry, this Court (Saris, J.) held that a party cannot assert as an affirmative defense a claim of fraud in the inducement if such a similar affirmative claim is time barred. Id. at 22-24. Rejecting a similar argument to that asserted by Berwind, this Court held that "[t]o the extent that [the defendant] seeks to assert the damages limitations clauses as a defense to a breach of contract action, and [the plaintiff] seeks to void them because they were induced by fraud, [plaintiff's] argument is time barred." Id. at 24.

> [S]tatutes of limitation reflect the legislature's considered judgment as to the proper timeframe in which to commence a cause of action. [] That judgment cannot be evaded by opportunistic pleading: the substance of the claim matters, not the form of action. **To hold otherwise would permit a party seeking to vitiate a contract for fraud (to) circumvent the applicable statute of limitations by characterizing his claim as one for a declaratory judgment that the contract is unenforceable at the time he seeks to**

10

998627v1

> **avoid the application of its terms, [and] the statute of limitations would soon have little meaning**.

Mistry Prabhudas, 213 F. Supp. 2d at 28, *quoting* Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 941 F. Supp. 495, 498-99 (E.D. Pa. 1996), *aff'd* 126 F.3d 178 (3d Cir. 1997) (internal citations omitted) (emphasis added). The principals addressed by this Court in Mistry Prabhudas, are equally applicable to this case under Massachusetts law.

As addressed above, G.L. c. 206, § 2A bars plaintiffs' fraud in the inducement claim. That is because as this Court has already ruled, Berwind was aware of one of the factual bases for that claim (*i.e.* that EMG failed to provide a structural engineer to perform a review of the Property) no later than April 1999, when it received a copy of Ms. Hoffman's (neé Terepka's) resume as part of EMG's Report. As such, plaintiffs are precluded from arguing that the Contract is "vitiated" and the limitation of liability rendered inapplicable by the plaintiffs' claims of fraud in the inducement.

Moreover, even if Berwind had timely asserted a fraud in the inducement claim, such an assertion still cannot be used to avoid the application of the Contract's limitation of liability clause. As Judge Saris noted in Mistry Prabhudas Manji Eng. Pvt. Ltd., under Section 164 of the Restatement (Second) of Contracts, the proper remedy for such a claim is avoidance of the entire Contract. The Court cannot void application of only a portion of that Contract:

> The voiding of certain contract terms by this Court would amount to reformation of the parties' contract. A court may only grant reformation of the terms of a contract on misrepresentation grounds if the misrepresentation went to the writing itself, and not to the misrepresentation of some other fact. See id. § 166, com. b ("If the misrepresentation related to some other fact [other than the contents or effect of a writing], the contract may be voidable under § 164, but reformation is not appropriate.").

Id. at 24-25.

11

998627v1

In this case, Berwind bases most of its claims upon, and seeks enforcement of, the terms of the Contract. For example, Berwind has expressly sought to hold EMG liable for breach of the Contract. See Complaint at Count III. Similarly, Berwind's fraud in the inducement claim is expressly based upon the terms of the Contract. See Complaint at Count IV. Under those circumstances, as a matter of law, Berwind cannot use the assertion of fraud in the inducement to avoid the Contract's limitation of liability clause. Id. at 25.

>   2.  **Berwind's Fraud in the Inducement Claim Fails as a Matter of Law Because Opinion Does Not Satisfy an Essential Element of the Claim**

Even if, *arguendo*, this Court reaches substantive analysis of Berwind's fraud in the inducement claim, such claim fails as a matter of law because the plaintiffs cannot use opinion to satisfy an essential element of their claim. In their Opposition, Berwind avers, *inter alia*, that the "plaintiff must show (1) that the defendant made a false representation of a material fact". Sebago, Inc. v. Beazer East, Inc., 18 F.Supp.2d 70, 85 (D. Mass. 1998) citing Danca v. Taunton Savings Bank, 385 Mass. 1, 8 (1982). Here, it is undisputed that EMG did not misrepresent the *actual* qualifications of Hoffman as EMG included Hoffman's resume with the EMG report. Instead, the plaintiff raises the question of whether EMG provided an engineer who was "qualified" to perform the contracted work. Whether or not Hoffman was "qualified", however, is a matter of opinion, not a material fact which may be objectively ascertained. As such, Berwind's allegation that EMG misrepresented that Hoffman was "qualified" to perform the contracted work fails as a matter of law because, as Berwind correctly points out, "only statements of fact, not statements of opinion, future conditions, or matters promissory in nature, are actionable as fraud." Rodowicz v. Massachusetts Mutual Life Ins. Co., 192 F.3d 162, 175-176 (1st Cir. 1999). The opinion character of whether Hoffman was indeed "qualified" is underscored by the fact that Berwind has cited its own Rule 26(a)(2) Expert Disclosure in

998627v1

support of its argument. In other words, Berwind relies upon the opinion of a third party, which it retained and paid, in support of its argument that whether Hoffman was "qualified" is properly characterized as fact, rather than opinion. This argument is without merit, however, as Berwind's expert, Mr. Kelley, demonstrates the subjective nature of whether Hoffman was "qualified". In forming his *opinion*, Mr. Kelley relied not only upon the evidence of record, but also upon his own professional experience and even his supervision of other professionals engaged in similar work. Thus, whether or not Hoffman was "qualified" clearly falls within the ambit of opinion, not fact, and, as such, Berwind is unable to establish an essential element of its fraud in the inducement claim and summary judgment must enter for the defendant on the plaintiff's fraud in the inducement count. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (stating, "the plain language of Rule 56(c) mandates the entry of summary judgment. . .against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . .")

## III.  CONCLUSION

Based upon the reasons set forth above, as well as those contained in EMG's Motion for Partial Summary Judgment, the defendant respectfully requests that this Honorable Court:

1.  Rule that Maryland law applies to the plaintiffs' claims;

2.  Rule that plaintiffs' gross negligence claim is barred under Maryland law;

3.  Rule that the plaintiffs' fraud in the inducement, negligence, gross and misrepresentation claims are barred by the applicable Massachusetts statutes of limitations;

4.  Rule that the plaintiffs' G.L. c. 93A claim is barred by the statute of limitations, economic loss doctrine, and factually is not supported as a matter of law; and

5.  Rule that recovery on any claims which survive the defendant's motion for summary judgment is limited to the amount set forth in the Contract's limitation of liability clause.

998627v1

## REQUEST FOR ORAL ARGUMENT

Environmental Management Group, Inc. respectfully requests oral argument on all of its summary judgment papers.

Respectfully submitted,

ENVIRONMENTAL MANAGEMENT GROUP, INC.
d/b/a EMG
By its Attorneys,

MORRISON MAHONEY LLP


/s/ Steven J. Bolotin
Steven J. Bolotin, BBO#564085
Michael H. Hayden, BBO#660746
250 Summer Street
Boston, MA  02210
(617) 439-7500


## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 22, 2006.


/s/ Steven J. Bolotin
Steven J. Bolotin

998627v1