## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BERWIND PROPERTY GROUP, INC. and NEWTON INVESTORS LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiffs, | ) ) | DOCKET NO. 04-11411-NMG |
| v. | ) ) | |
| ENVIRONMENTAL MANAGEMENT GROUP, INC. d/b/a EMG, | ) ) ) | |
| Defendant. | ) ) ) | |

## PLAINTIFFS' SUR-REPLY
## IN SUPPORT OF THEIR OPPOSITION TO THE DEFENDANT'S MOTION FOR
## PARTIAL SUMMARY JUDGMENT

Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively, "Berwind") filed an Opposition to the Motion for Partial Summary Judgment initiated by Defendant Environmental Management Group d/b/a EMG ("EMG"). EMG filed a Reply to Berwind's Opposition, raising, for the first time, new theories in support of its Motion for Partial Summary Judgment. In order to correct erroneous statements of both law and fact made by EMG in its Opposition, Berwind hereby respectfully submits this brief Sur-reply.

## ARGUMENT

### I.    Berwind's Claims Are Not Time-Barred.

EMG argues, for the first time in its Reply brief, that Berwind's claims of Fraud in the Inducement, Negligence, and Misrepresentation are barred by the Statute of Limitations. More specifically, EMG argues that 1) because Berwind received a copy of the *curriculum vitae* of

Sandra Terepka Hoffman ("Hoffman") at the time that Berwind received EMG's Property

Condition Evaluation (the "Report"), Berwind's fraud in the inducement claim is time-barred;

and 2) because **"the[se] alleged defects could and in the exercise of reasonable diligence,** [sic]

**should have been identified long before 2001"** (see Defendant's Reply brief at p. 6) (emphasis

in the original), and because Berwind allegedly failed to "exercise reasonable diligence" which

would have uncovered those defects, Berwind's claims of negligence and misrepresentation are

also time-barred.  EMG's arguments are, in addition to being belated,[1] simply wrong as a matter

of fact and of law.

> **A.      Berwind's Fraud in the Inducement Claim is not time-barred**
> **where, as here, Berwind was unaware that Hoffman was not**
> **qualified to issue an opinion as to the Property's structural**
> **integrity until after such time as Berwind actually learned that**
> **the Property had open and obvious structural defects.**

It is axiomatic that where a defendant's conduct causes an undetected injury to the

plaintiff, Massachusetts applies the 'discovery rule' to determine when the cause of action

accrues and triggers the beginning of the statutory period.  Murphy v. Aero-Med, Ltd., 345

F.Supp.2d 40, 44 (D.Mass. 2004) citing Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990);

Mohr v. Commonwealth, 421 Mass. 147, 156 (1995).  The limitations period is tolled until

"events occur or facts surface which would cause a reasonably prudent person to become aware

that she or he had been harmed." Epstein v. Bard, 460 F.3d 183, 187 (1st Cir. 2006) quoting

Felton v. Labor Relations Com'n, 33 Mass.App.Ct., 926, 598 N.E.2d 687, 689 (1992).   The

critical date is "when a plaintiff discovers, or any earlier date when [s/he] should reasonably have

discovered, that [s/he] has been harmed or may have been harmed *by the defendant's conduct*."

---

[1] The arguments set forth in EMG's Reply brief are, in fact, wholly new arguments not addressed in EMG's Motion
for Partial Summary Judgment nor in Berwind's Opposition thereto, thereby rendering EMG's "Reply" brief, in
effect, a new Motion for Partial Summary Judgment.  EMG's *seriatim* filing of grounds for summary judgment
would appear, therefore, to be a tacit admission that the arguments set forth in EMG's original Motion were
rendered moot by Berwind's Opposition.

Murphy v. Aero-Med, Ltd. 345 F.Supp. 2d 40, 44 quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205 (1990)(emphasis added); Epstein v. Bard, 460 F.3d at 187 (same).  The test is an objective one:  "Only if a reasonable person in the plaintiff's position would have been able to discern the harm or the cause of the harm will the cause of action accrue and the limitations period begin to run." Riley v. Presnell, 409 Mass. 239, 245 (1991).  Alternatively, the limitations period may be tolled where a wrongdoer: (1) conceals the existence of a cause of action through some affirmative act done with the intent to deceive, or (2) breaches a duty of disclosure. Puritan Medical Ctr., Inc. v. Cashman, 413 Mass. 167, 175 (1992).  Thus, the clock will not start ticking until the plaintiff has "(1) knowledge or sufficient notice that [s/he] was harmed and (2) knowledge or sufficient notice of what the cause of harm was." Bowen, 408 Mass. 205 (emphasis added).  Here, there is ample evidence that EMG breached its duty of disclosure,[2] and that Berwind had no opportunity to discover that breach until after such time as it became aware

---

[2] As was discussed in Berwind's Opposition to the Defendant's Motion for Partial Summary Judgment, having been advised by Berwind that Berwind was concerned about the structural integrity of the Garage, and having advised Berwind that EMG would provide a qualified professional – that is, one who was capable of providing the above referenced services, including, but not limited to, the provision of "a *full* description of the property and improvements, with descriptions of in-place systems and commentary on observed conditions, to include … *structural* … systems;" identification of "those components that are exhibiting deferred maintenance issues;" the provision of estimates for "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) costs based on the observed conditions – EMG had a duty to disclose that it would not be sending a structural engineer or other individual trained in the evaluation of structural elements of buildings.  It is well settled under Massachusetts law that "a party who discloses partial information that may be misleading has a duty to reveal all the material facts he knows to avoid deceiving the other party." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 414 (1st Cir. 1985)(emphasis added); 940 C.M.R. 3.16; *accord* Adams v. Hyannis Harborview, Inc., 838 F.Supp. 676, 694 (D.Mass.1993), *aff'd* on other grounds, 73 F.3d 1164 (1st Cir.1996); Barden v. Harpercollins Publishers, Inc., 863 F.Supp. 41, 43 (D.Mass.1994).  "Although there may be 'no duty imposed upon one party to a transaction to speak for the information of the other ... if he does speak with reference to a given point of information, voluntarily or at the other's request, he is bound to speak honestly and to divulge all the material facts bearing upon the point that lie within his knowledge. Fragmentary information may be as misleading ... as active misrepresentation, and half-truths may be as actionable as whole lies...." Kannavos v. Annino, 356 Mass. 42, 48 (1969) citing Harper & James, Torts, § 7.14; RESTATEMENT OF TORTS § 529; Williston, Contracts (2d ed.) §§ 1497-1499. *Cf.* Nei v. Boston Survey Consultants. EMG made affirmative representations to Berwind concerning the Services it would provide and the qualifications of the person(s) who would be performing those Services, and EMG did so without intending to actually provide the Services as represented and/or without advising Berwind that EMG would almost certainly not provide those Services which had been promised to Berwind.

that open and obvious defects in the building existed *at the time that EMG performed the evaluation of the Garage.*

As an initial matter, EMG's contention that Berwind "should have known" of Hoffman's "lack of expertise in structural engineering," and that Hoffman, therefore, was not qualified to perform the evaluation of the Property, because EMG provided a copy of Hoffman's *curriculum vitae* along with the Report is simply incorrect. Correlatively, EMG's contention that receipt of the resume triggered the statute of limitations clock is simply incorrect. The mere fact that Hoffman's resume reflected that Hoffman had received an undergraduate degree in mechanical engineering did not foreclose the possibility – indeed, the likelihood, given EMG's representations – that Hoffman had received additional training and experience, which training and experience was not otherwise indicated on the resume attached to the Report, that would have enabled her to perform the evaluation as represented by EMG.[3]

As was discussed in Berwind's Opposition to Defendant's Motion for Partial Summary Judgment, EMG specifically represented that it would, *inter alia*:

- *Provide a full description of the property and improvements, with descriptions of* in-place systems *and commentary on observed conditions, to include* site, architectural, *structural,* mechanical, electrical, plumbing, fire and life/safety, interior, exterior, *and other systems.*

- *Identify those components that are exhibiting deferred maintenance issues and provide estimates for* "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) *costs based on the observed conditions,* available maintenance history *and industry-standard useful life estimates.* (the "Services")(emphasis added)

<u>See</u> Contract between Berwind and EMG dated March 17, 1999, a true and accurate copy of which is attached as Exhibit 2 to the Affidavit of Al Corr, filed with Berwind's Opposition to

---

[3] Indeed, the fact that Berwind purchased the Property for $11.7 million without further structural evaluation is, itself, evidence that Berwind believed that Hoffman had been qualified to perform the evaluation of the Property.

Defendant's Motion for Partial Summary Judgment.  In addition, EMG represented to Berwind that a qualified professional – that is, one that would "us[e] that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service" – would inspect and evaluate the Property. Id.  Given the fact that EMG possessed superior knowledge (or purported to) concerning the subject matter to which the misrepresentations relate – that is, that EMG would be designating an inspector qualified to perform a structural evaluation – it was reasonable for Berwind to have concluded that EMG "kn[ew] facts that justified the opinion" that EMG would be providing a qualified professional. Stolzoff v. Waste Systems International, Inc., 58 Mass.App.Ct. 747, 760 (2003) (internal citations omitted); Briggs v. Carol Cars, Inc., 407 Mass. 391, 396 (1990) (holding that "[a] statement that, in form, is one of opinion, in some circumstances may reasonably be interpreted by the recipient to imply that the maker of the statement knows facts that justify the opinion" and make it an actionable misrepresentation); National Bank of Canada v. Hale & Dorr, LLP, 2004 WL 1049072 (Mass.Super. 2004)(same).[4]

The duty of a party to make full disclosure is "so strong that the deceived party is not charged with failing to discover the truth." V.S.H. Realty, Inc. v. Texaco, Inc., 757 F.2d 411, 415 (D. Mass. 1985), citing Snyder v. Sperry & Hutchinson Co., 368 Mass. 433, 436 (1975) ("[I]f the seller's representations are such as to induce a buyer not to undertake an independent examination of the pertinent facts, lulling him into placing confidence in the seller's assurances, his failure to ascertain the truth through investigation does not preclude recovery.") See also Damon v. Sun Co., Inc., 87 F.3d 1467, 1480 (1st Cir.1996) ("it is well established under Massachusetts law that failure to investigate the veracity of statements does not, as a matter of

---

[4] Berwind, of course, did not have Hoffman's *curriculum vitae* at the time it executed the Contract.  As EMG acknowledges, Berwind did not receive Hoffman's resume until EMG produced its Report – in which the resume was included – which Berwind received after the work had been completed.

law, bar recovery for misrepresentation.... Only reliance on <u>preposterous</u> or <u>palpably</u> <u>false</u> <u>representations</u> vitiates a misrepresentation claim.") (citations and internal quotations omitted)(emphasis added); <u>Yorke v. Taylor</u>, 332 Mass. 368, 373 ("the recipient of a misrepresentation in a business transaction is justified in relying on its truth although he might have ascertained the falsity of the representation had he made an investigation on his own... Certainly where a defendant has willfully made false representations with intent to deceive he ought not to be relieved of liability because of his victim's lack of diligence."  Moreover, in view of the professional services offered by EMG, and the long-standing relationship between the parties, Berwind could reasonably take EMG's statements at face value and credit them. <u>Bond</u> <u>Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc.</u>, 764 F.2d 928, 937 (1st Cir. 1985).  Put simply, it would have been unreasonable to expect Berwind to ask EMG to identify all of the continuing education courses taken by Hoffman, to identify all of the EMG-supplied training received by Hoffman, and to identify all of the work experience obtained by Hoffman, in an effort to determine whether Hoffman had been qualified to perform the structural evaluation of the Property as represented by EMG.  In any event, Berwind was under no duty to do so, just as Berwind was not legally required to retain a second firm to check the work that it had paid EMG to perform.[5]  <u>See</u> discussion <em>infra</em>, at pp. 7-8.

Accordingly, the discovery rule tolled the statutes of limitations for Berwind's fraud in the inducement claim[6] until such time as Berwind "discovered, that [it had] been harmed or may

---

[5] Even assuming, <em>arguendo</em>, that Hoffman's resume were deemed to have put Berwind on notice that she was not qualified to evaluate the structure of the Garage, this, alone would not have put Berwind on notice that it had been harmed without the additional step of retaining a second engineer to perform a duplicative evaluation, which the law does not require. <u>See</u> discussion <em>infra</em>.

[6] The discovery rule also applies to actions based on M.G.L. c. 93A. <u>Szymanski v. Boston Mutual Life Insurance</u> <u>Company</u>, 56 Mass.App.Ct. 367 (2002); <u>International Mobiles Corp. v. Corroon & Black/Fairfield & Ellis, Inc.</u>, 29 Mass.App.Ct. 215, 221 (1990).

have been harmed by the defendant's conduct" – that is, at the earliest, upon receipt of the April 10, 2001 report from Edwards and Kelcey, which report indicated significant structural defects in the Garage.[7]

> **B.    Berwind's Negligence and Misrepresentation Claims are not time-barred where, as here, Berwind was unaware that EMG had failed to identify problems with the Property's structural integrity until such time as Berwind learned that there were structural defects in the Property – and that such defects were open and obvious – at the time EMG performed the evaluation of the Property.**

In an apparent, if contradictory, acknowledgement that Hoffman was <u>not</u> qualified to perform the evaluation, and/or that she negligently performed said evaluation, EMG next argues that **"the[se] alleged defects could, and in the exercise of reasonable diligence should, have been identified long before 2001"** (<u>see</u> Defendant's Reply brief at p. 6)(emphasis in the original),[8] and because Berwind allegedly failed to "exercise reasonable diligence" which would have uncovered those defects, Berwind's claims of negligence and misrepresentation are also time-barred.  This argument, in addition to being a fine example of "chutzpah,"[9] is premised on two equally erroneous assumptions:  1) that Berwind was required to retain a second expert to affirm that EMG had performed the Services as required by the Contract; and 2) that Berwind failed to follow EMG's recommendations in the Report.  EMG's reliance on these arguments, however, is misplaced, and its contentions are incorrect as a matter of law.

---

[7] Berwind would, in fact, argue that the earliest date that it could be deemed to have been put on notice that it had actually been harmed "by the defendant's conduct" was when Berwind's counsel received – in or about December 2003 or January 2004 (<u>see</u> Affidavit of Eric F. Eisenberg, filed herewith, at ¶ 4) – a  copy of the February 3, 1997 Simpson, Gumpertz & Heger Memorandum which demonstrated that Hoffman had failed to observe/and or appreciate the significant open and obvious structural defects in the Garage when she performed her evaluation in 1999, which failure demonstrated, in part, her lack of qualifications to perform the task.

[8] Given this apparent acknowledgement of negligence, Berwind is perplexed as to why EMG has not offered judgment in the amount of $50,000, the limitation urged by EMG in this action.

[9] Chutzpah is defined as "utter nerve; effrontery."  <u>See</u>, <u>e.g.</u>, <u>Robinson v. Globe Newspaper Co.</u>, 26 F.Supp.2d 195, 200 (D.Me.,1998)( "The effrontery or, as some might say it, chutzpah, is too much to take.").

As an initial matter, Berwind was not required to retain a second expert to evaluate the findings of EMG or to duplicate the tasks that were originally in EMG's scope of work. "[A] person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered." Murphy v. Smith, 411 Mass. at 137-138 (1991)(internal citations omitted); see also Anthony's Pier Four, Inc. v. Crandall Dry Dock Engineers, Inc., 396 Mass. 818 (1986).[10]  Moreover, in view of the long-standing relationship between the parties, Berwind could reasonably take EMG's statements at face value and credit them. Bond Leather Co., Inc. v. Q.T. Shoe Mfg. Co., Inc., 764 F.2d 928, 937 (1st Cir. 1985).  Accordingly, it was not incumbent upon Berwind to retain a second expert to confirm or (as would have been the case here) deny that EMG had performed its scope of work "using that degree of care and skill ordinarily exercised under similar conditions by reputable members of EMG's profession practicing in the same or similar locality at the time of service," as required by the Contract.

The foregoing notwithstanding, Berwind did, in fact, follow EMG's recommendations, as set forth in the Report, concerning further analysis of the drainage system in the Garage.  EMG's first recommendation was that "the underground storm water drains be video inspected to determine the cause of frequent clogging.  The inspections should be reviewed by a local Professional Engineer to insure the system is not clogged...." See Exhibit 3 to the Affidavit of

---

[10] Cf. Damon v. Sun Co., Inc., 87 F.3d at 1480 ("it is well established under Massachusetts law that failure to investigate the veracity of statements does not, as a matter of law, bar recovery for misrepresentation.... Only reliance on preposterous or palpably false representations vitiates a misrepresentation claim.")(citations and internal quotations omitted)(emphasis added); Yorke v. Taylor, 332 Mass. at 373 ("the recipient of a misrepresentation in a business transaction is justified in relying on its truth although he might have ascertained the falsity of the representation had he made an investigation on his own... Certainly where a defendant has willfully made false representations with intent to deceive he ought not to be relieved of liability because of his victim's lack of diligence.").

Lauren Timoney Upton, filed in support of Berwind's Opposition to Defendant's Motion for Partial Summary Judgment, at p. 4. The second recommendation states "[s]ignificant signs of ponding water, inadequate drainage, efflorescence on exterior brick, mineral deposits and minor concrete deterioration due to water intrusion were observed in the parking garage, requiring additional evaluation by a local Professional Engineer, as discussed in Section 7. The costs of this work are included in the Immediate Repairs Cost Estimate (Table 1)." Id. at p. 5. The Report indicated that Berwind would need to expend approximately $4,000.00 in immediate costs (that is, in the inspection and evaluation of the drainage system in the Garage, which EMG recommended be performed within 90 days) and $26,000.00 in short term costs (that is, in the recommended repairs of the Garage's drainage system and spalled concrete and the application of sealant to the exterior walls, which EMG recommended be performed within one year after purchase). Despite the fact that EMG clearly failed to adequately evaluate and/or report the costs attendant to the necessary repairs of the deficiencies in the Garage, Berwind followed EMG's recommendations, and had the drainage repairs recommended by EMG performed prior to purchasing the Property. See Excerpts from the 4/26/05 Deposition Transcript of Roy Perry, a true and accurate copy of which is attached as Exhibit 4 to the Upton Affidavit, at pp. 173-174.[11]

Nothing in the Report, however, indicated the serious structural deficiencies that existed in the Garage or the lack of waterproofing in the Garage, nor the need for a structural engineer to evaluate those deficiencies. Despite EMG's insistence that it advised Berwind to retain a structural engineer to review the structure of the Property, the only such reference was in the Immediate Repairs Cost Estimate Table, in which the one-line entry reads "Structural engineer, review and report – Review parking garage drainage and structure," and for which EMG advised

---

[11] Berwind also had the other repairs recommended by EMG performed after purchase of the Property. See Berwind's Answers to Interrogatories, filed with Berwind's Opposition to Defendant's Motion for Partial Summary Judgment, at Answer No. 6.

Berwind would need to spend the nominal sum of $2,500.00, which sum clearly would not be reflective of the costs of performing a structural evaluation of the scope EMG now claims it was recommending. See Upton Affidavit, Exhibit 3 at Table 1. A review of the Report reveals that the only other recommendation for additional evaluation by a "professional engineer" is in relation to the drainage system as set forth in the text of Section 7. Id. at p. 35-36. There, EMG indicated that it was estimating a "nominal budget for [the] video taping and engineering evaluation" (id. at p. 35), again a sum clearly not reflective of the costs of performing a structural evaluation of the scope EMG now claims it was recommending. In addition, while the Report makes note of "small areas of spalled concrete and minor rust stains ... indicating initial corrosion of the steel reinforcing in the ceilings of the Garage," the recommendation is for "cleaning and patching the areas of spalled concrete with an epoxy concrete patch ... within the next year." Id. at p. 35. Finally, while the Report makes note of cracking in the concrete, it goes on to note that "[s]ealing of the cracks is considered to be a part of routine maintenance. No additional action is required." Id.

Indeed, there is no indication in the Report that there were any significant structural problems, or that there was any need for a more comprehensive evaluation of the structure of the Garage. In fact, the Report states that the "framing, walls and decks of the parking structures appeared to be in fair condition." See Upton Affidavit, Exhibit 3, at pp. 35-36. Berwind, of course, has since learned that other engineers who had performed visual inspections of the Property prior to Hoffman had readily observed that the Garage exhibited significant, open and obvious structural problems and waterproofing deficiencies. See Kelley Affidavit, Exhibit 2. The Report, however, failed to note any of the signs of structural distress, such as the serious topside cracking around columns, sagging of the elevated structural decks, and indications of

significant ongoing corrosion of reinforcing steel, noted by other engineers who viewed the Garage prior to Hoffman, which were, quite obviously, susceptible of actual knowledge. In addition, while the Report indicated that Berwind would need to expend only approximately $30,000.00 in recommended short term repairs, and no additional costs for "repairs, replacement and significant maintenance items … over the evaluation period (12 years)" (see Upton Affidavit, Exhibit 3 at p. 5 and Table 3), other engineers who had performed visual inspections of the Property *prior* to Hoffman had estimated that the repair of only some of the open and obvious deficiencies in the Garage would require, at a minimum, $332,500.00. See Kelley Affidavit, Exhibit 2.[12]  Accordingly, there simply was no indication in the Report that EMG was advising Berwind of the existence of any major deficiencies in the Garage, the necessity of obtaining an additional pre-purchase evaluation of the structure as it now alleges it advised, or the actual costs attendant to making the necessary repairs to the Garage. See Upton Affidavit, Exhibit 4, at pp. 168-179; Plaintiffs Rule 26(a)(2) Expert Disclosure.

While it is true that the deficient conditions in the Garage on which Hoffman failed to report were observable to persons with training in structural engineering at the time that Berwind acquired the Property, Berwind was unaware of those conditions at the time it acquired the Property because EMG – the company that Berwind had retained to inspect for such deficiencies – failed to put Berwind on notice of those defects in the Property.  Berwind followed EMG's recommendations as to the evaluation and repair of the drainage system, but Berwind did not, in fact, become aware of the significant defects in the Property until April of 2001, after Edwards & Kelsey performed a site visit and made note of certain significant defects in the Property. See Plaintiffs' Answers to Defendants First Set of Interrogatories, a true and accurate copy of which

---

[12] Berwind, as previously noted, has in fact, incurred in excess of $900,000.00 in necessary repairs to the Garage. See Plaintiffs Rule 26(a)(2) Expert Disclosure.

is attached hereto as Exhibit 1. Moreover, as noted above, Berwind did not become aware that

the defects had been open and obvious at the time that Hoffman performed her site visit until

Berwind's counsel received – in late 2003 or early 2004 – a copy of the February 3, 1997

Memorandum from Simpson, Gumpertz & Heger. See Eisenberg Affidavit at ¶ 4; Kelley

Affidavit, Exhibit 2. Accordingly, the discovery rule tolled the statutes of limitations for

Berwind's negligence and misrepresentation claims until Berwind "discovered that [it had] been

harmed or may have been harmed by the defendant's conduct" – that is, at the earliest, upon

receipt of the April 10, 2001 Edwards and Kelcey report, which report indicated significant

structural defects in the Garage, and which could, arguably, have put Berwind on notice that

EMG had misrepresented the Services that it would provide and/or the qualifications of the

person(s) who would be performing those services and/or the actual condition of the Property.[13]

Murphy, 345 F.Supp.2d at 44 quoting Bowen, 408 Mass. at 205; Mohr, 421 Mass. at 156 (same).

## II.    Berwind's Claim of Fraud in the Inducement Is Not Precluded Where, As Here, Berwind Has Established All Elements of the Claim.

EMG also argues the legally unsupported position that whether or not Hoffman was

qualified to perform the evaluation of the Property is a matter of opinion, and therefore that

Berwind cannot satisfy an essential element of its claim – that is, that Berwind cannot

demonstrate that EMG made a false representation of material fact. Again, EMG's argument is

premised on two equally erroneous assumptions: 1) that whether or not Hoffman was qualified

to perform the structural evaluation of the Property is a matter of "opinion" and not "fact," and

therefore not actionable, and 2) that expert testimony cannot be used to demonstrate the "fact"

that another person was qualified, or not, to perform a given task. EMG's reliance is again

misplaced.

---

[13] See also fn. 7 supra.

As previously discussed in Berwind's Opposition to Defendant's Motion for Partial Summary Judgment, it is axiomatic that "[a] statement, though couched in terms of opinion, may constitute a statement of fact if it may reasonably be understood by the reader or listener as implying the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)." Rodi v. Southern New England School of Law, 389 F.3d 5, 14 (2004)(emphasis added) citing McEneaney v. Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573; accord Levinsky's Inc. v. Wal-Mart Stores, Inc., 127 F.3d 122, 127 (1st Cir. 1997)("A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable."). See also Restatement (Second) of Torts § 539 (1977) (explaining that "[a] statement of opinion as to facts not disclosed [may] be interpreted ... as an implied statement that the facts known to the maker are not incompatible with his opinion"). "A statement of opinion [is] actionable when the speaker possesses superior knowledge concerning the subject matter to which the representations relate, or where the opinion is 'reasonably interpreted by the recipient to imply that the speaker knows the facts that justify the opinion.'" Stolzoff v. Waste Systems International, Inc., 58 Mass.App.Ct. 747, 760 (2003)(internal citations omitted); Briggs v. Carol Cars, Inc., 407 Mass. at 396 (1990). Here there can be no cavil that EMG possessed superior knowledge (or purported to) concerning the subject matter to which the misrepresentations relate -- that is, that EMG would be designating an engineer qualified to perform a structural evaluation.

Contrary to its specific representations that it would provide a qualified professional inspector -- one who was capable of providing the above referenced services, including, but not limited to, the provision of "a *full* description of the property and improvements, with descriptions of in-place systems and commentary on observed conditions, to include ...

*structural* ... systems;" identification of "those components that are exhibiting deferred maintenance issues;" the provision of estimates for "immediate" (90-day), "short term" (1 year) and "replacement reserve" (10-year) costs based on the observed conditions -- EMG sent Hoffman who, in addition to not being a structural engineer, also had not ever received any meaningful training in structural engineering. See Excerpts from the 3/30/05 Deposition Transcript of Sandra Terepka Hoffman, a true and accurate copy of which is attached as Exhibit 2 to the Upton Affidavit, at pp. 6-9, 20-23, 250-251. EMG was fully aware that Hoffman was not qualified to perform the Services -- i.e., to provide an opinion as to the Property's structural integrity -- as represented. See Excerpts from the 4/01/05 Deposition Transcript of Michael Collins, a true and accurate copy of which is attached as Exhibit 1 to the Upton Affidavit, at pp. 51-52 (in which Collins, Hoffman's supervisor, testified that he was "keenly aware" of Hoffman's training and experience, having reviewed Hoffman's resume and having worked with her on others projects). Accordingly, even assuming, *arguendo*, that EMG's representations concerning Hoffman's qualifications were deemed "opinion," said statements are actionable where, as here, such statements 'impl[ied] the existence of facts that justify the statement (or, at least, the non-existence of any facts incompatible with it)." Rodi v. Southern New England School of Law, 389 F.3d at 14 (2004).

EMG also makes the tortured argument that, because Berwind has offered the opinion of its expert to demonstrate that Hoffman was unqualified to perform the evaluation of the Property and that she performed said evaluation in a grossly negligent fashion, Berwind has "underscored" the "opinion character" of whether Hoffman was indeed 'qualified.' As an initial matter, it need hardly be pointed out that parties routinely use experts to establish whether or not another professional has performed services in a reasonably diligent, skillful, workmanlike, and

adequate manner.  The claims against EMG involve property evaluation and engineering

standards as well as factual allegations of grossly negligent conduct.  Where Berwind's claims

against EMG allege EMG's failure to conform to the applicable standard of care, Berwind has to

demonstrate the applicable professional standards.  Accordingly, Berwind has presented the

expert testimony of person who is familiar with those standards to establish its likely recovery

against EMG.  However, the mere fact that Berwind's expert offers an opinion as to whether

Hoffman was qualified to perform the evaluation does not mean that whether or not Hoffman

was qualified is not a fact susceptible of actual knowledge.  Whether Hoffman had sufficient

education, EMG-supplied training, or work experience necessary to make a useful assessment of

the condition of and repair needs for a reinforced parking garage structure, as represented by

EMG, is clearly a question of fact that is appropriately addressed by expert testimony.

Accordingly, where, as here, EMG made affirmative representations concerning the

qualifications of Hoffman, which statements, even if, "couched in terms of opinion," were

reasonably understood by Berwind "as implying the existence of facts that justify the statement

(or, at least, the non-existence of any facts incompatible with it" – that is, that EMG would be

designating an individual with sufficient structural engineering experience to make observations

with respect to the structure of the Garage – such statements are actionable. Rodi v. Southern

New England School of Law, 389 F.3d at 14 (2004)(emphasis added) citing McEneaney v.

Chestnut Hill Realty Corp., 38 Mass.App.Ct. 573.

## CONCLUSION

As has been demonstrated herein, the discovery rule tolled the statutes of limitations for

Berwind's fraud in the inducement, negligence, misrepresentation and Chapter 93A claims until

such time as Berwind "discovered, that [it had] been harmed or may have been harmed *by the*

*defendant's conduct*" – that is, until, at the earliest, upon Berwind's receipt of the April 10, 2001 Edwards and Kelcey report noting deficiencies in the Property. In addition, whether or not Hoffman was qualified to perform the evaluation is a question of fact susceptible of actual knowledge, and the proffer of an expert opinion to demonstrate that fact does not change the "factual nature" of EMG's representations. For these reasons, and the reasons set forth in Berwind's Opposition to the Defendant's Motion for Partial Summary Judgment, the Defendant's Motion for Partial Summary Judgment must be denied.

**BERWIND PROPERTY GROUP, INC.
and NEWTON INVESTORS
LIMITED PARTNERSHIP,**

By its attorneys,

/s/ Lauren Timoney Upton

Dated: October 17, 2006

_____

Eric F. Eisenberg, Esq.
BBO No. 544682
Lauren Timoney Upton, Esq.
BBO No. 565122
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA  02109
(617) 345-9000

## <u>CERTIFICATE OF SERVICE</u>

I, Lauren Timoney Upton, Esq., hereby certify that on the date set forth above, I caused notice of the foregoing to be served upon all parties/counsel of record in the above-captioned matter.

/s/ Lauren Timoney Upton
_____