```
                  United States District Court
                    District of Massachusetts
_____
                               )
BERWIND PROPERTY GROUP INC. and )
NEWTON INVESTORS LIMITED        )
PARTNERSHIP,                    )
         Plaintiffs,            )   Civil Action No.
                                )   04-11411-NMG
         v.                     )
                                )
ENVIRONMENTAL MANAGEMENT GROUP, )
INC.,                           )
         Defendants.            )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

The defendant, in a dispute involving a real estate transaction, has filed a motion for partial summary judgment, which is opposed by the plaintiffs. The plaintiffs, in turn, have filed a motion to strike an expert report and preclude testimony of that expert, which is opposed by the defendant.

I.   **Factual Background**

Plaintiffs Berwind Property Group, Inc. and Newton Investors Limited Partnership (collectively, "Berwind" or "the plaintiff") filed a civil complaint in Massachusetts state superior court against defendant Environmental Management Group, Inc. ("EMG") alleging: negligence and gross negligence (Count I), negligent and grossly negligent misrepresentation (Count II), breach of contract (Count III), fraud in the inducement (Count IV), and

-1-

violation of the Consumer Protection Act (M.G.L. c. 93A) (Count V), all in connection with an agreement between Berwind and EMG for professional services performed in Massachusetts. The case was removed on diversity grounds to this Court on June 22, 2004.

Plaintiff Berwind, an entity having its usual place of business in Philadelphia, Pennsylvania, purchased property located in Newton, Massachusetts ("the Property"). Pursuant to the purchase and sale agreement, Berwind created an entity, Newton Investors Limited Partnership, a Pennsylvania limited partnership, to take title of the Property. Defendant EMG is a Maryland corporation with a usual place of business in Baltimore.

According to Berwind's complaint, before it agreed to purchase the property, EMG represented to Berwind that a qualified, licensed and professional engineer would inspect and evaluate the Property in addition to providing any necessary engineering services. On or about March 17, 1999, the parties entered into a contract ("the Contract") under which EMG agreed to provide such services to Berwind for $9,300.

Pursuant to the Contract, EMG was to visit the Property which Berwind was then considering in order to assess the condition of the site and its improvements and to identify deferred maintenance issues and provide estimates for future maintenance costs relating to the Property. Pursuant to the Contract, EMG was to perform its services in accordance with

industry-accepted practices and using the degree of skill and care ordinarily exercised in the industry.

In March, 1999, EMG employee Sandra Terepka Hoffman ("Hoffman") inspected the parking garage located on the Property and consulted Property personnel and documents related to the Property.  Hoffman is not a structural engineer nor does she have training in structural engineering.  The result of Hoffman's efforts was a Property Condition Evaluation Report ("the Report") which EMG submitted to Berwind on or about April 6, 1999.

Although the Report identified a number of existing and potential problems with the Property, it failed to note that there were significant structural problems with a parking garage as well as waterproofing deficiencies.  Berwind allegedly decided to purchase the Property based on the representations of EMG, a purchase which Berwind asserts either it would not have made or would have made for less than the $11.7 million it paid if it had known of the significant deficiencies in the Property.

On or after April 10, 2001, Berwind became aware that the Property had a number of significant flaws requiring hundreds of thousands of dollars of repairs.  Berwind has since learned that the Property's structural and waterproofing problems had been readily observed by other engineers who had examined the Property on prior occasions and alleges that, because Hoffman was a mechanical (as opposed to a structural) engineer, she was

unqualified to perform a complete structural and waterproofing inspection and evaluation pursuant to the terms of the Contract.

### A. Procedural History

Berwind filed suit against EMG as sole defendant on March 8, 2004. On June 28, 2006, the defendant filed a motion for partial summary judgment. The Contract between the parties limits liability for any negligent professional acts, errors or omissions, or breach of contract by EMG to an aggregate of $50,000. The defendant moves for a declaration limiting recovery on the plaintiff's claims for negligence, negligent misrepresentation, breach of contract and violation of Chapter 93A to $50,000. It also moves for dismissal of the claims for gross negligence, violation of Chapter 93A and fraudulent inducement. The motion is for partial summary judgment because the defendant does not seek dismissal of the core breach of contract or negligence claims.

The plaintiff opposes that motion and contends that the limitation of liability clause in the contract is irrelevant because the contract itself was fraudulently induced and is, therefore, voidable. The plaintiff also opposes dismissal of the other claims.

On August 17, 2006, the plaintiff filed a motion to strike the defendant's late-filed expert report and to preclude testimony of the expert at trial, which the defendant opposes.

**II.   Motion for Summary Judgment: Legal Analysis**

   **A. Legal Standard**

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)(quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is upon the moving party to show, based upon the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  Id.  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor.  O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir. 1993). If, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate.

### B. Choice of Law

The Contract contains a choice-of-law provision stipulating that "[t]his agreement shall be governed by the laws of the State of Maryland."  In federal diversity actions, rulings related to choice-of-law provisions are governed by the tenets of the forum state, which, in this case, is Massachusetts.  Okmyansky v. Herbalife Int'l of Am., Inc., 415 F.3d 154, 158 (1st Cir. 2005). Massachusetts courts, and federal courts sitting in diversity in Massachusetts, honor choice-of-law provisions when sophisticated, private parties contractually agree to the application of a particular state's law to govern their relationship.  Northeast Data Sys., Inc. v. McDonnell Douglas Compter Sys. Co., 986 F.2d 607, 611 (1st Cir. 1993).  Furthermore, where a breach of contract is an essential element of a tort claim, a contractual choice-of-law provision also governs the tort actions arising therefrom.  Aisenberg v. Hallmark Marketing Corp., 337 F. Supp.2d 257, 261 (D. Mass. 2004).  Maryland law, therefore, governs both the negligence-based claims and those claims sounding in contract.

-6-

Where, however, the plaintiff's claims concern the validity of the formation of the contract, rather than an alleged breach, a contractual choice-of-law provision is not binding. Northeast Data Sys., 986 F.2d 607 at 611. Because such a provision is a term in the contract, it cannot logically bind the parties if there is no valid contract.

Both Massachusetts and Maryland courts have held that a party who has been fraudulently induced into entering a contract can rescind that contract. See Shaw's Supermarkets, Inc. v. Delgiacco, 410 Mass. 840, 842 (1991); Brooks v. Euclid Sys. Corp., 827 A.2d 887, 906 (Md. App. 2003). Although there is no material difference between the laws of Massachusetts and Maryland on that point, the law of Massachusetts, the forum state, will be applied to the plaintiff's claim for fraud in the inducement. See Okmyansky, 415 F.3d at 158.

    **C.   Fraud in the Inducement**

The next step in the analysis is to determine if the Contract was fraudulently induced by the defendant. If it was so induced, then it is voidable and its terms will not bind the parties. If it was not fraudulently induced, the Contract and the limitation of liability clause included therein are binding on the parties.

While contracts induced by fraudulent misrepresentations are not void ab initio, they are voidable at the election of the

party who justifiably relied on the misrepresentations. <u>Shaw's Supermarkets</u>, 410 Mass. at 842. Here, the plaintiff has so elected by alleging fraud in the inducement in its complaint.

To establish fraud in the inducement, a plaintiff must establish the elements of common law deceit, see <u>Elias Bros. Restaurants, Inc.</u> v. <u>Acord Enterprises, Inc.</u>, 831 F. Supp. 920, 922 (D. Mass 1993), which include the following: 1) that the defendant made a false representation of a material fact, 2) with knowledge of its falsity, 3) with the purpose of inducing the plaintiff to act thereon and 4) that the plaintiff relied upon the representation to his detriment. <u>Sebago, Inc.</u> v. <u>Beazer East, Inc.</u>, 18 F. Supp.2d 70, 85 (D. Mass. 1998), <u>citing</u> <u>Danca</u> v. <u>Taunton Sav. Bank</u>, 385 Mass. 1, 8 (1982).

There is no genuine issue of material fact with respect to the plaintiff's claim for fraudulent inducement. The question is whether the actions of the defendant, as alleged, constitute fraudulent inducement as a matter of law. The crux of the plaintiff's claim is that the defendant represented that it would provide a structural engineer to perform the requested analysis, when, in fact, it provided a mechanical engineer. The plaintiff does not, however, allege, nor does the evidence demonstrate, that EMG specifically represented that it would provide a structural engineer. Rather, the Contract states that EMG would:

> [p]rovide a full description of the property and improvements, with descriptions of in-place systems and

> commentary on observed conditions, to include site, architectural, structural, mechanical, electrical, plumbing, fire and life/safety, interior, exterior, and other systems.

The Contract does not specifically state that EMG would provide a structural engineer. By the plaintiff's own admission, EMG had at least one individual on staff who was competent to evaluate the structural integrity of reinforced concrete parking garages and similar structures. Based on undisputed evidence, the Court concludes that the defendant did not make a false representation of material fact with respect to the scope of services that it would provide. See Sebago, F. Supp.2d at 85. The claim for fraud in the inducement fails as a matter of law and summary judgment for the defendant will be allowed as to Count IV.

### D. Limitation of Liability

Because the Contract was not fraudulently induced, it is binding on the parties and will be interpreted in accordance with Maryland law. The Contract contains the following provision:

> 8. Professional Liability. EMG's liability, and that of its officers, directors, employees, agents and subcontractors, to the Client or to any third party, due to any negligent profession acts, errors or omissions, or breach of contract by EMG, shall be limited to an aggregate of $50,000, or EMG's total charges for its Services (whichever is greater).

In its opposition to the defendant's motion for summary judgment, the plaintiff does not seriously contest the validity of the limitation of liability clause but focuses instead on the issue of whether the Contract is voidable. The Court will honor the

agreement of the parties and finds that the limitation of liability clause applies to the plaintiff's claims for negligence (Count I), negligent misrepresentation (Count II) and breach of contract (Count III).

The inquiry does not, however, end there.  In its complaint, the plaintiff also alleges gross negligence (Count I) and grossly negligent misrepresentation (Count II).  It contends that claims based on gross negligence are beyond the scope of the limitation of liability clause and that it may recover damages in excess of $50,000 on those claims.  Indeed, Maryland law provides that a limitation of liability clause will not insulate a party from liability for extreme forms of negligence.  See Wolf v. Ford, 335 Md. 525, 528 (1994)(holding that gross negligence, fraud and willful misconduct are exceptions to enforcing exculpatory agreements).  Under Maryland law, therefore, the gross negligence claims are not subject to the limitation of liability clause in the Contract.

    **E.   The Gross Negligence Claims**

The defendant moves for summary judgment with respect to the claims for gross negligence (Count I) and grossly negligent misrepresentation (Count II).[1]  Under Maryland law, a heightened

---

[1] In its motion for summary judgment and accompanying memorandum, the defendant refers only to the claim for gross negligence.  The Court interprets the defendant's motion as one for summary judgment on the claim for grossly negligent misrepresentation as well.

burden of proof is imposed upon plaintiffs seeking to assert gross negligence claims. For a defendant to be found liable for gross negligence there must be:

> an <u>intentional failure</u> to perform a manifest duty in <u>reckless disregard of the consequences</u> as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully <u>only when he inflicts injury intentionally</u> or is so <u>utterly indifferent</u> to the rights of others that he acts as if such rights did not exist.

<u>Marriot Corp.</u> v. <u>Chesapeake & Potomac Tel. Co.</u>, 124 Md. App. 463, 478 (1998). Applying such a standard, there is no evidence here that the defendant has been grossly negligent. While there is sufficient evidence, if believed, to suggest that the defendant breached its contractual obligations or performed negligent work in evaluating the plaintiff's property, nothing in the plaintiff's own version of the undisputed facts supports the conclusion that the defendant intentionally prepared a deficient Report for the plaintiff or acted with utter indifference to the rights of the plaintiff. Summary judgment will be allowed with respect to the claims of gross negligence (Count I) and grossly negligent misrepresentation (Count II).

**F.   Chapter 93A**

The defendant moves for summary judgment with respect to the Chapter 93A claim, or, in the alternative, for a declaration that the 93A claim is also subject to the limitation of liability

clause in the Contract.

Chapter 93A prohibits unfair or deceptive trade practices and the level of conduct necessary to sustain a 93A claim exceeds mere breach of contract or negligence. See Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 100-101 (1979)(holding that a breach of contract, without more, does not violate Chapter 93A); Madan v. Royal Indemnity Co., 26 Mass.App.Ct. 756, 763 (1989) (breach of oral agreement regarding real estate transaction does not amount to Chapter 93A violation); Meyer v. Wagner, 429 Mass. 410, 424 (1999)(holding that negligence alone is not enough to support a Chapter 93A claim). In cases involving arms-length transactions between sophisticated businesses there must be some showing of "rascality", or, in other words, a showing that the allegedly unfair or deceptive acts were "deliberate or willful." Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 72 F.3d 190, 200 (1st Cir. 1995).

Under Massachusetts law, an agreed-to limitation of liability barring an award of damages on a breach of warranty claim, employed in a purely commercial context, is effective against a Chapter 93A claim forming merely "an alternate theory of recovery under the contract." Mead Corp. v. Stevens Cabinets, Inc. 938 F.Supp. 87, 90 (D. Mass. 1996). Similarly, a choice-of-law clause selecting the law of some state other than Massachusetts to govern "contract related" claims precludes a

Chapter 93A claim when that claim is essentially reduced to a contract claim.  Id.  The common issue for both theories of preclusion is whether the Chapter 93A count duplicates the breach of contract claim or constitutes a separate, tort-based theory of fraud.  The pleadings and supporting materials submitted by the parties here reveal that the Chapter 93A allegation is no more than a reconstituted breach-of-contract claim.

In the Report prepared by the defendant, the very first item listed as a bullet point in a section noting "deficiencies" in the property reads as follows:

- Retain structural engineer to review parking garage drainage and structure.

The Report itself, therefore, recommended that a structural engineer, i.e. someone other than Hoffman, should perform an additional review of the parking garage.  The defendant may be liable for breach of contract and/or negligence to the extent that the Report was not in accordance with the standard of care required under the Contract but there is nothing on this record to suggest that the defendant made "deliberate or willful" misrepresentations or otherwise engaged in unfair or deceptive trade practices.  Knapp Shoes, 72 F.3d at 200.  The Chapter 93A claim will be dismissed.

### G.  Statutes of Limitation

In the defendant's reply to the plaintiff's opposition to the motion for summary judgment, it raises, for the first time,

statute of limitations defenses to the plaintiff's claims for negligence, negligent misrepresentation and fraud in the inducement.  With respect to fraud in the inducement, the issue is moot because that claim (Count IV) will be dismissed.  With respect to the claims for negligence and negligent misrepresentation, the defendant has not moved for summary judgment and will not be permitted to amend the nature of its motion in a reply brief.

### III. Motion to Strike

The plaintiff has filed a motion to strike an expert report and preclude the testimony at trial of the defendant's expert witness, James P. Kirby ("Kirby").  As grounds therefor, the plaintiff contends that the defendant did not designate Kirby as an expert nor disclose his expert report until July 27, 2006, nearly 14 months after the original deadline for such designation.

In opposition, the defendant contends that its tardiness was due to the plaintiff's own failure to comply with the discovery schedule, including a late motion to amend the complaint filed on June 9, 2005.  Pursuant to the scheduling order entered by the Court in October, 2004, the deadline for expert disclosures was June 5, 2005, four days before plaintiff's motion to amend was filed.  The deadline for filing amendments to the pleadings,

however, had long since passed and plaintiff's motion to amend was, therefore, delinquent.  Furthermore, according to the defendant, depositions were not completed in accordance with the scheduling order.  Thus, blame for discovery delays can be shared.  Discovery deadlines and the trial date have been postponed several times since the original order and the bottom line is that the plaintiff has not been unduly prejudiced by the defendant's late designation of its expert witness.  Ultimately, that disclosure was made well in advance of trial.  The Court will deny the plaintiff's motion to strike and to preclude testimony of the expert at trial but will allow the plaintiff to depose that expert and impose costs (but not attorneys' fees) upon the defendant for the taking of that deposition.

-15-

**ORDER**

In accordance with the foregoing, the defendant's motion for partial summary judgment (Docket No. 36) is **ALLOWED**.  Plaintiff's motion to strike expert report and to preclude expert testimony at trial (Docket No. 48) is **DENIED,** but Berwind is permitted to depose the defendant's expert witness and to take other necessary discovery related to that expert, at the defendant's expense, excluding attorneys' fees.

**So ordered.**

                                    /s/Nathaniel M. Gorton
                                    Nathaniel M. Gorton
                                    United States District Judge

Dated February 5, 2007